```
 1                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
 2                         SOUTHERN DIVISION

 3

 4   BARRETT GREEN,            :  Civil Action No.

 5           Plaintiff,        :  PJM 13-1961

 6       v.                    :

 7   PRO FOOTBALL, INC.,       :  Greenbelt, Maryland
     et al.,
 8                             :  Monday, November 25, 2013
               Defendant.         10:15 A.M.
 9   _____/

10

11                 TRANSCRIPT OF MOTION PROCEEDINGS
               BEFORE THE HONORABLE PETER J. MESSITTE
12                   UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   FOR THE PLAINTIFF:     BRUCE M. PLAXEN, Esquire
                            Plaxen & Adler, PA
15                          10632 Little Patuxent Parkway
                            Suite 420
16                          Columbia, Maryland  21044
                            410-730-1615
17
                            MICHAEL J. MCALLISTER, Esquire
18                          Michael J. McAllister, PA
                            1111 Lincoln Road, 4th Floor
19                          Miami Beach, Florida  33139
                            786-286-2566
20
                            SETH MILES, Esquire
21                          Grossman, Roth, PA
                            2525 Ponce de Leon Boulevard
22                          Suite 1150
                            Coral Gables, Florida  33134
23                          305-442-8666

24   OFFICIAL COURT REPORTER:  LINDA C. MARSHALL,(301) 344-3229
              COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES
25
```

```
 1   APPEARANCES CONTINUED:

 2   FOR THE DEFENDANT          CRAIG F. BALLEW, Esquire
     PRO FOOTBALL, INC.:        ROBERT L. FERGUSON, JR., Esquire
 3                              Ferguson, Schetelich & Ballew, PA
                                1401 Bank of America Center
 4                              100 S. Charles Street, Suite 1401
                                Baltimore, Maryland  21201
 5                              410-837-2200

 6

 7

 8

 9

10   OFFICIAL COURT REPORTER:  LINDA C. MARSHALL,(301) 344-3229

11          COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | P-R-O-C-E-E-D-I-N-G-S |
| 2 | THE DEPUTY CLERK:  The matter now pending before this |
| 3 | Court is Civil Number PJM 13-1961, Barrett Green versus |
| 4 | Pro-Football, Inc., et al.  The matter comes before the Court |
| 5 | for a motions hearing. |
| 6 | THE COURT:  All right.  Counsel, identify yourselves |
| 7 | for plaintiff and then for defendants. |
| 8 | MR. MILES:  Good morning, Your Honor.  Seth Miles, |
| 9 | Mike McAllister and Bruce Plaxen for plaintiffs. |
| 10 | MR. FERGUSON:  Morning, Your Honor.  Robert Ferguson |
| 11 | and Craig Ballew for the defendants.  And also at counsel table |
| 12 | with me is Eric Shaffer, General Counsel for The Washington |
| 13 | Redskins, and Robert Forbes. |
| 14 | THE COURT:  All right.  We're going to call them the |
| 15 | Washington Football team hear in this court.  Have a local rule |
| 16 | that tell us about the way words are used.  No need to get into |
| 17 | a big political issue with you on that.  For now, that's what |
| 18 | we'll call them. |
| 19 | All right.  Let me address something first.  I think |
| 20 | the issue of preemption needs to be addressed first, because |
| 21 | that's a jurisdictional issue, before we start talking about any |
| 22 | state causes of action.  So, however you've argued it, I think |
| 23 | that's where we are in terms of the case.  So, if you want to go |
| 24 | forward.  I don't know who is going to argue for the defendants. |
| 25 | I gather you're going to argue collectively for |

```
 1    defendants or are you going to split the argument.  How are you
 2    going to do that?
 3              MR. FERGUSON:  I'm going to argue the Statute of
 4    Limitations issue and Mr. Ballew will argue the preemption
 5    issue.
 6              THE COURT:  All right.  Let's start with the
 7    preemption issue.
 8              MR. BALLEW:  Thank you, Your Honor.
 9              Your Honor, Craig Ballew on behalf of the defendants.
10              Your Honor, we're here on a series of issues.  The
11    issue that I will address is the question of Federal Preemption
12    under Section 301 of the Labor Management Relations Act.  It is
13    an issue that frequently comes up when parties are dealing with
14    disputes involving the Collective Bargaining Agreement.
15              This is a case in which there is a Collective
16    Bargaining Agreement.  Mr. Green signed a players' contract.  He
17    was a member of the union.  There is a Collective Bargaining
18    Agreement between the Management Council and the Players
19    Association.  They were his representatives.  They negotiated
20    the terms of that Collective Bargaining Agreement and it is what
21    he operated under while he was an employee within the NFL.
22              When we look at the question of contractual or tort
23    claims under state theories and whether they are preempted, we
24    begin by reviewing the Supreme Court analytical framework.  The
25    Supreme Court has since the early 1960's been dealing with the
```

1    question of Section 301 Federal Preemption, the role of Federal

2    Labor Law and the role of the arbitrators to decide Federal

3    Labor Law.

4         In 1962, in the *Lucas Flour* case, they made it clear

5    that a contract claim, which was predicated upon a Collective

6    Bargaining Agreement could not be brought under state law.  They

7    expanded on that in the early 80's through the early 90's,

8    beginning with the *Allis-Chalmers v. Lueck* case.  That is a case

9    that involved Mr. Lueck.  He had what we call a non-occupational

10   injury to his back.

11        Apparently, he was visiting a pig roast and he carried

12   the pig to the pig roast.  He injured his back.  He worked for

13   an employer who had disability benefits.  Fortunately for him,

14   they included non-occupational benefits.  They were a benefit

15   under the terms of the Collective Bargaining Agreement.

16        He applied for and received benefits.  His assertion

17   was that periodically his employer would call upon the carrier

18   to cut off those benefits improperly.  He did not file a

19   grievance.  He filed a state suit in Wisconsin courts arguing

20   that the disability claim and the administration of the claim

21   was not being dealt with in good faith and fairly.

22        That is an issue that the Wisconsin Courts addressed.

23   Their conclusion was, it was not preempted.  When the issue went

24   to the Supreme Court, Judge Blackmun, Justice Blackmun reviewed

25   the prior cases and he framed the discussion of this tort issue

 1   within the parameters of Section 301.  He made it clear,

 2   questions relating to what the parties to a labor agreement

 3   agreed and what legal consequences were intended to flow from

 4   breaches of that agreement must be resolved by reference to

 5   uniform federal law, whether such questions arise in the context

 6   of a suit for breach of contract or in a suit alleging liability

 7   in tort.

 8        He went on to note that the Court's analysis needed to

 9   focus on whether evaluation of that tort claim was inextricably

10   intertwined with consideration of the terms of the labor

11   contract.  If the state court law purports to define the meaning

12   of the contractual relationship, he indicated it was preempted.

13        He went on to note that the mistake made by the

14   Wisconsin Courts was first making the assumption that because

15   something was not expressly laid out in the Collective

16   Bargaining Agreement, that therefore they had the right to

17   determine whether implicitly an obligation existed under that

18   document.  That was the analysis of the Court, the Supreme Court

19   of Wisconsin.  That is what the Supreme Court of the United

20   States said was flawed.

21        In looking at this, he also noted that the underlying

22   State Supreme Court analysis was harmful because it took away

23   under the terms of the Collective Bargaining Agreement the

24   federal right of the parties to discernment who would decide

25   their contract disputes.  That is at the core of protecting the

1    role of the arbitrator under Federal Labor Law, specifically

2    under Section 301.

3           A few years later in the *Rawson* decision, a case

4    involving a tragic fire in a mine, claims were brought by

5    deceased minor survivors arguing that in this case the union had

6    violated certain standards.  It was a wrongful death action.

7    Justice White reviewed the decision of *Allis-Chalmers*, again

8    restated that state law action is preempted if the duty to the

9    employee of which the tort is a violation is created by the

10   Collective Bargaining Agreement and without existence

11   independent of the agreement.

12          In that case, the state of Idaho had determined that

13   the wrongful death claim predicated on a duty to inspect the

14   mine was independent of the Collective Bargaining Agreement.

15   Justice White found that to be incorrect; that indeed, the

16   union's obligation to conduct an inspection was a product of the

17   Collective Bargaining Agreement.  And, therefore, if there was a

18   violation, one had to look to the Collective Bargaining

19   Agreement to make that determination.  Remedies available for

20   that violation would be under federal law, not under state law.

21          The Fourth Circuit has in several decisions taken and

22   applied these standards.  The parties have cited to the

23   *McCormick* decision, an AT&T case involving an individual who was

24   let go, his locker was opened, his materials were removed, his

25   personal belongings were put in the trash.

1          He brought, again, a claim under state, Virginia state

2     law, not a grievance under the Collective Bargaining Agreement,

3     even though he was a union member.  The case was removed to

4     federal court, preemption argument was made, summary judgment

5     was granted.  And when the Fourth Circuit looked at the issue

6     for purposes of analyzing preemption, they said that the

7     question is whether resolution of the cause of action requires

8     interpretation of a Collective Bargaining Agreement.

9          Rightness or wrongness of cleaning out that locker was

10    not committed to the common law of the tort, but to the legal

11    arrangements of the Collective Bargaining Agreement, the

12    agreement between the parties.

13         It went on to note, again, management's rights and

14    obligations aren't always expressly delineated in a contract.

15    And it referred back to the *Warriors versus Golf Navigation*,

16    Supreme Court decision of 1960, noting that a CVA is more than a

17    contract.  It's a generalized code of conduct and it governs

18    many cases, including those that the draftsmen might not have

19    considered at the time they were drafting.

20         More recently in 1993, the Fourth Circuit looked at

21    the issue again in *Jackson versus Kimel*.  Again, AT&T was one of

22    the defendants.  This was a case in which an individual claimed

23    that there was coerced sex in return for job benefits.  AT&T was

24    ultimately dismissed, because the underlying claims were found

25    to be insufficient.

1          The Fourth Circuit looked at the claim against Mr.

2    Kimel, however, and found that it was not insufficient and that

3    it was not preempted.  In reaching that conclusion, they looked

4    at the fact that coerced sex in exchange for benefits was

5    something that was impermissible under Title VII of the Civil

6    Rights Act of 1964; was impermissible under the public policy of

7    North Carolina.  And as the Fourth Circuit noted, it was

8    possibly also a violation of state criminal law.  They concluded

9    that they did not need to interpret the Collective Bargaining

10   Agreement in order to determine if the duty to refrain from

11   certain conduct existed.

12          When we turn from those cases and we look at the

13   claims that the plaintiff in this case is making, we begin with

14   the complaint.  It is clear from a review of the complaint what

15   the plaintiff is alleging.

16          In Count One, there is a claim against Defendant Royal

17   for battery.  Paragraph 49, he makes it clear, plaintiff in no

18   way consented to described contact by Defendant Royal, which was

19   outside the rules of the game.  That's the language of the

20   complaint.

21          Count Two, paragraph 58, players were encouraged and

22   even compensated for playing outside the rules of the game.

23          Count Three, negligence.  Paragraph 65, Royal had a

24   duty to play the game of football in a manner that was

25   consistent with the rules as set forth by the NFL.

1          And in paragraph 68, Defendant Royal breached his duty

2   to plaintiff by blocking plaintiff in violation of the

3   applicable NFL rules.

4          Count Four, Five and Six go on to make the same

5   references to the existence of a duty and violations of the

6   rules, conduct outside the rules of the game.  When we look at

7   this complaint, we see it clearly asserts that there was a duty,

8   a duty to act and a duty to refrain from acting in a certain

9   manner.  That is expressly tied to the NFL's rules.  These

10  violations are what the complaint says reflect the defendant's

11  breaches of the duties, the violations of the rules or the

12  breaches of the duty.

13         THE COURT:  Well, is the duty here the duty to abide

14  by the rules or is there -- well, what does it say about, and

15  assume it's true for present purposes, a football organization

16  directing somebody to go out and try to cripple somebody else?

17  Is there a duty not to do that?  Is that in the rules?

18         MR. BALLEW:  That would be a violation of the NFL

19  rules.

20         THE COURT:  Well, is it?  Now, the issue is, can a

21  team pay a bounty to a player to the extent that the player can

22  deliberately injure another player as opposed to simply going

23  out and playing hard or even playing dirty?

24         MR. BALLEW:  When the plaintiff tries to characterize

25  this as a bounty system that is somehow an apparently

1    inappropriate action, what they're doing is they're really

2    saying, this is a violation of our existing NFL rules.  And

3    those NFL rules are expressly referenced in both the

4    constitution and bylaws.  They are also a part of the player's

5    contract and they are a part of the Collective Bargaining

6    Agreement, which the players contract is a part of.

7              This is not a situation where we can look outside the

8    terms of the relationship on the field and in this institution

9    to determine the social boundaries.  The effort is being made by

10   the plaintiff to run away from his own complaint.  And part of

11   that argument is that this is somehow outside the rules, outside

12   the Collective Bargaining Agreement and fitting within this

13   narrow exception like the coerced sex for job --

14             THE COURT:  I don't think the plaintiff is saying,

15   it's outside the rules in the sense that the rules may not

16   provide a standard of measurement.  But are you saying, ipso

17   facto that makes the Collective Bargaining Agreement applicable

18   just because there a reference to the rules?

19             MR. BALLEW:  No, the cases recognize there has to be

20   something more than a tangential reference to the Collective

21   Bargaining Agreement.  Now, the Supreme Court and the Fourth

22   Circuit have made that clear.  So we're not here saying that

23   simply because there is a Collective Bargaining Agreement,

24   therefore there must be preemption.

25             But when you look at this complaint and what is being

1    argued, the source of the duties is the obligations under the

2    rules, the contract, the Collective Bargaining Agreement.  And

3    the arguments being made, I can, I can separate from that and

4    say that there is a duty that this player and this team owe to

5    everyone in the world.  And that, I would submit, is not

6    accurate.

7         What we have to look at are the standards applicable

8    when players take the field and play football in the NFL.  There

9    is physical contact.  It is violent physical contact.  The rules

10   define when that violent physical contact is within the rules

11   and outside the rules.  The premise that we can put those rules

12   and the contract aside, and go to outside tort standards to

13   determine duty would suggest that every time there is contact on

14   the field, we have the potential for a claim being made separate

15   from the Collective Bargaining Agreement.

16        THE COURT:  Well, go back to my question.  Is the

17   issue that the block was illegal or is the issue that a bounty

18   was paid to try and deliberately injure somebody?  I mean, I

19   think that's the distinction the plaintiff is trying to make

20   here.  If this were just an illegal block under the rules,

21   you're probably right.  I mean, there's not much to talk about.

22        But he's saying, late in the game I discovered that --

23   if in fact it's true.  I don't know at this point -- that the

24   team was actually playing players to go out and try and cripple

25   other players.  That's what the essence of the claim is here;

1    not that a rough, injurious block was -- well, that's part of

2    it, obviously, but that's not the core.  At least, that's the

3    way I read the plaintiff's complaint.

4         MR. BALLEW:  And I would submit that, again, when he

5    makes that argument, what he's trying to do is say that

6    something that is predicated on a violation or a non-violation

7    of rules can be analyzed separate from those rules in a

8    different context.

9         THE COURT:  Let me ask you a question.  Suppose on the

10   way into the stadium on the day of the game one player walked

11   over and punched another player in the face, and knocked him

12   cold and created injury.  Would that be covered by your

13   analysis?

14        MR. FERGUSON:  The NFL's constitution and bylaws have

15   very specific language and it's attached as an exhibit.  And let

16   me just find that language for you.

17        First of all, in Section 9.3 of the --

18        THE COURT:  Collective Bargaining Agreement or --

19        MR. FERGUSON:  This is the constitution and bylaws.

20   Section 9.3, there is a reference to the fact that every

21   contract with an employee of the league or a club therein shall

22   contain a clause wherein the employee agrees to abide and be

23   legally bound by the constitution and bylaws, and the rules and

24   regulations of the league, as well as by the decisions of the

25   commissioner which decision shall be final, conclusive and

1    unappealable.

2            In addition to that, in Section 8.3, the jurisdiction

3    of the commissioner is laid out in Section 8.3.  And in 8.3(C),

4    any dispute between or among players, coaches and/or other

5    employees of any member club or clubs of the league, other than

6    disputes unrelated to and outside the course and scope of

7    employment of such disputants within the league.

8            So to your question or to begin, the facts of this

9    case are clearly disputes in the course and scope of employment.

10   They're on the field.  They are playing football.  There is

11   contact.

12           Your hypothetical speaks to what may or may not be

13   inside or outside the scope of employment of the disputants.  By

14   your description, they're in the stadium, the game hasn't

15   started.

16           THE COURT:  Well, let's change the hypothetical.  He

17   pulls out a knife during the game and stabs somebody on the

18   other team.  Games on, field is in play, what's about that?  Can

19   a player -- would that be within the Collective Bargaining

20   Agreement?

21           MR. FERGUSON:  Obviously, that's not the situation

22   we're dealing with here.

23           THE COURT:  Well, that's your argument.  The question

24   is, is it more like one rather than the other.

25           MR. FERGUSON:  I would submit to you that that's more

1    like the *Brown* case where the referee threw the flag, and the

2    analysis of the Court, which reached the conclusion it was not

3    preempted, was that that referee owed that same duty in throwing

4    that flag to players and fans in the stadium.  Therefore, they

5    didn't have to look to the terms of the Collective Bargaining

6    Agreement.

7            In your hypothetical, that same argument could

8    presumably be made.  Within our facts, what we have are two

9    players engaged in contact.  There is a crack block and there is

10   a penalty.  And the rules speak to that type of violation.  The

11   rules, again, are something employees through their contract

12   have agreed to abide by.  Their contract is an appendix to the

13   Collective Bargaining Agreement, and the parties have a document

14   that specifically expresses what is covered by the grievance

15   arbitration procedure.  It is an extremely broad clause.  The

16   plaintiffs try and narrow it.

17           Article IX, Section 1, this is -- although we are

18   dealing with unique employees, we are not dealing with a unique

19   Collective Bargaining Agreement.  This is a classic grievance

20   arbitration provision and it begins by defining what is a

21   grievance.  And it says, if it's a grievance, it will be

22   resolved exclusively in accordance with the procedures set forth

23   in this article, accept where another method of dispute

24   resolution is set forth elsewhere in the agreement.

25           What is the definition?  Any dispute, any dispute

1    arising after the execution of this agreement that involves

2    interpretation of, application of or compliance with any

3    provision of the agreement, the NFL player contract or any

4    applicable provision of the NFL constitution and bylaws

5    pertaining to terms and conditions of employment of NFL players.

6         So, when we look at a rule violation and we look at

7    this grievance clause, we see any dispute, interpretation,

8    application, compliance.  We have a rule here, a contract that

9    speaks to the rules here and we have a Collective Bargaining

10   Agreement that speaks to it.

11        THE COURT:  Do we agree that with regard to the state

12   causes of action that Maryland law applies?

13        MR. FERGUSON:  I'm sorry.  I didn't hear.

14        THE COURT:  Do we agree that with regard to the state

15   cause of action that Maryland law applies, assuming we're

16   setting aside for a moment the Fair Labor Management Act,

17   Federal Labor Relations Act.

18        MR. FERGUSON:  State laws of Maryland versus --

19        THE COURT:  Anywhere else?  It's Maryland law, right?

20   The state causes of action, is it Maryland law we're talking

21   about?

22        MR. FERGUSON:  Plaintiff, as I understand, has framed

23   its claims based on the state of Maryland tort claims.

24        THE COURT:  Let me put the question to you this way:

25   Would it be legal under Maryland law to have any kind of a

1    clause that gave, that made someone waive their right to a jury

2    trial, put absolute authority to determine to some arbitrator

3    without being able to go to court?  That is, if the provision

4    would say, even if you are deliberately injured in the course of

5    your practice by someone, you're waiving any right to file any

6    claim, you must go through a grievance proceeding.  Would that

7    be legal under Maryland law?

8            MR. FERGUSON:  Let me answer that in beginning by

9    making clear the nature of the relationship.

10           Mr. Green was a member of the union.  The union had a

11   contract with the association.  So can a union enter into an

12   agreement which requires individuals with their claims to bring

13   those claims under arbitration versus under a state --

14           THE COURT:  Is it just under arbitration or are you

15   waiving any -- you just read some exclusive language that it's

16   solely and exclusively the commissioner who can decide this

17   issue, that there's no recourse beyond that.  That's what you've

18   said.

19           MR. FERGUSON:  And that is at the essence of why since

20   the 1960's the Supreme Court has been recognizing and protecting

21   the role of the arbitrator, because prior to those decisions

22   there was an antithesis on part of some courts to recognize the

23   role of an arbitrator to make these decisions.

24           And in the early 1960's the Supreme Court recognized,

25   no, we need to recognize under the Federal Labor Law it is the

 1   arbitrator.  We cannot have state courts addressing these

 2   issues.  We need to have the arbitrators, because this law has

 3   given these parties the right to agree that we will have our

 4   disputes addressed by this person.

 5          THE COURT:  And you're saying -- this may be true

 6   under Maryland law.  I don't know whether you would say it's

 7   true under federal law, but under Maryland law you can't waive

 8   away your right to sue when there's gross negligence, for

 9   example, in a landlord tenant case.  It's just illegal, that

10   clause, even though landlords have tried to write it into the

11   contracts, the courts in Maryland say, it can't be done.  You

12   can't excuse your own gross negligence or by a step forward your

13   intention to injure someone.  And I ask whether that has been

14   applied in any Collective Bargaining Agreement context under

15   the, to get this right, the Federal Labor Management Relations

16   Act?

17          MR. FERGUSON:  It has.  And I have to apologize, but I

18   we can get you the citation.  But a few years ago the Supreme

19   Court addressed the issue of whether or not an individual under

20   the age discrimination employment act had a right to pursue that

21   claim notwithstanding the existence of a Collective Bargaining

22   Agreement.

23          That Collective Bargaining Agreement said, if an

24   individual who is a member of the union has this type of a

25   claim, they must bring it through arbitration.  The argument was

1   made that that was void as against public policy.  That Title

2   VII in the ADEA recognize the independent right to bring that

3   cause of action, including bringing it to a jury.

4        The Supreme Court looked at that issue, recognized we

5   have Title VII principles on one hand, but that we had to also

6   take into consideration the National Labor Relations Act and

7   Section 301.  And the determination was made in that case that,

8   in fact, the union had the right to enter into that agreement

9   and the employee was bound by that agreement, which required

10  that that type of a dispute not go to a jury, but go to an

11  arbitrator.  And I apologize, I don't have it at the top of my

12  head.

13       THE COURT:  I'm not sure it disposes of the

14  intentional injury issue, but it's an interesting argument.

15       MR. BALLEW:  As I said, this begins and I would submit

16  really ends with the complaint, and the discussion of the duties

17  and where those duties come from, because when you take the

18  Supreme Court decisions, when you take the Fourth Circuit

19  decisions, you recognize this isn't tangentially tied.  This is

20  going directly to the rules.  The rules are at the core of the

21  relationship between the parties.  When they're on the field,

22  what is permissible, what is not permissible.

23       And the suggestion that we should, as the plaintiff

24  has done since hearing the Motion for Summary Judgment, ignore

25  those rules is something that we would submit should not be

1   accepted by the Court.

2          Again, the response of the plaintiff in this situation

3   when the motion was filed was to begin by running away from his

4   own allegations.  At pages 9 and 10, suddenly these rules,

5   suddenly the source of the duty become something that is a mere

6   recital of normal conduct within the league.

7          That argument can't withstand review.  These

8   allegations decisively confirm that the rules, the contract are

9   inextricably intertwined with this dispute.  Mr. Green cannot

10  avoid the consequence of these pleading admissions.

11         He cites to cases that are distinguishable.  We

12  mentioned one, *Brown*.  *Hendy*, the other decision involved the

13  doctor's failure to treat the player's condition properly.

14  Those are different and clearly they involve situations where

15  the duty that was owed was owed to everyone.  A doctor's duty to

16  treat someone properly is not a product of the Collective

17  Bargaining Agreement.  That's the analysis that those courts

18  reached.

19         The *Hackbart* decision which they cite, first of all,

20  preceded all of the Supreme Court analysis.  It's a trial court

21  decision from 1977.  So, you know, years later we get

22  *Allis-Chalmers*, we get *Rawson*, we have other decisions.  I would

23  submit to you that the *Hackbart* decision is wrong for a number

24  of reasons, including the fact that it ignores the Supreme Court

25  admonition against making the assumption that because something

1    is not expressly in the agreement, that therefore it isn't

2    explicitly an obligation.

3          Again, that is where, according to the *Lueck* decision,

4    the Wisconsin Court got it wrong.  That is where, according to

5    *Rawson*, the Idaho Courts got it wrong.

6          This is not like a coerced sex for job benefits or

7    false imprisonment under threats of shaming by walking someone

8    past peers handcuffed.  The appropriate standard for blocking

9    opposing players is not a matter of intrinsic moral import.  The

10   standards on the field cannot be found by looking to public

11   policy.  It is a violent game.  That's why there are rules.

12         THE COURT:  You keep talking about that.  I haven't

13   heard anything about the bounty.  I mean, I gave you the benefit

14   of the argument for a bit saying, sure, that's rough play.  But

15   the issue here, isn't it, is that allegedly the team was paying

16   bonuses to people to deliberately injure, not to play dirty.  I

17   mean, some players play dirty, we know that, but they were being

18   paid to play dirty.  This is the allegation.

19         MR. FERGUSON:  It's the allegation, which of course

20   we've noted we --

21         THE COURT:  Well, of course, I know you dispute it,

22   but that's really where I'm -- I think we're looking at that

23   issue now that, yes, sure, the rules require you to only have

24   certain kinds of blocks that you put on.  You don't have this

25   crack back block that's illegal and so on.  And it was called, I

1    guess, at the time, was it not, that this was an illegal act and

2    it was penalized?

3              MR. BALLEW:  Yes.

4              THE COURT:  Well, all right.  I want to see what

5    plaintiff has to say about that and I'll give you a chance to

6    rejoin then, all right.

7              MR. BALLEW:  Thank you.

8              THE COURT:  Mr. Miles then, yeah.

9              MR. MILES:  Thank you, Your Honor.

10             Your Honor, the preemption argument is really based on

11   a fundamental misunderstanding of the gravamen of the complaint.

12   As I think the Court pointed out, the gravamen of the complaint

13   is that, in fact, there was this Bounty Program, which was a

14   program designed to pay players to intentionally injure other

15   players.  And because that, in fact, is the gravamen of the

16   complaint, this complaint comes outside what the CBA says or

17   even could say.

18             And the answer, quite frankly, to both their

19   hypotheticals, whether or not in one instance as a player

20   punched another player on the way into the game or if a player

21   took a knife out during the middle of the game and stabbed

22   someone, which is somewhat analogous to what we have here, both

23   those would be outside of preemption for a very simple reason.

24             And the reason comes to us from the *Brown* case, which

25   was cited in the Southern District of New York, 2002.  And I'm

1    going to read from what *Brown* says.  *Brown* says, and I quote,

2    Courts of Appeals have frequently held that claims of

3    intentional torts like assault or battery, parens, that's what

4    we've alleged here, brought by employees covered by CBAs against

5    fellow employees are not preempted by Federal Labor Law.

6         It continues, "Thus, if Brown claimed that Triplett

7    had intentionally thrown the flag at him, the resulting battery

8    claim would surely survived any assertion of federal

9    preemption." So what the *Brown* Court is saying, citing other --

10   citing some Circuit Courts of Appeal, is that an intentional

11   tort which is what the Bounty Program is alleged to be in our

12   complaint, simply comes outside the CBA.

13        And it comes outside the CBA irrespective of any

14   language for a very simple reason.  And that comes from this

15   Court's opinion in the *Smith v. Giant Food* case.  It's Tab

16   Number 12 in our binder.  What the *Smith* case says and the *Smith*

17   case is concerning a false imprisonment allegation.  It says,

18   Maryland Tort Law and Criminal Law both prescribe false

19   imprisonment.

20        Maryland law clearly reflects the public policy

21   against physical detention of an individual without legal

22   justification and makes the conduct a matter of intrinsic moral

23   support.  It continues on and says, citing the Supreme Court

24   opinion is *Lueck* that, therefore, Section 301 does not grant the

25   parties to a Collective Bargaining Agreement the ability to

1    contract for what is illegal under state law.

2            THE COURT:  Well, that's what I was driving at.

3            MR. MILES:  And there is no question, it is illegal

4    under state law to commit a battery.  It would be illegal under

5    state law to have a Bounty Program that payed players to commit

6    battery for the purpose of injuring opponents.  Because the

7    gravamen of the complaint is that intentional tort, which

8    corresponds with criminal conduct, the CBA in this case, even if

9    it tried to cover these claims and I'll argue that it doesn't,

10   but even if it did, it would fall outside of the scope of what

11   could conceivably be preempted because of the type of

12   allegations in this complaint.

13           The *Jackson* case, which is Tab 9, Fourth Circuit case

14   from 1993, makes that again very clear.  Quoting from the

15   *Jackson* case, it says, in this case, interpretation of the

16   Collective Bargaining Agreement is not necessary to determine

17   whether *Kimel* owed a duty to refrain from the alleged conduct.

18   The Collective Bargaining Agreement could not authorize his

19   alleged behavior.

20           The NFL Collective Bargaining Agreement could not

21   authorize a Bounty Program designed for the purpose of injuring

22   other players.  It is illegal conduct.  It is an intentional

23   tort.  And, therefore, irrespective of the language in it, this

24   claim comes outside of preemption.

25           THE COURT:  Do you concede that if there were no

1    Bounty Program, you'd have no cause of action?

2            MR. MILES:  I concede that if there were no

3    intentional tort --

4            THE COURT:  Well, let's assume.  I mean, wasn't the

5    plaintiff arguing at the time that Royal, in fact, did intend to

6    injure him, the player did.  But if there were no Bounty Program

7    and leaving aside even limitations for a moment, would you

8    concede that a cause of action had been stated if you could

9    establish that an opposing player really intended to hurt you?

10   I mean, that happens all the time, doesn't it?

11           MR. MILES:  No, Judge, I don't think -- certainly,

12   there are hard hits.  Certainly there are hits inside and

13   outside the rules of the game.  But to claim, as we have

14   alleged, that a single player setting aside the Bounty Program,

15   for whatever motivation intentionally tried to injure another

16   player, hit him with the intent to injure, that is not only an

17   intentional tort, it is violation of the criminal law.  And,

18   therefore, under preemption analysis and under the *Smith* case

19   and the *Jackson* case, that would fall outside of the CBA.

20           THE COURT:  Well, stop there for a moment.  I mean,

21   think about that.  How many -- wouldn't it be in litigation all

22   the time with players suing other players because he speared me

23   deliberately.  Boy, that seems to go on in every game.  I mean,

24   that's an intentional tort.  I'm not merely trying to put the

25   man down with the ball, I'm trying to hurt him.

```
 1            MR. MILES:  Well, Judge, I think what separates it in
 2    kind and degree is what you saw in the Hackbart case.  So,
 3    clearly, in the game of football there are hard hits, there are
 4    legal hits, there are illegal hits.  But in the Hackbart case
 5    that went up to the Tenth Circuit, what you had was a hit that
 6    was maliciously designed to injure.  Not to cause a fumble, not
 7    to set a player out for a play or two; a hit that was
 8    maliciously designed to injure.
 9            And what that does is it takes us outside of our
10    typical tort civil law system and brings us into a very
11    different arena where intentional torts in criminal law, in
12    fact, prescribed the conduct.  And by doing that --
13            Now, there can be other arguments and there were in
14    Hackbart and there are, I'm sure, in this case about assumption
15    of the risk and things like that.  But that mere fact of the
16    malicious intent, the mens rea to injure takes it outside of the
17    realm of the Collective Bargaining Agreement, takes it outside
18    of the realm of anything that can be contracted to by the NFL
19    and the --
20            THE COURT:  Let me ask you and I pose it to defense
21    counsel as well whether there have ever been any cases where a
22    player made a complaint within the Collective Bargaining
23    Agreement that another player deliberately sought to injure him?
24    That is, it was ever brought to a grievance within that, within
25    that system.
```

1          I mean, I wonder.  It seems to me a lot of people

2     just -- the players pretty much assume that it's part of the

3     game.

4          MR. MILES:  Judge, not only am I unaware of any such

5     grievance being brought, but in fact, I'm unaware of any

6     provision in the CBA cited to by defendants or anyone else that

7     would permit under the CBA or any rules of the NFL one player to

8     issue a grievance against another player under that contractural

9     provision.

10          THE COURT:  You say, a player couldn't file a

11     grievance against another player?

12          MR. MILES:  I've seen no indication in anything pled

13     that they could do so under the Collective Bargaining Agreement

14     here.

15          THE COURT:  Well, could they file it against another

16     team?

17          MR. MILES:  Not that I've seen.  The Collective

18     Bargaining Agreement -- and this is what the *Hackbart* speaks to,

19     one of the things the District Court speaks to.  District Court

20     says in the *Hackbart* case, there is no provision in the CBA for

21     disputes between players of different teams.

22          Now, in this case, the defendants have cited to

23     numerous different rules and regulations and bylaws.  What they

24     have failed to cite -- and again, we're assuming the CBA applies

25     and we believe it does not, but what they fail to cite is a

 1    single procedure in any of the documents they've provided this

 2    Court that would permit Mr. Green to file a grievance against

 3    Mr. Royal or against the defendant football team for purposes of

 4    an intentional hit to injure him and seek any sort of recovery

 5    or compensation.

 6            There is no such provision within the CBA that's been

 7    brought to our attention or this Court's attention in the

 8    pleadings.  And the reason is, quite frankly, it doesn't appear

 9    to exist.

10            THE COURT:  Well, the argument was made that, at least

11    citation to a case that it doesn't have to be explicit in the

12    agreement.  It can be implicit.  And the question is, is it

13    implicit even?

14            MR. MILES:  Not only is it neither explicit or

15    implicit, they have not cited to a provision, which by my

16    reading would allow a player to even institute that procedure to

17    begin with.  So, there's nothing within these documents that

18    they have cited that says, Mr. Green had the ability at any time

19    to bring this specific grievance in any way within the four

20    corners of the Collective Bargaining Agreement.

21            They've cited to a single broad interpretation of the

22    commissioner's overall authority, but no ability by a player to

23    bring a grievance against another player or against another

24    team.  And in fact, that was one of the bases for the *Hackbart*

25    opinion.

```
 1              The argument that the defendants make concerning the

 2     rules and regulations that they allege we cited in the

 3     complaint, which in fact we did not cite specific rules and

 4     regulations.  What we cited are industry standards.  And

 5     industry standards, as I think the Court discussed with defense

 6     counsel, provide the backdrop can be evidence of negligence or

 7     battery, or any other civil cause of action.  But the mere

 8     citation of them, even had we cited them verbatim, which we did

 9     not, would not cause this cause of action to be preempted.

10              The very same argument was made by the NFL in the

11     Brown case.  And what the Brown case determined, the Southern

12     District of New York, is that a plaintiff arguing a member of a

13     particular trade or profession behaved negligently in carrying

14     out his duties may appropriately use as evidence of negligence

15     manuals, regulations or other materials defining the reasonable

16     and expected standard of professional practice within that

17     occupation.  Nothing more was done here.

18              Again, the arguments by the defendants is based on a

19     fundamental misunderstanding of the gravamen of the complaint.

20     This is not a negligence complaint saying that the defendants

21     should be liable because the employee or their employee breached

22     NFL Rule 1.7 Sub-Section 5, Sub Sub-Section A.  That's not the

23     gravamen of the complaint.  It's a Bounty Program to

24     intentionally injure another player for the purpose of

25     benefiting both the defendants.
```

1          The *Brown* case continues and, again, this is assuming

2     that not only are we within the grounds of the CBA and as I've

3     argued repeatedly, we're not; not only were there allegations

4     of -- and in the *Brown* case they were far more specific, of

5     specific NFL rules being violated.

6          What the *Brown* case eventually says, after again

7     looking at the document cited by the NFL, the same document

8     cited to this Court to try and create an argument that, in fact,

9     any interpretation of these rules; in fact, any mention of these

10    rules causes complete and total preemption.

11         What the *Brown* Court says is, again assuming the CBA

12    applies, assuming there's reliance upon these rules, which is

13    not our case, the *Brown* Court says, even if the references in

14    the plaintiff's complaint to the content of specific NFL rules

15    or to various instruction manuals for referees are seen not

16    merely as evidence of professional standards, pause, which is

17    what we have in this case, but as sources that define the

18    ordinary nature and risk of football and, thus, define the

19    duties of care owed to plaintiffs, these documents are not part

20    of the CBA.

21         As the CBA incorporates by reference, at most, only

22    the NFL constitution and its bylaws, and the terms of the

23    constitution and the bylaws need not be interpretated [sic] in

24    adjudicating plaintiff's claims, there is no need to interpret

25    the CBA and, therefore, there is no grievance procedure that

1    applies, and the no suit and the no grievance parts of the CBA

2    that are cited to by the defendants are inapplicable.

3         So, what *Brown* is saying is, let's assume the CBA

4    applies to intentional torts.  Let's assume that the citations

5    in the plaintiff's complaint are actually directly the cause of

6    action of negligence, are based directly upon breach of those

7    particular standards.  Let's assume both those things.  Then and

8    even then, you still don't have preemption because those NFL

9    rules that they are relying upon so heavily, when you actually

10   examine the totality of the documents, are not even incorporated

11   into the CBA.  They're separate and apart from the CBA.  So even

12   when you get to that level of granular detail, they're still not

13   applicable, they still don't cause preemption.

14        And, therefore, the *Brown* case continues discussing

15   specifically the no-suit clause.  As demonstrated above, while

16   the issue in this case could involve the NFL rules -- again,

17   that was the case where the referee threw the penalty flag that

18   struck the player in the eye.  So in that case, the citation to

19   the rules was far more significant and the causes of action were

20   far more dependent upon it than they are in this case -- which

21   include a provision relating to the use of penalty flags, again

22   very specific, or the various official manuals, nothing in the

23   suit turns on the interpretation or enforcement of, or in any

24   way relates to the constitution and bylaws which relate to the

25   organization of the league and not to the rules of play.  Thus,

```
1    by its own terms, the no-suit provision has nothing to do with

2    this lawsuit.

3              Continuing, the arbitration clause cited by the NFL

4    provides no greater help to its position.  Why?  Because the

5    cited arbitration clause only applies to disputes growing out of

6    CBA itself, the NFL player contract or the constitution and

7    bylaws.  It does not purport to require arbitration of what

8    would otherwise be tort actions brought by players.

9              So, for a number of levels from the very initial

10   analysis, we are not a part of the CBA because the bounty

11   program is an intentional tort and the CBA could not prohibit or

12   could not cover that conduct, even if it so chose.

13             Going further into the CBA itself, it simply does not

14   even incorporate these rules the NFL, that the defendants in

15   this case allege are incorporated and provide the basis for

16   preemption.

17             And in fact, the rules themselves would not be

18   applicable in this particular case, because what they are is

19   citations by the plaintiff as is standard in almost every tort

20   suit in which they are applicable as evidence of breaches, but

21   they are not the gravamen of the complaint.

22             So for each of those reasons individually and

23   certainly cumulatively, preemption simply not apply in this

24   case.

25             THE COURT:  All right.  Want to reply, counsel?
```

1          MR. BALLEW:  You just heard a discussion of the

2    grievance procedure.  And the assertion is that the rules are

3    not subject to the grievance procedure.  Let's walk through some

4    documents to address that issue.

5          First of all, again, Constitution and Bylaws, Section

6    9.32, every contract with any employee of the league or of a

7    club therein shall contain a clause wherein the employee agrees

8    to abide and be legally bound by the constitution and bylaws,

9    and the rules and regulations of the league as well as by the

10   decisions of the commissioner, which decision shall be final,

11   conclusive and unappealable.

12         THE COURT:  You're saying that would allow the

13   commissioner to just decide any question he might decide.

14         MR. BALLEW:  I'm saying that the parties have agreed

15   that the rules have to be a part of the contract and employees,

16   such as the plaintiff, have to agree that the commissioner will

17   address and interpret disputes under those rules, yes.

18         And Section 8.3, this is a dispute and the

19   commissioner has full, complete and final jurisdiction and

20   authority to arbitrate any disputes between or among players,

21   coaches and/or other employees of any member club or clubs of

22   the league, other than disputes unrelated to and outside the

23   course and scope of the employment of such disputants within the

24   league.

25         The contract in Section 14 speaks to rules, club and

1    league rules.  The grievance procedure says, any dispute that

2    involves interpretation, application or compliance with the

3    agreement, the contract or the constitution and bylaws is

4    subject to this exclusive procedure.

5            The plaintiffs try and make the argument that this is

6    not something that involves a term and condition of employment

7    and therefore is not subject to this.  We disagree.  Term and

8    condition of employment is a term applied under the National

9    Labor Relations Act.  It is applicable in many contexts.

10           When a union files a petition to have an election,

11   there is a period of time.  And after that election, if they are

12   successful, there is a period of time in which the employer is

13   barred from making any changes in terms and conditions of

14   employment.

15           Many times employers despite those rules will make

16   changes because they think something is not a term and condition

17   of employment.  But the National Labor Relations Board has for

18   75 years been interpreting that term and recognizes it is

19   extremely broad; wages, benefits, schedules and many other

20   things.

21           There is a Board decision when an employer had a

22   practice of handing out Thanksgiving Day turkeys.  The union

23   showed up, filed the petition, the employer stopped handing out

24   Thanksgiving Day turkeys.  The National Labor Relations Board

25   said, your practice of handing out those turkeys is a term and

1    condition of employment.  You've changed it, you've changed it

2    unilaterally, and as a result of that, this is a violation of

3    the National Labor Relations Act.  The National Labor Relations

4    Act is very broad when it comes to the concept of a term and

5    condition of employment.

6              So we have clear contractual language by the union

7    that says, these must be addressed.  And then we have the

8    complaint in which the party who is bringing this case

9    repeatedly references the duties and the rules.  And in this

10   situation, I'll refer to the *Brown* case in a second, but the

11   Supreme Court *Allis-Chalmers* decision would say, the question of

12   what the Washington football team and the Defendant Royal,

13   parties to a labor agreement agreed to and what legal

14   consequences were intended to flow from breaches must be

15   resolved per Federal Law under Section 301.

16             The *Rawson* decision would say, what the Washington

17   football team and Defendant Royal, if they breached the duty, it

18   was a duty that arose out of the Collective Bargaining Agreement

19   rules, and constitution and bylaws.  Therefore, it is preempted.

20             Under the Fourth Circuit analysis, the question would

21   be, is there a duty that exists?  What is the nature and scope

22   of that duty?  You can't answer that question without getting to

23   the rules.  And when you get to the rules, you get to the

24   obligation to address the parameters of those rules through the

25   grievance arbitration process.

1              *Brown* --

2              THE COURT:  Let me just follow you, though, for a

3      minute.  Through the grievance arbitration process from which

4      there is no appeal, you said, only to the commissioner.  It's

5      not a normal arbitration, even in the sense that you can what,

6      challenge even the competency of the arbitrator, anything that

7      you can do under the Federal Arbitration Act.  But your reading

8      is that once the commissioner says, that's it, there's no

9      appeal.  The case should be dismissed if anybody files it.  Is

10     that correct?  Maybe I'm misunderstanding.

11             MR. BALLEW:  No, let me clarify.  There are provisions

12     in this Collective Bargaining Agreement that say arbitrator's

13     will address certain issues, and there are other provisions that

14     say the commissioner will address and resolve certain issues.

15     When it comes to Article IV, we are talking about the

16     arbitrators that are designated by the Player's Association and

17     Management Council.  If that arbitrator makes a decision, then

18     under the Federal Arbitration Act and the Maryland Arbitration

19     Act, there are very limited opportunities for anyone to seek an

20     appeal.

21             The use of arbitration has many benefits and it has

22     certain detriments.  The reality is that when parties in a

23     Collective Bargaining Agreement enter into a relationship and

24     say, I'm going to have this arbitrator decide this issue, then

25     they are foregoing certain options that otherwise exist in civil

1    litigation.

2            THE COURT:  But is there internal appeal, internal

3    appeal to the commissioner from the arbitrator's decision?

4            MR. BALLEW:  I do not recall seeing an internal

5    appeals --

6            THE COURT:  That's what I was, perhaps, averting to.

7    I don't know that there is.

8            MR. BALLEW:  Yes, but the decisions of an arbitrator

9    under this contract would be subject to the Federal Arbitration

10   Act, so there would be certain opportunities to take appeals,

11   but they are very limited.  But that's because, again, under our

12   Federal Section 301 labor laws, the parties have entered into an

13   agreement that says, this process will rule.  It will be

14   determined by the arbitrator.

15           And the Supreme Court cases since the 1960's have

16   repeatedly recognized, we can't have state courts coming in and

17   trying to take over that function, and creating a situation in

18   which state courts are giving different interpretations of

19   Collective Bargaining Agreements.

20           The parties agreed this arbitrator or these

21   arbitrators will rule.  That is where the decision should be

22   made.  And if we allow people to take something that is a

23   contract dispute and turn it into a tort claim, and engage in

24   artful pleading, we are undermining the federal labor principles

25   of Section 301.

1        *Brown* is very different.  It was a different

2    collective bargain situation.  *Brown* involved the referee.  This

3    involves two players.  Section 9.3 expressly recognizes rules

4    apply, and 8.3 of the constitution recognizes the commissioner

5    deals with disputes, including disputes among players.

6        The suggestion was made that there's not been citation

7    to any basis for Mr. Green to bring a claim under the grievance

8    process.  I would disagree.  If the Players Association in

9    conjunction with or if Mr. Green separate from the association

10   wanted to pursue the issue, he would pursue it under Article IV

11   of the Collective Bargaining Agreement.

12       The question that he would then present to the

13   arbitrator is whether or not he has articulated a purported

14   failure to properly interpret, apply or comply with the

15   agreement, with the NFL player contract or with the provisions

16   of the NFL's constitution and bylaws.

17       There is a mechanism.  That mechanism should have

18   resulted in a grievance no later than February, 2005.  We're now

19   in 2013.  But that was something he could have pursued.  And in

20   that situation, it would have been the arbitrator under the

21   contract, the parties had agreed to, who would make the

22   decision.  Does he have a claim?  Can he bring this claim?

23       This is what we refer to in labor law as grist for the

24   arbitral mill; a process for resolving disputes in industry that

25   recognizes the role of the arbitrator to make these decisions.

```
 1              Hackbart was a different Collective Bargaining

 2    Agreement.   Hackbart was pre-Supreme Court analysis.   Hackbart

 3    is not good law.   The Court should look to Allis-Chalmers,

 4    Rawson and the McCormick decision to determine, how do I analyze

 5    these documents and these claims.   And again, this is a

 6    situation where the argument is being made that these are

 7    industry standards.

 8              Industry standards is a term that is used in many

 9    context, in many industries.   You can't determine industry

10    standards unless you speak to the particular industry.   In this

11    industry, it's the rules that set the industry standard.   That's

12    why they cited it in their complaint.   It was only when they

13    realized the implications of their admission in pleading that

14    they began to run away from that assertion, but they can't.

15              This is not a situation in which Mr. Royal owes a

16    general duty to everyone in society to, as they said in

17    paragraph 65, play the game of football in a manner that was

18    consistent with the rule set forth by the NFL.

19              THE COURT:  Well, that's why I wonder whether there's

20    a difference between the allegation against Royal and the

21    allegation against the football team.   That is, if the gravamen

22    is the payment of the bounty, does that create a different duty?

23    Is there a duty that the club has that, perhaps, the individual

24    player doesn't or maybe -- I don't know.

25              You argue something like a conspiracy, but I'm asking
```

1    that as well, because you say Mr. Royal owed a duty, et cetera.

2    But again, to come back to the gravamen, as they cast it, of

3    their complaint, it's the bounty system.

4         MR. BALLEW:  The bounty system and the obligations of

5    the club are covered by the same rules, constitution and

6    Collective Bargaining Agreement.  So if there is a duty in this

7    situation where we have allegations that grow out of conduct

8    under a Collective Bargaining Agreement, then you have to look

9    to the Collective Bargaining Agreement to determine, again, as

10   the Supreme Court has recognized, is there a duty?  What is the

11   scope of the duty?

12        THE COURT:  All right.  Final word, because I want to

13   get on to limitations.

14        Mr. Miles, anything further?

15        MR. MILES:  Judge, I don't have anything further.

16        THE COURT:  All right, Mr. Ferguson.

17        MR. FERGUSON:  Good morning, Your Honor.

18        I'm going to address the Statute of Limitations

19   argument.  And this Court has the jurisdiction to determine the

20   substantive issues raised by the defendants in their Statute of

21   Limitations defense in the *Childers versus Chesapeake Potomac*

22   *Telephone Company* case.  The Fourth Circuit says that,

23   although -- before the Court is a question of whether or not

24   preemption should or should not apply.  If there are substantive

25   defenses raised, the Court may nevertheless in the interest of

1    judicial economy address the substantive defenses raised by the

2    defendants.

3            It is our position that the claim by Plaintiff Green

4    in this case is barred by the Statute of Limitations, because it

5    was brought more than three years after the incident occurred.

6    Plaintiff attempts to cast this claim in the discovery, in a

7    manner in which the discovery rule would apply and we submit

8    that the discovery rule does not apply here.

9            THE COURT:  Before you go any further with this, I

10   gather, though, that with regard to the preemption claim, the

11   argument would be that also, essentially, the failure to exhaust

12   administrative remedies, which is comparable to a limitations

13   claim would result in dismissal of the case, just so we put a

14   fine point on that.

15           MR. FERGUSON:  That is correct.

16           THE COURT:  All right.

17           MR. FERGUSON:  And there's also the six months Statute

18   of Limitations under the Labor Management Relations Act.

19           THE COURT:  All right, very good.

20           MR. FERGUSON:  But as far as the state law claims are

21   concerned, the Statute of Limitations applies.

22           Mr. Green in his complaint alleges that he was aware

23   of this claim on the very day that it happened.  He first cast

24   this incident by reference to the previous game that was played

25   with the Redskins early in the season in which he claims to have

1    played an important role and made some starring defensive plays

2    that inhibited the Redskins' success and, indeed, the Giants won

3    that game.  And when the second game came up on December the

4    5th, he alleges that there was some motivation from the Redskins

5    to get back at him, so-to-speak.

6          In the allegations in paragraphs 12 through 25 of the

7    complaint, Mr. Green sets out how when this occurred, he knew

8    immediately that he was injured.  He knew immediately that a

9    play had been made that was beyond the bounds of the NFL rules.

10   He knew immediately that a sanction had been imposed by the

11   referee by imposing the 15-yard penalty for the type of block

12   that was executed by Mr. Royal.  Mr. Green knew immediately that

13   a battery had occurred.  Mr. Green knew immediately that he had

14   sustained injury as a result of that battery.

15         When we look at these facts through the lense of the

16   case of *Doe versus The Archdiocese of Washington* and *Lumsden,*

17   *Design Tech Builders*.  Those two cases really set the limits for

18   what this Court should consider in applying the Statute of

19   Limitations.

20         Where the plaintiff knows of his injury, then the

21   discovery rule does not apply.  It is the discovery of the

22   injury and not the discovery of all elements of the cause of

23   action that starts the running of the clock for the Statute of

24   Limitations.

25         It doesn't matter that there may have been some facts

1    that he did not know on that December day when he sustained his

2    injury.  It does not matter that there may be other defendants

3    that he has yet to identify.  It is only important that he was

4    able to identify on that very day that he sustained an injury as

5    a result of wrongful conduct by Defendant Royal.

6          The Court in *Lumsden versus Design Tech* goes on to say

7    that all that is required to commence the running of the Statute

8    of Limitations is the discovery of an injury and its general

9    cause, not the exact cause, in fact, or the specific parties

10   that are responsible.

11         So, the fact that some event occurred later or some

12   press report occurred later that allowed Mr. Green to discover

13   that, perhaps, Mr. Williams was involved or, perhaps, the

14   Washington Football Club was involved doesn't matter, because

15   the clock begins to start on his duty to investigate his own

16   claim when he knows that an injury has occurred and a wrongful

17   act has caused that injury.

18         This is not unlike -- pardon me.  This is not unlike

19   the *Doe versus Archdiocese* case.  And in that case, you'll

20   recall the young man who was, who claims that he was sexually

21   assaulted remembered some time later in his life that this had

22   had an impact on him.

23         The Court in *Archdiocese of Washington* said that this

24   was, in fact, a battery.  One knows when a battery has occurred

25   and that there are harmful consequences.  It does not matter

1    that you do not know the full scope of the harmful consequences.

2    And in relation to the employer of the priest who allegedly

3    committed these sexual assault, the Court of Special Appeals

4    said that when these happened, there's no question that the

5    plaintiff, Doe, knew who the priest was and knew who the priest

6    employer was.  So, to discover who the employer was at a later

7    date really does not create a situation where the discovery rule

8    can apply.

9              In the *Lumsden versus Design Tech* case, the Court of

10   Appeals noted that once you are on notice of your cause of

11   action, a potential plaintiff is charged with the responsibility

12   for investigating within the three-year limitations period all

13   potential claims and all potential defendants.  Knowledge of the

14   particular defendant is not a necessary element to trigger the

15   running of the Statute of Limitations.

16             We have on that December day knowledge by the

17   plaintiff of all of the elements of his cause of action for

18   battery, injury and wrongful conduct.  We have on that December

19   day an event that triggered the running of the Statute of

20   Limitations for all other defendants that may be involved in

21   that incident and for all theories or causes of action that may

22   have been involved in that incident, and for any additional

23   layer of motivation that may have been involved in that

24   incident.  The clock began to run on that day for his three-year

25   investigation period.

1        And that takes us into the other points that have been

2  raised by the defendant and that -- by the plaintiff; namely,

3  the alleged fraudulent concealment.  Given the facts that have

4  been alleged here, plaintiff's complaint makes it absolutely

5  clear that he was aware of his cause of action the very day this

6  incident occurred.  There was no concealment.  He had an injury.

7  He was aware of wrongful conduct.  And I say that because the

8  Fraudulent Concealment Doctrine just does not apply here,

9  because he was aware of his injury and his cause of action

10  immediately.

11        Nevertheless, as the Court discussed in the *Doe* case,

12  where fraudulent concealment is raised by the plaintiff in order

13  to toll the running of the Statute of Limitations, the complaint

14  must necessarily show specific allegations to show that the

15  defendants did something to conceal that cause of action.  There

16  are no specifics alleged by the plaintiff to set forth any

17  conduct by either of the defendants that they said something or

18  they misled him, or they failed to disclose something.

19        THE COURT:  Wait.  I thought there was some

20  suggestion, though, that the -- maybe it was Mr. Green's own

21  coach who told him, no, this wasn't intentional or there

22  wasn't -- there was some inquiry made, as I recall.

23        MR. FERGUSON:  That was Mr. Green's own coach.

24        THE COURT:  He said he looked at it and there was no,

25  I don't know that anybody was contemplating a direct act by the

 1   football, by the Washington football team.  But as far as it

 2   being intentional or other than just, perhaps, a dirty play,

 3   nothing beyond that.

 4        MR. FERGUSON:  That's correct.  And there was, there's

 5   no allegations that the Washington football club or Mr. Royal

 6   himself did or said anything to conceal this battery cause of

 7   action from him.  And I've already said that he knew it existed

 8   that day.

 9        In order to have the fraudulent concealment theory

10   apply, there must have been some conduct by the defendants that

11   caused the plaintiff to either be --

12        THE COURT:  Well, nobody knew about this bounty

13   system, did they?  I mean, let's talk about Mr. Williams and the

14   New Orleans Saints.  I mean, nobody knew about it until years

15   later.

16        MR. FERGUSON:  That's correct.

17        THE COURT:  So you're saying that he was on his own

18   really to discover it within the three-year period.  And at the

19   same time nobody else seemed to know about it within the

20   three-year period, he's got a special burden.

21        MR. FERGUSON:  No, more than that.  He alleges in his

22   complaint not only that he knew he was injured and that there

23   was wrongful conduct by Mr. Royal, but he alleges in his

24   complaint, and he says to the New York Post the next day that he

25   thought that this was intentional and that they were out to get

```
 1    him.  He had suspicions that very day or the next day that there
 2    was more to this than just an illegal block.
 3              Now, although the NFL has investigated this and found
 4    no Bounty Program at the Washington Football Club --
 5              THE COURT:  What is the status with regard to the New
 6    Orleans situation?  What about Mr. Williams and New Orleans?
 7    I'm recalling what I read in the papers, though, I don't know
 8    what the current status is.
 9              MR. FERGUSON:  I know that the NFL has imposed
10    sanctions on --
11              THE COURT:  Well, they made some sort of determination
12    --
13              MR. FERGUSON:  Yes, they did.
14              THE COURT:  -- that in fact, Mr. Williams at New
15    Orleans had a bounty system in place.
16              MR. FERGUSON:  I don't really want to comment on --
17    I'm not involved in that.
18              THE COURT:  I mean, if it's not a public matter, okay,
19    but I'm just curious as to what the status was of the situation
20    there.
21              MR. FERGUSON:  I know that they --
22              THE COURT:  It may bear on limitations and discovery
23    if the rule applies, because suddenly, as I say, the NFL is
24    coming to a conclusion about certain activity late in the game,
25    if you will, and the argument is somehow that the individual
```

1    plaintiff should have come to that conclusion earlier.

2              MR. FERGUSON:  Well, I do know that the NFL imposed

3    sanctions on the coaches and the players that they claim to be

4    involved.

5              THE COURT:  On the team as well?

6              MR. FERGUSON:  On the team.  And that procedure is

7    on-going as far as I know.  I don't know if it has been --

8              THE COURT:  Is Williams still in football?  I have no

9    idea.

10             MR. FERGUSON:  Pardon me?

11             THE COURT:  Is Williams still in football?

12             MR. FERGUSON:  Yes, he is.

13             THE COURT:  What is he doing?

14             MR. FERGUSON:  He's still with the Saints.

15             He's with the Tennessee Titans.

16             THE COURT:  He's what?

17             MR. FERGUSON:  He's with the Tennessee Titans now.

18             THE COURT:  Okay.

19             MR. FERGUSON:  In order to avail himself of the theory

20   of fraudulent concealment, the plaintiff also must exercise due

21   diligence himself.  He admits as much in his complaint that all

22   he did was complain to his coach, and all he did was hope that

23   the NFL would do something about the Washington Football Club's

24   actions.

25             He made no attempt to follow up or investigate.  He

1    even admits that there was nothing more that he could do.  He

2    could have made a formal complaint to the NFL Commissioner; he

3    did not.  He could have made a formal complaint or inquiry to

4    the Washington Football Club; he did not.  He never investigated

5    by conducting any interviews with current or former Washington

6    football players.  He did not check with the NFL to see if there

7    was any follow-up on their part.

8         So, to assert the theory of fraudulent concealment,

9    not only are the facts absent that the Washington Football Club

10   or Mr. Royal did anything to conceal this from him, but also he

11   did nothing to investigate himself.  And concealment really only

12   comes into play if you do not know your cause of action exists.

13   And it is indisputable that Mr. Green knew his cause of action

14   existed.

15        THE COURT:  Did he know that the Redskins were paying

16   bounties?  That again, going back to what they say is the

17   essence of the complaint.  Not that he was injured, not that

18   even Defendant Royal may have intended to injure him, but that

19   he was doing it pursuant to a Bounty Program.

20        MR. FERGUSON:  Let's say for the purposes of argument,

21   certainly, he did not know of the Bounty program.  The case of

22   *Doe versus Archdiocese of Washington*, and *Lumsden versus Design*

23   *Tech Builders* say that knowledge of the particular elements is

24   not necessary.  Once on notice of one cause of action, and we

25   know indisputably he was aware of his battery cause of action;

1   wrongful conduct, injury.  That gives him a cause of action for

2   battery.  Once he knows of a cause of action, the plaintiff is

3   charged with the responsibility for investigating within the

4   three-year limitations period all potential claims and all

5   potential defendants.  Knowledge of a particular defendant is

6   not a necessary element to trigger the running of the Statute of

7   Limitations.

8          And it's also important to note, because I know that

9   the plaintiff made the argument that he must know all of the

10  elements of his claim, but that is not the case.  In *Lumsden*,

11  the Court of Appeals said, it is the discovery of the injury.

12  And I direct the Court again to the day of this event.  Injury

13  caused by wrongful act.  He fully knew what happened that day.

14         It is the discovery of the injury and not the

15  discovery of all elements of the cause of action that starts the

16  running of the clock for limitations purposes.  All that's

17  required to commence the running of the limitations period is

18  the discovery of an injury and its general cause, and we know

19  what happened that day, not the exact cause in fact or the

20  specific parties that might be responsible.

21         And because of his knowledge of what occurred that

22  day, it triggered a duty to investigate.  And he through the

23  filing of a lawsuit, the commencement of the discovery, the

24  depositions of relevant players and former players, relevant

25  coaches and former coaches could have gotten to the bottom of

1    what he alleges.

2         But instead, he is trying in this lawsuit to take this

3    outside of the CBA and outside of the arbitration process that

4    is called for by the CBA by simply alleging that a block that

5    was a violation under the NFL rules, he is adding a layer of the

6    bounty program over that.  It's a simple allegation on his part

7    and he should not be allowed to take it outside of the CBA and

8    the NFL rules by that simple allegation.

9         He knew the day this occurred and then the next day in

10   the paper he says that he suspected there was some ulterior

11   motive in that block.  He had the duty under Maryland law to

12   investigate and he did not.  The Statute of Limitations was

13   triggered on the very day of --

14        THE COURT:  Would that be true even if there was a

15   written policy that said, you'll get bonuses for making these

16   illegal hits?  Doesn't matter?  I mean, suppose there was clear

17   evidence that there was a document that had not been discovered

18   anywhere that clearly said that this program is designed to help

19   you injure players.  We want you to do that.  Would that make

20   any difference?

21        MR. FERGUSON:  No, it wouldn't make any difference

22   because the, all of the elements of the battery were present on

23   that very day.  He had the right to bring that cause of action.

24   He had the right to invoke the full power of discovery of the

25   NFL grievance procedure.

1          There is a discovery process in there.  He could have

2     interviewed.  He could have conducted a real investigation and

3     undertaken the discovery to learn that.  And if there was a

4     written policy, one would expect it be disclosed during a

5     discovery process.

6          In the *Lumsden versus Design Tech Builders* case, there

7     was a geotech -- well, there was an engineering report about the

8     defective concrete.  But once the lawsuit was filed and all this

9     information came out, this information about the real cause of

10    the failure of that concrete came out in discovery.

11         That didn't change the fact that the plaintiffs in

12    that case knew they had been injured and allowed the Statute of

13    Limitations to run without filing their lawsuit.

14         THE COURT:  All right.

15         MR. FERGUSON:  The same is so here.

16         THE COURT:  All right.  Let's hear from -- who is

17    going to argue for plaintiff.

18         Mr. Miles?

19         MR. MILES:  Again, Your Honor.

20         Judge, if I could, I'd like to on the Statute of

21    Limitations argument start procedurally, because I think the

22    procedure matters here.  Whereas on the preemption claim, there

23    is an argument that we're here on a Motion for Summary Judgment,

24    on the Statute of Limitations claim, it's a straight Motion to

25    Dismiss.  And it's a Motion to Dismiss based on the Statute of

1    Limitations.

2         And so, I want to start talking procedurally about

3    where we're at and where the burden lies, because in the

4    complaint, there is no question that we have allegations of

5    invocation of the discovery rule and allegations of fraudulent

6    concealment.

7         THE COURT:  Well, first question really is, I didn't

8    hear from Mr. Ferguson is, suppose there is dispute of fact as

9    to whether the discovery rule applies.  Does that go to a jury?

10        MR. MILES:  Absolutely.

11        THE COURT:  Do they have to make a finding about

12   whether he reasonably did not know at the time that he had a

13   cause of action?  I mean, I assume that defendant is arguing as

14   a matter of law that that's so, but the other side I question is

15   whether that should be a jury fact anyway.

16        MR. MILES:  It positively should be, Judge.  And the

17   basis for that is a case that I believe the defendants first

18   cited, which is *McBride*, a Court of Appeals case from Maryland.

19   And what the *McBride* case says on page 238, and I'm quoting, the

20   determination as to whether the plaintiff's failure to discover

21   his cause of action was due to failure on his part to use due

22   diligence or to the fact the defendant so concealed the wrong

23   that plaintiff was unable to discover it by the exercise of due

24   diligence is ordinarily a question of fact for the jury.

25        So, we're here on a Motion to Dismiss where there are

1    clear allegations, which must be taken as true in the complaint

2    that both the discovery rule tolls the Statute of Limitations as

3    well as the separate fraudulent concealment exception tolls the

4    Statute of Limitations.

5         At this procedural posture, there is no way that a

6    Motion to Dismiss can be granted on these particular allegations

7    in this particular complaint.

8         The Statute of Limitations under Rule 8(c) of the

9    Federal Rules of Civil Procedure is an affirmative defense.  So

10   on the defense itself, they carry the burden.  Much less on a

11   Motion to Dismiss where everything that we allege in the

12   complaint, discovery rule and fraudulent concealment must be

13   taken as true.

14        If there was any question as to who carries the burden

15   on a Statute of Limitations defense and on this particular

16   argument, it was answered in the *Halley Development* case, which

17   is number one in your binder that we cited as well, which

18   clearly notes, again quoting, the defendant has the burden of

19   proving both discovery rule components.

20        So, it's an affirmative defense where they carry the

21   burden on a Motion to Dismiss where the allegations in the

22   complaint are presumed to be true.

23        Defense counsel referred repeatedly to the *Lumsden*

24   case and it's a case that is used throughout their briefing.

25   The *Lumsden* case says very clearly where the burden lies and how

1   the burden should be utilized.  In the *Lumsden* case the Court

2   says, and I'm on page 802, the defendants had the burden, the

3   defendants had the burden of proving that more than three years

4   before filing suit, number one, the plaintiffs knew of facts

5   sufficient to cause a reasonable person to investigate further.

6   And number two, a diligent investigation would have revealed

7   that plaintiffs were victims of fraud, the alleged tort.

8         There is no evidence in this record, nor could there

9   be, quite frankly, on a Motion to Dismiss that any investigation

10   undertaken by Plaintiff Green in this case ever would have

11   uncovered the Bounty Program, which is the gravamen of this

12   complaint.

13         The defendants have not submitted any such evidence,

14   nor could they on a Motion to Dismiss.  And in fact, everything

15   that we know from outside the four corners of the complaint is

16   that, in fact, such a diligent investigation would not have

17   revealed the existence of the bounty program; would not have

18   revealed the gravamen of the complaint.  And in fact, until this

19   very day, in their pleadings they deny the existence of the

20   program.

21         So, to deny -- again, on a Motion to Dismiss with the

22   allegations in the complaint where they continue to this very

23   moment to deny the existence of the Bounty Program and they

24   carry the burden on an affirmative defense, it simply can't be

25   decided with these allegations on a Motion to Dismiss.

56

```
 1              The Doe case is also a case that the defense relies

 2     heavily upon.  And what the Doe case says is quite interesting,

 3     because what Doe finds and I'm specifically on page 177 on Doe

 4     and I'm reading verbatim, "The cause of action does not accrue

 5     until all elements are present, including damages however

 6     trivial."

 7              So, again, taking a step back and just acknowledging

 8     where we are procedurally, there is an affirmative defense

 9     alleged which they have the burden to prove on a Motion to

10     Dismiss where the allegations in the complaint are taken as

11     true.  There are allegations in the complaint, significant

12     allegations both to invoke the discovery rule, as well as

13     fraudulent concealment.

14              There is no evidence that plaintiff was on notice of

15     all elements in the complaint, nor could there be in a Motion to

16     Dismiss.  And there is certainly no evidence and, in fact, if

17     anything, there is evidence to the contrary that a diligent

18     investigation by Plaintiff Green or anyone, for that matter,

19     would have disclosed the existence of the bounty program, which

20     is the gravamen of this complaint.

21              It only became apparent and it's still not apparent in

22     this suit, because they still deny its existence, in March of

23     2012, when there was an article disclosing this particular

24     practice occurring with this particular defendant.  That's when

25     the Statute of Limitations begins to run under both the
```

 1    discovery rule and the fraudulent concealment.

 2         So, Judge, I don't mean to be overly brief and I'm

 3    certainly happy to answer any questions, but --

 4         THE COURT:  Well, there is an Alternative Motion for

 5    Summary Judgment here as well.

 6         MR. MILES:  On the preemption?

 7         THE COURT:  Am I wrong?  Is there not a Summary

 8    Judgment Motion that goes to the limitations argument?

 9         MR. FERGUSON:  Yes, Judge.

10         MR. MILES:  Judge, if there is an allegation -- if

11    there is a claim that the Motion for Summary Judgment applies to

12    the Statute of Limitations as well under the case law I cited

13    with respect to it being a question of fact, clearly there is no

14    evidence they have submitted to this Court that in any way,

15    shape or form says all the elements were met and that a diligent

16    investigation --

17         THE COURT:  We need to parse this further though.  He

18    cited a case or Mr. Ferguson cited a case that says, once you

19    know of your injury, which he did as of that day and he

20    suspected it was done intentionally, he had a duty to

21    investigate and he didn't investigate.  And he says, therefore,

22    as a matter of law, leave aside Motion to Dismiss at this point,

23    he should prevail.

24         Now, maybe the argument that you make is the same, but

25    you need to address a different standard really when you're

1    talking about Summary Judgment.

2             MR. MILES:  Correct.  And, Judge, what that case says,

3    which he cited which is the *Lumsden* case, is that they have the

4    burden of not just showing that there could have been an

5    investigation or that more could have been done, but rather that

6    a diligent investigation would have revealed that the plaintiff

7    was the victim of a tort.

8             And there is no evidence in this record that any

9    diligent investigation -- in fact, there's no evidence at all on

10   the Statute of Limitations, but there is certainly no evidence

11   in this record that a diligent investigation would have revealed

12   the existence of the Bounty Program.

13            THE COURT:  Yeah, but -- well, but go to the --

14   they're also arguing about the duty, that there was no

15   additional element that needed to be known about.  That the

16   bounty system, in effect, doesn't really add to what your

17   knowledge should have been.  Whether you knew about the bounty

18   system or not, all the other key elements of the tort were known

19   as of December 2004, was it?  That's the argument that he makes,

20   that the legal analysis was there.  And the fact that there may

21   be another defendant or ulterior reason that you don't know

22   about really doesn't matter, because everything that you -- that

23   should have put you -- everything that you had was then and

24   there done.

25            MR. MILES:  And, Judge, this harkens back to your

1  hypothetical to me during the preemption argument, which is,

2  well, if the allegation was simply that Defendant Royal

3  intentionally injured the plaintiff, and we were talking about

4  preemption then, would that be a different allegation in degree

5  and kind for purposes of preemption?  And I answered, no,

6  because it's our position intentional torts are outside of the

7  CBA.

8         But it would be a different argument for purposes of

9  the Statute of Limitations.  And the reason why is this is a

10  different complaint than a complaint that argued or alleged that

11  Defendant Royal with malice of forethought attempted to injure

12  the plaintiff during a football game December, 2004.  If that

13  were the allegation, if that were the cause of action, then I

14  would agree that under the defendant's case law, the Statute of

15  Limitations began in September, 2004.

16         But this complaint is based upon the Bounty Program

17  and the allegation that the Bounty Program did not come to light

18  in any way, shape --

19         THE COURT:  Well, articulate for me the legal standard

20  that gives you a right to sue because of the Bounty Program.

21  What is the legal theory of liability?

22         MR. MILES:  For both --

23         THE COURT:  For suing the Washington Football Club

24  because of the existence of the Bounty Program.  How does

25  it exist independently of Mr. Royal committing a tort of

```
1   battery?
2           MR. MILES:  Because with respect to the Washington
3   Football Club, there are specific allegations both of direct and
4   active negligence stemming from the Bounty Program that would
5   not exist, would not exist in the instance of Defendant Royal
6   simply going rogue and intentionally injuring Plaintiff Green.
7           THE COURT:  Why is it articulated as negligence rather
8   than as intentional tort?
9           MR. MILES:  I believe it's articulated in the
10  complaint as both.  And the act of negligence --
11          THE COURT:  The battery is, that's right, vicarious
12  liability, but then you have two counts of negligence and
13  negligent supervision.  I gather negligent supervision is
14  attended if Williams did it on his own, the football coach
15  should have known.
16          MR. MILES:  Correct.  And the negligent supervision
17  which is a count that we have not even discussed, clearly there
18  are elements within that that did not come to light by any way,
19  shape or form under anyone's calculation until March of 2012.
20  But the act of negligence claims against the defendant football
21  team are based entirely upon their supervision, acceptance and
22  promulgating of the Bounty Program leading to the hit by
23  Defendant Royal.
24          So, essentially, the Defendant Royal is the
25  instrumentality of the defendant football team's negligence.
```

```
 1    And that cause of action based on that theory with those

 2    elements simply did not exist until March of 2012.

 3            And even if you were to go back in time and argue, as

 4    they have, that in December of 2004, the plaintiff should have

 5    been on notice and should have undergone a diligent

 6    investigation, you still have the burden as the defendant

 7    asserting an affirmative defense to prove that, A, that diligent

 8    investigation could have been undertaken; and, B, that had that

 9    diligent investigation been undertaken, it would have, in fact,

10    disclosed the existence of this particular tort.  They don't

11    have evidence, certainly not at this stage, to meet this burden.

12            THE COURT:  I'm trying to get you to articulate the

13    theory of liability.  One, the immediate liability of someone

14    is, you shall not commit a battery against someone else.  And

15    the way I'm trying to understand the tort you're alleging

16    against the football club is, you shall not have a policy that

17    someone should go out and deliberately commit a tort against

18    another person.

19            MR. MILES:  Correct.

20            THE COURT:  Is there such a thing?

21            MR. MILES:  Yes.

22            THE COURT:  And does that exist -- would that be

23    within the normal period of limitations ordinarily?  Leave aside

24    the Bounty Program that comes to light whatever it is, 12 or

25    eight years later.  If you discover that somebody had
```

1  deliberately, by a written contract, let's say it's clear

2  evidence put somebody up to do a hit job or something, whatever

3  it might be, but you know that you've been murdered or you know

4  that you've been wounded in a three-year period and it's

5  pursuant to a contract for hire, whatever it is, hired gun.

6         MR. MILES:  Correct.

7         THE COURT:  Is that a separate theory or is it all

8  part of a theory?

9         MR. MILES:  It's a separate theory.  And here's

10 perhaps the clearest way I can explain it.  An employer would

11 not have vicarious liability, would not have responsibility,

12 typically for an employee who went and committed an intentional

13 sort or a crime for that matter.

14        The way that the defendant football team or any

15 employer becomes responsible for those actions is if they

16 condone them, if they are a party to them, if they have active

17 negligence in -- with respect to that particular claim.

18        So, intentional injury with malice of forethought by

19 Defendant Royal acting rogue separate and apart from a bounty

20 program or anything else, traditional, civil causes of action no

21 vicarious liability for the employer.

22        THE COURT:  Unless it's in the scope of his

23 employment, I'm not really sure that's true, what you just said.

24        MR. MILES:  Within the scope of employment, I think

25 most or certainly some courts would hold an intentional tort

 1  would always be outside the scope and course of the employment.

 2  But what makes this allegation different in kind and in degree,

 3  what makes the cause of action different is we allege the Bounty

 4  Program, which creates -- not just condoning, not just condoning

 5  of the hit itself, but in fact a policy and procedure that

 6  pre-existed the hit.

 7          THE COURT:  That's what I'm asking you.  Why is that

 8  negligence?  Why isn't that in itself a direct intentional tort

 9  by the football club?

10          MR. MILES:  It probably is both.

11          THE COURT:  I don't see it pled that way is what I'm

12  saying.  I see a vicarious liability claim as to Royal, but that

13  depends on his liability.  There's nothing that says directly,

14  you formulated this policy as a direct result of which I was

15  injured.

16          MR. MILES:  In Count Two, which we've titled Vicarious

17  Liability, and I'm looking at paragraph 58 and 59.  We discuss

18  the defendant football team through their supervisory coaching

19  staff maintained a Bounty Program in which players were

20  encouraged and even compensated for playing outside the rules of

21  the game and for intentionally injuring other players.

22          Next paragraph, that this conduct was

23  institutionalized within the defendant football team and the

24  defendant football team were complicit in the battery and injury

25  of Defendant Green.  That's a direct act of negligence claim

 1   against the defendant football team for their creation,

 2   condoning and ratifying this policy of --

 3           THE COURT:  You keep talking language of negligence

 4   against the football team, but you're talking language of intent

 5   when you talk about what they did.

 6           MR. MILES:  And it's both.  We've argued both

 7   negligence, and I believe in Count Two vicarious liability --

 8           THE COURT:  Maybe you've really put two causes of

 9   action in there.  One is for vicarious liability as to what

10   Royal did and the other is their own intentional tort, as you

11   articulate it, I think, in creating a Bounty Program.

12           MR. MILES:  Correct, which I've articulated as active

13   negligence.  But, yes, it is something separate and apart from

14   the strict vicarious liability an employer would typically have

15   for an employee operating within the course and scope of --

16           THE COURT:  Sounds like an intentional tort to me, but

17   that's what I'm having some, at least, conceptual difficulty

18   understanding.  And you may have folded it both into Count Two.

19   The allegation certainly seems to be there, that it was an

20   intentional program to cause this injury.  And then it also was

21   because Royal allegedly did certain things, the football club is

22   vicariously liable for what he did.

23           MR. MILES:  I think that's fair.  I think Count Two

24   could be broken into two separate counts in exactly that manner.

25           THE COURT:  Okay.

1          MR. MILES:  Just in conclusion, there are six or, I

2    believe seven, again, specific paragraphs in the complaint which

3    lay out the fraudulent concealment exception to the normal

4    Statute of Limitations.

5          Those disclose the fraud that occurred, the identity

6    of the person committing the fraud and the reliance upon the

7    fraud.  So, if we're on a Motion to Dismiss, allegations taken

8    as true.  If we're on a Summary Judgment, there is no evidence

9    submitted by the defendants that contradicts those allegations.

10   Certainly not that would allow this Court to grant Summary

11   Judgment on it.

12         So, for two separate bases, based on the allegations

13   in the complaint and the dearth of the evidence submitted by the

14   defendants who have the burden of proving the Statute of

15   Limitations defense, we believe that motion should be denied as

16   well.

17         Thank you.

18         THE COURT:  All right.  Mr. Ferguson.

19         MR. FERGUSON:  Thank you, Your Honor.

20         Let me clear up a couple of things.  The complaint

21   sets forth a claim against Mr. Royal for battery and a claim

22   against the Washington Football Club for negligence and

23   negligent supervision.  Our filings included a Motion to

24   Dismiss, or in the alternative for Summary Judgment.

25         The alternative for Summary Judgment was because we

```
1   added to the court file and the pleadings the provisions of the
2   Collective Bargaining Agreement.  It is our position that on its
3   face, the four corners of the complaint set forth facts, which
4   if taken as true dispose of the plaintiff's claim on the Statute
5   of Limitations, and dispose of every cause of action of the
6   plaintiff against these defendants because of the Statute of
7   Limitations.  There's enough information within the four corners
8   of the complaint for the Court to rule on that as a matter of
9   law.
10             Counsel has suggested to the Court that the rule to be
11   applied is that the plaintiff must know and be on notice of
12   every element of his cause of action in order for the Statute of
13   Limitations to be triggered.  That is not the standard in
14   Maryland.
15             That language was taken out of Doe versus The
16   Archdiocese of Washington.  And the Court did say that all of
17   the elements of the cause of action must be present, not that
18   the plaintiff must be on notice.  And I'll get to the on notice
19   in a moment, because the Court of Appeals addressed that
20   specifically in Lumsden versus Design Tech Builders.
21             But in Doe versus Archdiocese of Washington, the Court
22   was talking about a battery.  And it recognized that factually
23   if there was an impermissible touching of the plaintiff and he
24   was injured by it, that all of the elements were present.
25             Here in this case of Mr. Green, there was wrongful
```

1   conduct, as he has alleged in his complaint; namely, the crack

2   back, the crack block and an injury which he says occurred that

3   very day.  All of the elements of his cause of action of battery

4   were present that day.  And once that occurred, and I'm quoting

5   from *Doe versus Archdiocese* at page 188, 189, once on notice of

6   one cause of action, a potential plaintiff is charged with

7   responsibility for investigating within the limitation period

8   all potential claims and all potential defendants."

9           THE COURT:  This is Maryland Court of Appeals

10  speaking?

11          MR. FERGUSON:  This is the Court of Special Appeals.

12          THE COURT:  Okay.

13          MR. FERGUSON:  Knowledge of the identity of particular

14  defendant is not a necessary element to trigger the running of

15  the Statute of Limitations.  And then our Court of Appeals in

16  *Lumsden versus Design Tech Builders* quoted a passage at page

17  450.  "It is the discovery of the injury and not the discovery

18  of all of the elements of the cause of action."

19          So quite clearly, our Court of Appeals is saying, you

20  don't need to know all of the elements of the cause of action.

21  You need to discover that you were injured.  It is the discovery

22  of the injury and not the discovery of all of the elements of

23  the cause of action that starts the running of the clock for

24  limitations period.  That is when the limitations period started

25  for Mr. Green, the day of his injury.  He knew of his injury, he

 1    knew of the wrongful conduct.  All of the elements were present.

 2            THE COURT:  What about these asbestos cases where the

 3    causation is determined years later?  People develop some sort

 4    of lung problems and it isn't until considerable period of time

 5    after limitations that they realize it's some sort of working

 6    condition that caused it.  Are they subject to the three year

 7    period limitation?

 8            MR. FERGUSON:  They're not, because they don't know

 9    they've been injured.

10            THE COURT:  No, they may well know that they've been

11    injured.  They don't know how.  Maybe there is an aspect of what

12    you just said being so, but they also don't necessarily know

13    what the cause was, do they?

14            MR. FERGUSON:  Well, you bring up an interesting

15    point, because my understanding of the asbestos cases is they do

16    not know they have been injured until some symptoms begin to

17    occur and then they discover what the injury is.

18            *Lumsden versus Design Tech Builders* is the other

19    situation you're talking about.  They know they're injured, but

20    don't know why.  In *Lumsden versus Design Tech*, they knew that

21    the concrete was failing.  And at first, they thought it was

22    because of the salt and chemical products that were put on their

23    by the landscaping company.

24            But later, they learned that there was a flaw in the

25    concrete itself used by the developer, *Design Tech Builders*.

1    And the Court of Appeals says, it does not matter.  It's the

2    discovery of the injury that triggers the cause of action.  So,

3    although they knew their concrete was failing and didn't

4    discover why until some time later, that did not stop the

5    running of the Statute of Limitations.

6         It's not cited in our briefs.  It may be cited in some

7    of the cases, but this is an interesting case involving the

8    Sisters of Mercy in Baltimore.  They had a retirement home

9    constructed and their roof leaked.  And they called in

10   contractor after contractor to try and fix it.  They knew their

11   roof leaked.  It wasn't until five years or so later that they

12   discovered that it was design by the architect that caused that

13   problem.  And suit was filed and it was barred by the Statute of

14   Limitations because the cause of action against the architect

15   who had the poor design began to run when they first noticed the

16   roof was leaking, not when they noticed that there was a design

17   flaw.

18        *Lumsden versus Design Tech* makes it quite clear that

19   it is the discovery that you are injured that triggers the cause

20   of action, not the discovery of all of the element of the cause

21   of action or the particular cause.

22        THE COURT:  Regardless, for example, of how extreme

23   the concealment of liability might, potential liability might

24   have been by the perpetrator.  In other words, you know, it's

25   known that somebody gave rise to this particular injury, but the

1    fact of it is so beyond the realm of ordinary investigation that

2    you don't discover it until after limitation, ordinary

3    limitations.  Doesn't matter, you say?

4              MR. FERGUSON:  It doesn't matter, not in the facts of

5    this case, because let's take *Lumsden versus Design Tech*.  They

6    knew there was a failure of the concrete.  They just didn't know

7    why.  The builder in that case didn't do anything to cause this

8    to be concealed.  They knew this concrete was failing.  That's

9    what triggers the running of the Statute of Limitations.

10             In this instance, Mr. Green knew on the very day of

11   this game that he had sustained an injury.  That triggered the

12   running of the Statute of Limitation as to all causes of action,

13   as to all defendants and to all elements of those causes of

14   action.

15             THE COURT:  All right.  Let me go back for a minute to

16   an analysis that I'm trying to get my hands around and I asked

17   at one point whether there's a difference between Royal's

18   liability potentially on these issues and the football club's

19   liability.  And that's why I'm looking at whether there is an

20   independent cause of action against the football club, not for

21   vicarious liability for an intentional tort by Royal, but for

22   formulating a Bounty Program that sought to injure opposing

23   players.

24             That's the core allegation that's being argued, but

25   it's not set out as a distinctive cause of action.  There's

1    reference to it in various paragraphs, that if you start with

2    the Royal situation, everything that Mr. Ferguson says is true.

3    The plaintiff is injured on that day.  He knows he's been

4    injured.  He knows he's been injured deliberately.  And

5    essentially, suit is filed against Royal, I guess, for that and

6    then by his employer, the football club, for allowing him being

7    vicariously liable for letting him do that.

8            That cause of action may have existed within the

9    three-year period, but it may be gone.  The cause of action that

10   may really be at the heart of the case is the one that I kept

11   asking you, Mr. Miles, articulate the separate cause of action;

12   which is, can someone in effect put out a contract to injure

13   somebody else or whatever it is that's essentially -- maybe

14   that's what it's like, a contract for hire.  Is that a separate

15   cause of action?  Is that one that we're really talking about

16   where the discovery rule applies as opposed to simply an

17   intentional illegal hit back in 2004, because we may be talking

18   past each other than this in terms of where we are.

19           MR. FERGUSON:  Fortunately, our Court of Appeals has

20   addressed that very question.

21           THE COURT:  They have.  Well, I'm amazed.  Go ahead.

22           MR. FERGUSON:  Let assume for the purposes of this

23   argument that Mr. Green's claim against Mr. Royal for the

24   battery that occurred that day is one cause of action.  And then

25   the -- some cause of action based on the Bounty Program against

1   the Washington Football Club is a separate cause of action, and

2   he discovers it sometime later.

3           Court of Appeals in *Lumsden versus Design Tech* at page

4   450, it's the discovery of the injury, not the discovery of all

5   of the elements of the cause of action that starts the running

6   of the clock for limitations purposes.  And they go on.  Here,

7   all that is required to commence the running of the limitations

8   period is the discovery of an injury, and its general cause, not

9   the exact cause, in fact, and the specific parties responsible.

10          So I mean, they did recognize, you know there's an

11  injury.  There may be other elements of what caused it or may be

12  other parties that caused this injury, but once you're on

13  notice, once it's triggered, the clock is running and you're off

14  to the races to discover everything else.  It is the

15  responsibility of the plaintiff to investigate within the

16  limitations period all potential claims and all potential

17  defendants with regard to the injury.

18          THE COURT:  Well, that may be -- that's Court of

19  Special Appeals or Court of Appeals?

20          MR. FERGUSON:  First quote was from the Court of

21  Appeals.  The last one was from the Court of Special Appeals.

22          THE COURT:  Well, Mr. Miles, I want to you to address

23  this.  You don't necessarily have to come up with a final

24  statement on this today, but you see my dilemma.  As I

25  understand one cause of action for against battery against Royal

1    and vicarious liability for the battery, that can exist

2    independently of a Bounty Program.  Maybe or maybe not, but at

3    least there's a theoretical cause of action there.

4        But the Bounty Program is the gravamen and, perhaps,

5    it does need to stand out as a separate cause of action and

6    whether given the language that Mr. Ferguson has cited, you can

7    get past that obstacle.

8        And again, this is Court of Appeals, which sometimes

9    goes overboard, candidly, when they don't have all the facts.

10   That's why we deal from case to case here rather than these

11   broad statements that forever guide us, but at least it's along

12   lines of your argument.

13       And I think we need to look at this sort of separate

14   contract for hire, if you would.  Don't want to be too invidious

15   about this, but you see the analogy.  It's different from simply

16   vicarious liability for an employee's tort.

17       MR. MILES:  Judge, if I can address that and I'm happy

18   to do it from here.

19       THE COURT:  All right.

20       MR. MILES:  Judge, that count exist in the complaint

21   under Count Four.  Count Four, which begins at page 12 of our

22   complaint, the negligence count directly against the defendant

23   football team.  And if you go to page 14 of that count of the

24   complaint at actually paragraph 80, paragraph 80 reads that

25   defendant football team breached its duty to plaintiff by

```
 1    allowing the aforementioned Bounty Program to develop and

 2    flourish.  This negligence, gross negligence and maliciousness

 3    resulted in Defendant Royal injuring the plaintiff.  And then it

 4    continues to go on and explain exactly why --

 5           THE COURT:  It still doesn't talk about intentional.

 6    It's negligent, gross negligent and malicious.  Maybe when you

 7    talk about malice, you're talking about intentional, but it

 8    fuses the --

 9           I mean, the question is, what's the standard here

10    anyway?  If you try this cause of action, what are you saying?

11    That it varies from -- if you start with a negligence concept,

12    it varies from a standard of care or with regard to ordinary

13    and -- standard of care or it's way beyond that in the sense

14    that you actually formulated the policy.

15           I mean, that's what you're saying here, that the Red

16    -- no, let me be careful about that.  That the football club

17    deliberately formulated a policy to injure your client.  That's

18    what you're saying.

19           MR. MILES:  Correct.  And, Judge, I believe that this

20    particular count, obviously, negligence is straight negligence.

21    Again, I'm reading from paragraph 80.  As we go on the spectrum

22    of mens rea, gross negligence becomes further along the spectrum

23    towards an intentional tort.  Maliciousness would be further

24    along that spectrum.  Maliciousness would pre-suppose malice,

25    which would pre-suppose intent to injury.  So this particular
```

1   count does, in fact, have I believe that intentional tort pled

2   within it.

3         THE COURT:  Well, candidly, what it really ought to

4   say -- there ought to be separate causes of action.  One could

5   be for, if you say, straight negligence.  I'm not sure that

6   would past muster when we got to a discussion of the merits if

7   it survives the preemption argument and so on.  Gross negligence

8   is another standard.  Intentional tort is another standard.

9   Now, you fused all three of them, I think, into this one count.

10        MR. MILES:  Correct.

11        THE COURT:  And as I say, as the case might get tried,

12  it goes to the jury with different instructions, and not just as

13  a single count.  You don't say, how do you find on Count Four

14  and then put three different possibilities within it.  You need

15  to think about how a case gets tried.

16        Anyway, that may be something that we're going to have

17  to sort out over time.

18        MR. MILES:  Sure.  And we can certainly amend to add

19  separate counts.

20        THE COURT:  All right.  Anyway, the issue that you're

21  still faced with, I think, is this argument and maybe we can

22  wind up on this point, that even if there is a separate cause of

23  action for the intentional formulation of a contract to injure

24  somebody in your line of business, is there, is that subsumed in

25  the argument that Mr. Ferguson makes that you still have -- once

1   you know your injury, you got to know all these potential

2   contributors or is there something unique and different about

3   that that would put the discovery rule in play.

4           MR. MILES:  Well, two explanations, Judge.  First of

5   all, I think there is something unique and different about that.

6   I mean, the fact of the matter is, particularly, with respect to

7   the defendant football team, no facts of that particular cause

8   of action were known until March of 2012.  There was absolutely

9   nothing known about the Bounty Program, how it operated, whether

10  it operated at the defendant's football team; who ran it, how

11  they ran it, why they ran it?

12          None of those facts existed and plaintiff cannot be

13  charged with notice of any of those facts until such time as the

14  article gets published in March of 2012.  That in and of itself,

15  I think, is sufficient to deny the motion.

16          The second point I would make is defense counsel

17  continues to refer to one part of the discovery rule burden that

18  defense has in order to show that the Statute of Limitations

19  applies, but not the second part.  And I'm reading a different

20  quote here from *Lumsden*, which is a case that they heavily rely

21  upon obviously.  "A claimant reasonably should know of a wrong

22  if the claimant has knowledge of circumstances which ought to

23  have put a person of ordinary prudence on inquiry with notice of

24  all facts, pause."

25          That's the part they keep arguing.  They keep saying,

1   in 2004 when the hit occurred, the plaintiff was on knowledge,

2   on notice of the existence of all the facts.  But the test

3   continues and their burden continues.

4        And what it says is, continuing on, "Which such an

5   investigation would in all probability have disclosed if it had

6   been reasonably pursued."  That second part of the test, they

7   simply can't meet on a Motion to Dismiss, which I'm still

8   unclear if we're on that or on a Motion for Summary Judgment.

9        A Motion for Summary Judgment or anything else, there

10  is no claim in this case, nor could there be, because they

11  continue -- remember, Statute of Limitations, affirmative

12  defense, a plea of avoidance.  There is no claim in this case

13  that the plaintiff could have, could have discovered the

14  existence of the Bounty Program more than three years prior to

15  filing his complaint if he had diligently pursued it in some way

16  that they believe he did not.  That doesn't exist.

17            THE COURT:  All right.  Final word.

18            MR. FERGUSON:  It doesn't matter that they did not

19  know who did it or who, who else might be responsible.  Our

20  Court of Appeals has quoted with approval from *The Archdiocese*

21  *of Washington* case, once on notice of one cause of action, a

22  potential plaintiff is charged with responsibility for

23  investigating within the limitations period all potential claims

24  and all potential defendants with regard to the injury.

25            And it goes on to say at page 451, limitations begins

1  to run when the fact of the injury in known, not when alleged

2  wrongdoers are identified.  And there is no dispute within the

3  four corners of this complaint the fact of the injury was known

4  on the day of this football game.  The Statute of Limitations

5  was triggered.

6          All these other cases that talk about other elements

7  or other investigations are cases where the complexity of the

8  injury is such that you don't know what the injury is or that

9  you have been injured.

10          Just like *The Sisters of Mercy*, when the first leak

11  occurred, they knew they had an injury.  It's just too bad that

12  it took them five years to discover that it was the architect,

13  not the contractor; that it was a poor design, not a poor

14  installation.

15          THE COURT:  All right.

16          MR. FERGUSON:  Thank you, Your Honor.

17          THE COURT:  Let me pose this to you.  I'm going to

18  write an opinion in this case, so I won't give you an oral

19  opinion at this point.  But I want to invite the parties and

20  I'll give plaintiff two weeks to -- well, let's see.  We're in

21  December almost already.  Bit of a short fuse, but by the end of

22  December, I would say.  If you want to look at this issue of a

23  separate cause of action for a party which deliberately engages

24  another party to cause physical injury to a client, what kind of

25  case that is in terms of the elements and whether there is a

```
 1    discovery-type issue involved there where the contract, if you

 2    will, only comes to light beyond the ordinary limitations

 3    period.

 4         Assuming that there's an injury that occurs as an

 5    ordinary injury would for the three-year period, I think you

 6    need to look at that and see whether that particular cause of

 7    action separately stated has a different character.  And then

 8    I'll give the defendant, if you want, 30 days to respond in

 9    terms of any write-up.

10         MR. MILES:  Would you like this in a supplemental

11    briefing?

12         THE COURT:  I think you should do it as a supplemental

13    brief.  I mean, I think -- look at that issue.  It's really

14    something more I thought about as I looked at your papers and I

15    didn't do any independent research on it myself.  Believing in

16    the adversarial system, I'd like you to do it and I'll see what

17    I can supplement, but let's do it that way and see where we are.

18         And it will take a while to get this opinion written

19    anyway, and I don't think we're going anywhere in this case.

20    It's all sort of, I think, established already.  Nobody needs to

21    get an answer by the end of next month, but we will write an

22    opinion, I think.  It's an important issue.  There's some

23    interesting issues to deal with here.

24         MR. MILES:  And just in terms of deadline, do you want

25    us to --
```

```
 1                THE COURT:  Well, can you do it by end of December?

 2                MR. MILES:  Sure.

 3                THE COURT:  I mean, there's a holiday in between, but

 4    do the best you can, two holidays.

 5                MR. MILES:  Not a problem.

 6                THE COURT:  And then if defendants can respond within

 7    30 days.  And then you can have 15 days to reply.  If you need

 8    more time, let me know.  I mean, this is not necessarily the

 9    front burner opinion.  I've got some other opinions I'm working

10    on now that will have to take priority.

11                But that said, interesting argument and we shall have

12    something to say about it soon enough.

13                MR. MILES:  Thank you, Judge.

14                THE COURT:  All right.  Thank you very much, counsel.

15    Have a nice holiday.

16           (Recess at 12:15 p.m.)

17

18

19

20

21

22

23

24

25
```

1                    CERTIFICATE OF COURT REPORTER

2          I, Linda C. Marshall, certify that the foregoing is a

3    correct transcript from the record of proceedings in the

4    above-entitled matter.

5

6

7

8          _____
                  Linda C. Marshall, RPR
9                 Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# 1

**1.7 [1]** 29/22
**10 [1]** 20/6
**100 [1]** 2/4
**10632 [1]** 1/15
**10:15 [1]** 1/8
**1111 [1]** 1/18
**1150 [1]** 1/22
**12 [4]** 23/16 42/6 61/24 73/21
**12:15 p.m [1]** 80/16
**13-1961 [2]** 1/5 3/3
**14 [2]** 33/25 73/23
**1401 [2]** 2/3 2/4
**15 [1]** 80/7
**15-yard [1]** 42/11
**1615 [1]** 1/16
**177 [1]** 56/3
**188 [1]** 67/5
**189 [1]** 67/5
**1960 [1]** 8/16
**1960's [4]** 4/25 17/20 17/24 37/15
**1961 [2]** 1/5 3/3
**1962 [1]** 5/4
**1964 [1]** 9/6
**1977 [1]** 20/21
**1993 [2]** 8/20 24/14

# 2

**2002 [1]** 22/25
**2004 [6]** 58/19 59/12 59/15 61/4 71/17 77/1
**2005 [1]** 38/18
**2012 [5]** 56/23 60/19 61/2 76/8 76/14
**2013 [2]** 1/8 38/19
**21044 [1]** 1/16
**21201 [1]** 2/4
**2200 [1]** 2/5
**238 [1]** 53/19
**25 [2]** 1/8 42/6
**2525 [1]** 1/21
**2566 [1]** 1/19

# 3

**30 [2]** 79/8 80/7
**301 [11]** 1/24 2/10 4/12 5/1 6/1 7/2 19/7 23/24 35/15 37/12 37/25
**305-442-8666 [1]** 1/23
**3229 [2]** 1/24 2/10
**33134 [1]** 1/22
**33139 [1]** 1/19
**344-3229 [2]** 1/24 2/10

# 4

**410-730-1615 [1]** 1/16
**410-837-2200 [1]** 2/5
**420 [1]** 1/15
**450 [2]** 67/17 72/4
**451 [1]** 77/25
**49 [1]** 9/17
**4th [1]** 1/18

# 5

**58 [2]** 9/21 63/17
**59 [1]** 63/17
**5th [1]** 42/4

# 6

**65 [2]** 9/23 39/17
**68 [1]** 10/1

# 7

**75 [1]** 34/18
**786-286-2566 [1]** 1/19

# 8

**9.3 [5]** 1/3/16 6/14 33/18 38/1
**80 [3]** 73/24 73/24 74/21
**80's [1]** 5/7
**802 [1]** 55/2
**8666 [1]** 1/23

# 9

**9.3 [3]** 13/17 13/20 38/3
**9.32 [1]** 33/6
**90's [1]** 5/7

# A

**A.M [1]** 1/8
**abide [4]** 10/13 13/22 15/12 33/8
**ability [3]** 23/25 28/18 28/22
**able [2]** 17/3 43/4
**about [46]** 3/16 3/21 10/14 12/21 14/18
  16/21 21/12 21/13 22/5 25/21 26/14
  36/15 46/12 46/13 46/14 46/19 47/6
  47/24 48/23 52/7 52/9 53/2 53/11 58/1
  58/14 58/15 58/17 58/22 59/3 64/5
  66/22 68/2 68/19 71/15 73/15 74/5 74/7
  74/7 74/16 75/15 76/2 76/5 76/9 78/6
  79/14 80/12
**about the [1]** 36/15
**above [2]** 31/15 81/4
**above-entitled [1]** 81/4
**absent [1]** 49/9
**absolute [1]** 17/2
**absolutely [3]** 45/4 53/10 76/8
**accept [1]** 15/23
**acceptance [1]** 60/21
**accepted [1]** 20/1
**accordance [1]** 15/22
**according [2]** 21/3 21/4
**accrue [1]** 56/4
**accurate [1]** 12/6
**acknowledging [1]** 56/7
**act [23]** 4/12 9/6 10/8 16/16 16/17 18/16
  18/20 19/6 22/1 34/9 35/3 35/4 36/7
  36/18 36/19 37/10 41/18 43/17 45/25
  50/13 60/10 60/20 63/25
**acting [1]** 10/8 62/19
**action [74]** 1/4 3/22 7/6 7/8 8/7 11/1
  16/12 16/15 16/16 17/20 19/3 25/1 25/8 29/7
  29/9 31/6 31/19 42/23 44/11 44/17
  44/21 45/5 45/9 45/15 46/7 49/12 49/13
  49/24 49/25 50/1 50/2 50/15 51/23
  53/13 53/21 56/4 59/13 61/1 62/20 63/3
  64/9 66/5 66/12 66/17 67/3 67/6 67/18
  67/20 67/23 69/2 69/14 69/20 69/21
  70/12 70/14 70/20 70/25 71/8 71/9
  71/11 71/15 71/24 71/25 72/1 72/5
  72/25 73/3 73/5 74/10 75/4 75/23 76/8
  77/21 78/23 79/7
**actions [4]** 32/8 48/24 62/15
**active [3]** 60/4 62/16 64/12
**activity [1]** 47/24
**actually [5]** 12/24 31/5 31/9 73/24 74/14
**add [2]** 58/16 75/18
**added [1]** 66/1
**adding [1]** 51/5
**addition [1]** 14/2
**additional [2]** 44/22 58/15
**address [12]** 3/19 4/11 33/4 33/17 35/24
  36/13 36/14 40/18 41/1 57/25 72/22
  73/17
**addressed [7]** 3/20 5/22 18/4 18/19 35/7
  66/19 71/20
**addressing [1]** 18/1
**ADEA [1]** 19/2
**adjudicating [1]** 30/24
**Adler [1]** 1/14

**administration [1]** 5/20
**administrative [1]** 41/12
**admission [2]** 38/1 05
**admissions [1]** 20/10
**admits [2]** 48/21 49/1
**admonition [1]** 20/25
**adversarial [1]** 79/16
**affirmative [6]** 54/9 54/20 55/24 56/8
  61/7 77/11
**aforementioned [1]** 74/1
**after [7]** 16/1 30/6 34/11 41/5 68/5 69/10
  70/2
**again [31]** 7/7 8/1 8/13 8/21 8/21 13/4
  15/11 20/2 21/3 24/14 27/24 29/18 30/1
  30/6 30/11 31/16 31/21 33/5 37/11 39/5
  40/2 40/9 49/16 50/12 52/19 54/18
  55/21 56/7 65/2 73/8 74/21
**against [32]** 9/1 9/16 19/1 20/25 23/4
  23/21 27/8 27/11 27/15 28/2 28/3 28/23
  28/23 39/20 39/21 60/20 61/14 61/16
  61/17 64/1 64/4 65/21 65/22 66/6 69/14
  70/20 71/5 71/23 71/25 72/25 72/25
  73/22
**age [1]** 18/20
**ago [1]** 18/18
**agree [5]** 16/11 16/14 18/3 33/16 59/14
**agreed [6]** 6/3 15/12 33/14 35/13 37/20
  38/21
**agreement [67]** 4/14 4/16 4/18 4/20 5/6
  5/15 6/2 6/4 6/16 6/23 7/10 7/11 7/14
  7/17 7/19 8/2 8/8 8/11 8/12 9/10 11/6
  11/12 11/17 11/21 11/23 12/2 12/15
  13/18 14/20 15/6 15/13 15/19 15/24
  16/1 16/3 16/10 17/12 18/14 18/22
  18/23 19/8 19/9 20/17 21/1 23/25 24/16
  24/18 24/20 26/17 26/23 27/13 27/18
  28/12 28/20 34/3 35/13 35/18 36/12
  36/23 37/13 38/11 38/15 39/2 40/6 40/8
  40/9 66/2
**Agreements [1]** 37/19
**agrees [2]** 13/22 33/7
**ahead [1]** 71/21
**AIDED [2]** 1/24 2/11
**al [2]** 1/7 3/4
**all [76]** 3/6 3/14 3/19 4/6 13/17 20/19
  20/20 22/4 22/6 25/10 25/21 32/25 33/5
  40/12 40/16 41/16 41/19 42/22 43/7
  44/12 44/13 44/17 44/20 44/21 48/21
  48/22 50/4 50/4 50/9 50/15 50/16 51/22
  52/8 52/14 52/16 56/5 56/15 57/15 58/9
  58/16 62/7 65/18 66/16 66/24 67/3 67/8
  67/8 67/18 67/20 67/22 68/1 69/20
  70/12 70/13 70/13 70/15 72/4 72/7
  72/16 72/16 73/9 73/19 75/9 75/20 76/1
  76/5 76/24 77/2 77/5 77/17 77/23 77/24
  78/8 78/15 79/20 80/14
**allegation [15]** 21/18 21/19 23/17 39/20
  39/21 51/6 51/8 57/10 59/2 59/4 59/13
  59/17 63/2 64/19 70/24
**allegations [22]** 20/4 20/8 24/12 30/3
  40/7 42/6 45/14 46/5 53/4 53/5 54/1
  54/6 54/21 55/22 55/25 56/10 56/11
  56/12 60/3 65/7 65/9 65/12
**allege [4]** 29/2 32/15 54/11 63/3
**alleged [13]** 23/4 23/11 24/17 24/19
  25/14 45/3 45/4 45/16 55/7 56/9 59/10
  67/1 78/1
**allegedly [3]** 21/15 44/2 64/21
**alleges [5]** 41/22 42/4 46/21 46/23 51/1
**alleging [4]** 6/6 9/15 51/4 61/15
**Allis [5]** 5/8 7/7 20/22 35/11 39/3
**Allis-Chalmers [5]** 5/8 7/7 20/22 35/11
  39/3
**allow [4]** 28/16 33/12 37/22 65/10
**allowed [3]** 43/12 51/7 52/12

## A

**allowing [2]** 73/6 74/13
**almost [1]** 32/19 78/21
**along [3]** 73/11 74/22 74/24
**already [3]** 46/7 78/21 79/20
**also [14]** 3/11 6/21 9/8 11/4 19/5 41/11 41/17 48/20 49/10 50/8 56/1 58/14 64/20 68/12
**alternative [1]** 57/4 65/24 65/25
**although [4]** 15/17 40/23 47/3 69/3
**always [2]** 8/14 63/1
**am [2]** 27/4 57/7
**amazed [1]** 71/21
**amend [1]** 75/18
**America [1]** 2/3
**among [3]** 14/4 33/20 38/5
**analogous [1]** 22/22
**analogy [1]** 73/15
**analysis [13]** 6/8 6/18 6/22 13/13 15/2 20/17 20/20 25/18 32/10 35/20 39/2 58/20 70/16
**analytical [1]** 4/24
**analyze [1]** 39/4
**analyzed [1]** 13/7
**analyzing [1]** 8/6
**and the [1]** 26/19
**and/or [2]** 14/4 33/21
**another [17]** 10/22 13/11 15/23 22/20 25/15 26/23 27/8 27/11 27/15 28/23 28/23 29/24 58/21 61/18 75/8 75/8 78/24
**answer [5]** 17/8 22/18 35/22 57/3 79/21
**answered [2]** 54/16 59/5
**antithesis [1]** 17/22
**any [53]** 3/21 14/4 14/5 15/25 15/25 16/2 16/3 16/7 16/25 17/5 17/5 17/15 18/14 23/8 23/13 26/21 27/4 27/5 27/7 28/1 28/4 28/18 28/19 29/7 30/9 30/9 31/23 33/6 33/13 33/20 33/21 34/1 34/13 38/7 41/9 44/22 45/16 49/5 49/7 51/20 51/21 54/14 55/9 55/13 57/3 57/14 58/8 59/18 60/18 62/14 76/13 79/9 79/15
**anybody [2]** 36/9 45/25
**anyone [3]** 27/6 36/19 56/18
**anyone's [1]** 60/19
**anything [12]** 21/13 26/18 27/12 36/6 40/14 40/15 46/6 49/10 56/17 62/20 70/7 77/9
**anyway [5]** 33/15 74/10 75/16 75/20 79/19
**anywhere [3]** 16/19 51/18 79/19
**apart [3]** 31/1 62/19 64/13
**apologize [2]** 18/17 19/11
**apparent [2]** 56/21 56/21
**apparently [2]** 5/11 10/25
**appeal [6]** 23/10 36/4 36/9 36/20 37/2 37/3
**appeals [21]** 23/2 37/5 37/10 44/3 44/10 50/11 53/18 66/19 67/9 67/11 67/15 67/19 69/1 71/19 72/3 72/19 72/19 72/21 72/21 73/8 77/20
**appear [1]** 28/8
**APPEARANCES [2]** 1/13 2/1
**appendix [1]** 15/12
**applicable [8]** 10/3 11/17 12/7 16/4 31/13 32/18 32/20 34/9
**application [3]** 16/2 16/8 34/2
**applied [5]** 5/16 7/22 18/14 34/8 66/11
**applies [13]** 16/12 16/15 27/24 30/12 31/1 31/4 32/5 41/21 47/23 53/9 57/11 71/16 76/19
**apply [10]** 32/23 38/4 38/14 40/24 41/7 41/8 42/21 44/8 45/8 46/10

**applying [1]** 42/18
**appropriate [1]** 21/8
**appropriately [1]** 28/4
**approval [1]** 77/20
**arbitral [1]** 38/24
**arbitrate [1]** 33/20
**arbitration [17]** 15/15 15/20 17/13 17/14 18/25 32/5 32/7 35/25 36/3 36/5 36/7 36/18 36/18 36/21 37/9 51/3
**arbitrator [15]** 7/1 17/2 17/21 17/23 18/1 19/11 36/6 36/17 36/24 37/8 37/14 37/20 38/13 38/20 38/25
**arbitrator's [2]** 36/12 37/3
**arbitrators [4]** 5/2 18/2 36/16 37/21
**Archdiocese [8]** 42/16 43/19 43/23 49/22 66/16 66/21 67/5 77/20
**architect [3]** 69/12 69/14 78/12
**are [87]**
**aren't [1]** 8/14
**arena [1]** 26/11
**argue [8]** 3/24 3/25 4/3 4/4 24/9 39/25 52/17 61/3
**argued [6]** 3/22 12/1 30/3 59/10 64/6 70/24
**arguing [7]** 5/19 7/5 25/5 29/12 52/13 58/14 76/25
**argument [36]** 4/1 8/4 11/11 13/5 14/23 15/7 18/25 19/14 20/7 21/14 22/10 28/10 29/1 29/10 30/8 34/5 39/6 40/19 41/11 47/25 49/20 50/9 52/21 52/23 54/16 57/8 57/24 58/19 59/1 59/8 71/23 73/12 75/7 75/21 76/5 76/20 80/11
**arguments [3]** 12/3 26/13 29/18
**arise [1]** 6/5
**arising [1]** 16/1
**arose [1]** 35/18
**around [1]** 70/16
**arrangements [1]** 8/11
**artful [1]** 37/24
**article [6]** 15/17 15/23 36/15 38/10 56/23 76/14
**articulate [4]** 59/19 61/12 64/11 71/11
**articulated [7]** 44/20 60/7 60/9 64/12
**as [93]**
**asbestos [2]** 68/2 68/15
**aside [6]** 12/12 16/16 25/7 25/14 57/22 61/23
**ask [3]** 13/9 18/13 26/20
**asked [1]** 70/16
**asking [3]** 39/25 63/7 71/11
**aspect [1]** 68/11
**assault [2]** 23/3 44/3
**assaulted [1]** 43/21
**assert [1]** 49/8
**asserting [1]** 61/7
**assertion [4]** 5/16 23/8 33/2 39/14
**asserts [1]** 10/7
**association [5]** 4/19 17/11 36/16 38/8 38/9
**assume [8]** 10/15 25/4 27/2 31/3 31/4 31/7 53/13 71/22
**assuming [6]** 16/15 27/24 30/1 30/11 30/12 79/4
**assumption [3]** 6/14 20/25 26/14
**at [69]** 3/11 4/22 6/21 6/25 7/23 8/5 8/19 8/20 8/21 8/23 9/1 9/4 9/12 10/6 11/25 12/7 12/23 13/2 16/6 16/6 17/19 19/4 19/11 19/20 20/4 21/22 22/1 23/7 24/2 25/5 28/10 28/18 30/7 30/21 42/5 42/15 44/6 45/24 46/18 47/4 47/14 53/3 53/12 54/5 57/22 58/9 61/11 63/17 64/17 67/5 67/16 68/21 70/17 70/19 71/10 72/3 73/2 73/11 73/13 73/21 73/24 76/10 77/25 78/19 78/22 79/6 79/13 79/14 80/16

**applying [1]** 42/18

## B

**back [14]** 5/10 5/12 8/15 12/16 21/25 40/2 42/5 49/16 56/7 58/25 61/3 67/2 70/15 71/17
**backdrop [1]** 29/6
**bad [1]** 78/11
**ball [1]** 25/25
**BALLEW [10]** 2/2 2/3 3/11 4/4 4/8 4/9 10/18 10/24 11/19 13/4
**Baltimore [2]** 2/4 69/8
**Bank [1]** 2/3
**bargain [1]** 38/2
**Bargaining [52]** 4/14 4/16 4/17 4/20 5/6 5/15 6/16 6/23 7/10 7/14 7/17 7/18 8/2 8/8 8/11 9/9 11/5 11/12 11/17 11/21 11/23 12/2 12/15 13/18 14/19 15/5 15/13 15/19 16/9 18/14 18/21 18/23 20/17 23/25 24/16 24/18 24/20 26/17 26/22 27/13 27/18 28/20 35/18 36/12 36/23 37/19 38/11 39/1 40/6 40/8 40/9 66/2
**barred [3]** 34/13 41/4 69/13
**BARRETT [2]** 1/4 3/3
**based [10]** 16/23 22/10 29/18 31/6 52/25 59/16 60/21 61/1 65/12 71/25
**bases [2]** 28/24 65/12
**basis [3]** 32/15 38/7 53/17
**battery [25]** 9/17 23/3 23/7 24/4 24/6 29/7 42/13 42/14 43/24 43/24 44/18 46/6 49/25 50/2 51/22 60/1 60/11 61/14 63/24 65/21 66/22 67/3 71/24 72/25 73/1
**be [101]**
**Beach [1]** 1/19
**bear [1]** 47/22
**became [1]** 56/21
**because [51]** 3/20 6/14 6/22 8/24 11/18 11/23 17/21 18/2 19/17 20/25 22/15 24/6 24/11 25/22 29/21 31/8 32/4 32/10 32/18 34/16 37/11 40/1 40/12 41/4 43/14 45/7 45/9 47/23 50/8 50/21 51/22 52/21 53/3 56/3 56/22 58/22 59/6 59/20 59/24 60/2 64/21 65/25 66/6 66/19 68/8 68/15 68/22 69/14 70/5 71/17 77/10
**become [2]** 20/5
**becomes [2]** 62/15 74/22
**been [36]** 4/25 17/20 18/13 25/8 26/21 28/6 34/18 38/6 38/20 42/9 42/10 42/25 44/22 44/23 45/1 45/4 46/10 48/7 51/17 52/12 58/4 58/5 58/17 61/5 61/8 61/9 62/3 62/4 68/9 68/10 68/16 69/24 71/3 71/4 77/6 78/9
**before [7]** 1/11 3/2 3/4 3/21 40/23 41/9 55/4
**began [4]** 39/14 44/24 59/15 69/15
**begin [6]** 4/24 9/13 14/8 20/3 28/17 68/16
**beginning [2]** 5/8 17/8
**begins [6]** 15/20 19/15 43/15 56/25

**B**

begins... [2] 73/23 77/25
behalf [1] 4/9
behaved [1] 29/13
behavior [1] 24/19
being [15] 5/21 11/9 11/25 12/3 12/14 17/3 21/17 27/5 30/5 39/6 46/2 57/13 68/12 70/24 71/6
believe [9] 27/25 53/17 60/9 64/7 65/2 65/15 74/19 75/1 77/16
Believing [1] 79/15
belongings [1] 7/25
benefit [2] 5/14 21/13
benefiting [1] 29/25
benefits [9] 5/13 5/14 5/16 5/18 8/23 9/4 21/6 34/19 36/21
best [1] 80/4
between [9] 4/18 8/12 14/4 19/21 27/21 33/20 39/20 70/17 80/3
beyond [6] 17/17 42/9 46/3 70/1 74/13 79/2
big [1] 3/17
binder [2] 23/16 54/17
bit [2] 21/14 78/21
Blackmun [2] 5/24 5/24
block [10] 12/17 12/20 13/1 15/9 21/25 42/11 47/2 51/4 51/11 67/2
blocking [2] 10/2 21/8
blocks [1] 21/24
bonuses [2] 21/16 51/15
Board [3] 34/17 34/21 34/24
both [17] 11/3 22/18 22/22 23/18 29/25 31/7 54/2 54/19 56/12 56/25 59/22 60/3 60/10 63/10 64/6 64/6 64/18
bottom [1] 50/25
Boulevard [1] 1/21
bound [3] 13/23 19/9 33/8
boundaries [1] 11/9
bounds [1] 42/9
bounties [1] 49/16
bounty [47] 10/21 10/25 12/17 21/13 22/13 23/11 24/5 24/21 25/1 25/6 25/14 29/23 32/10 39/22 40/3 40/4 46/12 47/4 47/15 49/19 49/21 51/6 55/1 55/17 55/23 56/19 58/12 58/16 58/17 59/16 59/17 59/20 59/24 60/4 60/22 61/24 62/19 63/3 63/19 64/11 70/22 71/25 73/2 73/4 74/1 76/9 77/14
Boy [1] 25/23
breach [2] 6/6 31/6
breached [4] 10/1 29/21 35/17 73/25
breaches [5] 6/4 10/11 10/12 32/20 35/14
brief [2] 57/2 79/13
briefing [2] 54/24 79/11
briefs [1] 69/6
bring [9] 17/12 18/25 19/2 28/19 28/23 38/7 38/22 51/23 68/14
bringing [2] 19/3 35/8
brings [1] 26/10
broad [5] 15/15 28/21 34/19 35/4 73/11
broken [1] 64/24
brought [9] 5/6 7/4 8/1 23/4 26/24 27/5 28/7 32/8 41/5
Brown [20] 15/1 20/12 22/24 23/1 23/1 23/6 23/9 29/11 29/11 30/1 30/4 30/6 30/11 30/13 31/3 31/14 35/10 36/1 38/1 38/2
BRUCE [2] 1/14 3/9
builder [1] 70/7
Builders [7] 42/17 49/23 52/6 66/20 67/16 68/18 68/25
burden [18] 46/20 53/3 54/10 54/14 54/18 54/21 54/25 55/1 55/2 55/3 55/24

**C**

call [4] 3/14 3/18 5/9 5/17
called [3] 21/25 51/4 69/9
came [3] 42/3 52/9 52/10
can [32] 10/20 10/21 11/7 12/3 12/3 12/11 13/7 14/18 17/11 17/16 18/18 26/13 26/18 28/12 29/6 36/5 36/7 38/22 44/8 54/6 62/10 71/12 73/1 73/6 73/17 75/18 75/21 79/17 80/1 80/4 80/6 80/7
can't [10] 18/7 18/11 18/12 20/7 35/22 37/16 39/9 39/14 55/24 77/7
candidly [2] 73/9 75/3
cannot [4] 18/1 20/9 21/10 76/12
care [3] 30/19 74/12 74/13
careful [1] 74/16
Carolina [1] 9/7
carried [5] 9/11
carrier [1] 5/17
carries [1] 54/14
carry [3] 54/10 54/20 55/24
carrying [1] 29/13
case [97]
cases [11] 5/25 8/18 9/12 11/19 20/11 26/21 37/15 42/17 68/2 68/15 69/7 78/6 78/7
cast [3] 40/2 41/6 41/23
causation [1] 68/3
cause [76] 8/7 16/15 19/3 25/1 25/8 26/6 29/7 29/9 29/9 31/5 31/13 42/22 43/9 43/9 44/10 44/17 45/5 45/9 45/15 46/6 49/12 49/13 49/24 49/25 50/1 50/2 50/15 50/18 50/19 51/23 52/9 53/13 53/21 55/5 56/4 59/13 61/1 63/3 64/20 66/5 66/12 66/17 67/3 67/6 67/18 67/20 67/23 68/13 69/2 69/14 69/19 69/20 69/21 70/7 70/20 70/25 71/8 71/9 71/11 71/15 71/24 71/25 72/1 72/5 72/8 72/9 72/25 73/3 73/5 74/10 75/22 76/7 77/21 78/23 78/24 79/6
caused [2] 43/17 46/11 50/13 68/6 69/12 72/11 72/12
causes [11] 3/22 16/12 16/20 30/10 31/19 44/21 62/20 64/8 70/12 70/13 75/4
CBA [27] 22/16 23/12 23/13 24/8 25/19 27/6 27/7 27/20 27/24 28/6 30/2 30/11 30/20 30/21 30/25 31/1 31/3 31/11 31/11 32/6 32/10 32/11 32/13 51/3 51/4 53/17 56/16 57/3 58/10 61/11 62/25 64/19 65/10 75/18
CBAs [1] 23/4
Center [1] 2/3
certain [11] 7/6 9/11 10/8 21/24 36/13 36/14 36/22 36/25 37/10 47/24 64/21
certainly [12] 25/11 25/12 32/23 49/21 56/16 57/3 58/10 61/11 62/25 64/19 65/10 75/18
CERTIFICATE [1] 81/1
certify [1] 81/2
cetera [1] 40/1
challenge [1] 36/6
Chalmers [5] 5/8 7/7 20/22 35/11 39/3
chance [1] 21/2
change [2] 14/16 52/11
changed [2] 35/1 35/1
changes [2] 34/13 34/16
character [1] 79/7

56/9 58/4 61/6 61/11 65/14 76/17 77/3
burner [1] 80/9
business [1] 75/24
but [87]
bylaws [15] 11/4 13/14 13/19 13/23 16/4 27/23 30/22 30/23 31/24 32/7 33/5 33/8 34/3 35/19 38/16

characterize [1] 10/24
charged [5] 44/11 50/3 67/6 76/13 77/22
Shapes [1] 49/6
check [1] 49/6
chemical [1] 68/22
Chesapeake [1] 40/21
Childers [1] 40/21
chose [1] 32/12
Circuit [12] 7/21 8/5 8/20 9/1 9/7 11/22 19/18 23/10 24/13 26/5 35/20 40/22
circumstances [1] 76/22
citation [5] 18/18 28/11 29/8 31/18 38/6
citations [2] 31/4 32/19
cite [4] 20/19 27/24 27/25 29/3
cited [25] 7/22 22/25 27/6 27/22 28/15 28/18 28/21 29/2 29/4 29/8 30/7 30/8 31/2 32/3 32/5 39/12 53/18 54/17 57/12 57/18 57/19 58/3 69/6 69/6 73/6
cites [1] 20/11
citing [3] 23/9 23/10 23/23
civil [8] 1/4 3/3 9/5 26/10 29/7 36/25 54/9 62/20
claim [40] 5/5 5/20 5/20 6/9 7/13 8/1 9/1 9/16 12/14 12/25 17/6 18/21 18/25 23/8 24/24 25/13 27/23 38/7 38/22 38/22 41/3 41/6 41/10 41/13 41/23 43/16 48/3 50/10 52/22 52/24 57/11 62/17 63/12 63/25 65/21 65/21 66/4 71/23 77/10 77/12
claimant [2] 76/21 76/22
claimed [2] 8/22 23/6
claims [21] 4/23 7/4 8/24 9/13 16/23 16/23 17/12 17/13 23/2 24/9 30/24 39/5 41/20 41/25 43/20 44/13 50/4 60/20 67/8 72/16 77/23
clarify [1] 36/11
classic [1] 15/19
clause [9] 13/22 15/15 16/7 17/1 18/10 31/15 32/3 32/5 33/7
cleaning [1] 8/9
clear [14] 5/4 6/1 9/14 9/17 11/22 17/9 24/14 35/6 45/5 51/16 54/1 62/1 65/20 69/18
clearest [1] 62/10
clearly [11] 10/7 14/9 20/14 23/20 26/3 51/18 54/18 54/25 57/13 60/17 67/19
client [2] 74/17 78/24
clock [7] 42/23 43/15 44/24 50/16 67/23 72/6 72/13
club [22] 13/21 14/5 33/7 33/21 33/25 39/23 40/5 43/14 46/5 47/4 49/4 49/9 59/23 60/3 61/16 63/9 64/21 65/22 70/20 71/6 72/1 74/16
club's [2] 48/23 70/18
clubs [2] 14/5 33/21
coach [4] 45/21 45/23 48/22 60/14
coaches [1] 14/4 33/21 48/3 50/25 50/25
coaching [1] 63/18
code [1] 8/17
coerced [4] 8/23 9/4 11/13 21/6
cold [1] 13/12
collective [53] 4/14 4/15 4/17 4/20 5/5 5/15 6/15 6/23 7/10 7/14 7/17 7/18 8/2 8/8 8/11 9/9 11/5 11/12 11/17 11/20 11/23 12/2 12/15 13/18 14/19 15/5 15/13 15/19 16/9 18/14 18/21 18/23 20/16 23/25 24/16 24/18 24/20 26/17 26/22 27/13 27/17 28/20 35/18 36/12 36/23 37/19 38/2 38/11 39/1 40/6 40/8 40/9 66/2
collectively [1] 3/25
Columbia [1] 1/16
come [6] 19/17 40/2 48/1 59/17 60/18 72/23
comes [13] 3/4 4/13 22/16 22/24 23/12

# C

comes... [6] 23:18 29:4 34:24 36:4 36:15 49:12 61:24 79:2
coming [2] 37:16 47:24
commence [3] 43:7 50:17 72:7
commencement [1] 50:23
comment [1] 47:16
commissioner [13] 13:25 14:3 17:16 33:10 33:13 33:16 33:19 36:4 36:8 36:14 37:3 38:4 49:2
commissioner's [1] 28:22
commit [4] 24:4 24:5 61:14 61:17
committed [3] 8:10 44:3 62:12
committing [2] 59:25 65:6
common [1] 8:10
company [2] 40:22 68:23
comparable [1] 41:12
compensated [2] 9:22 63:20
compensation [1] 28:5
competency [1] 36:6
complain [1] 48:22
complaint [65] 9:14 9:14 9:20 10:7 10:10 11:10 11:25 13:3 19:16 22:11 22:12 22:16 22:16 23:12 24:7 24:12 26:22 29:3 29:19 29:20 29:23 30:14 31:5 32:21 35:8 39:12 40:3 41:22 42:7 45:4 45:13 46:22 46:24 48:21 49:2 49:3 49:17 53:4 54:1 54:7 54:12 54:22 55:12 55:15 55:18 55:22 56:10 56:11 56:15 56:20 59:10 59:10 59:16 60:10 65:2 65:13 65:20 66:3 66:8 67:1 73:20 73:22 73:24 77:15 78:3
complete [2] 30:10 33:19
complexity [1] 78:7
compliance [3] 16:2 16:8 34:2
complicit [1] 63:24
comply [1] 38:14
components [1] 54:19
COMPUTER [2] 1:24 2:11
COMPUTER-AIDED [2] 1:24 2:11
conceal [3] 45:15 46:6 49:10
concealed [2] 53:22 70:8
concealment [15] 45:3 45:6 45:8 45:12 46:9 48:20 49:8 49:11 53:6 54:3 54:12 56:13 57:1 65:3 69:23
concede [2] 24:25 25:2 25:8
conceivably [1] 24:11
concept [2] 35:4 74:11
conceptual [1] 64:17
concerned [1] 41:21
concerning [2] 23:17 29:1
concluded [1] 9:8
conclusion [6] 5:23 9:3 15:2 47:24 48:1 65:1
conclusive [2] 13:25 33:11
concrete [7] 52:8 52:10 68:21 68:25 69:3 70:6 70:8
condition [7] 20:13 34:6 34:8 34:16 35:1 35:5 68:6
conditions [2] 16:5 34:13
condone [1] 62:16
condoning [3] 63:4 63:4 64:2
conduct [22] 7:16 8:17 9:11 10:6 20:6 23:22 24:8 24:17 24:22 26:12 32:12 40:7 43:5 44:18 45:7 45:17 46:10 46:23 50:1 63:22 67:1 68:1
conducted [1] 52:2
conducting [1] 49:5
confirm [1] 20:8
conjunction [1] 38:9
consented [1] 9:18
consequence [1] 20:10
consequences [4] 6:3 35:14 43:25 44:1
consider [1] 42:18

considerable [1] 68:4
consideration [2] 6:10 19:6
considered [1] 9:19
consistent [2] 9:25 39:18
conspiracy [1] 39:25
constitution [16] 11:4 13:14 13:19 13:23 16:4 30:22 30:23 31:24 32:6 33:5 33:8 34:3 35:19 38:4 38:16 40:5
constructed [1] 69:9
contact [7] 9:18 12:9 12:9 12:10 12:13 14:11 15:9
contain [2] 13:22 33:7
contemplating [1] 45:25
content [1] 30:14
context [4] 6:5 13:8 18:14 39:9
contexts [2] 34:9
continue [2] 55:22 77:11
CONTINUED [1] 2:1
continues [8] 23:6 23:23 30:1 31:14 74:4 76:17 77:3 77:3
continuing [2] 32:3 77:4
contract [35] 4:16 5:5 6:6 6:11 6:25 8:14 8:17 11:5 11:6 12:2 12:12 13:21 15:11 15:12 16:3 16:8 17:11 20:8 24:1 32:6 33:6 33:15 33:25 34:3 37:9 37:23 38:15 38:21 62:1 62:5 71:12 71:14 73:14 75:23 79:1
contracted [1] 26:18
contractor [3] 69:10 69:10 78:13
contracts [1] 18:11
contractual [3] 4:22 6:12 35:6
contractural [1] 20:8
contradicts [1] 65:9
contrary [1] 56:17
contributors [1] 76:2
Coral [1] 1:22
core [4] 6:25 13:2 19:20 70:24
corners [5] 28:20 55:15 66:3 66:7 78:3
correct [12] 36:10 41:15 46:4 46:16 58:2 60:16 61:19 62:6 64:12 74:19 75:10 81:3
corresponds [1] 24:8
could [31] 5:6 15:7 22:17 24:11 24:18 24:20 25:8 27:13 27:15 31:16 32:11 32:12 38:19 49:1 49:2 49:3 50:25 52:2 52:20 55:8 55:14 56:15 58:4 58:5 61:8 64:24 75:4 77:10 77:13 77:13
couldn't [1] 27:10
Council [2] 4:18 36:17
counsel [10] 3:6 3:11 3:12 26:21 29:6 32:25 54:23 66:10 76:16 80:14
count [19] 9:16 9:21 9:23 10:4 60:17 63:16 64:7 64:18 64:23 73:20 73:21 73:21 73:22 73:23 74:20 75:1 75:9 75:13 75:13
counts [3] 60:12 64:24 75:19
couple [1] 65:20
course [8] 14:6 14:9 17:4 21:19 21:21 33:23 63:1 64:15
court [80] 1:1 1:24 2:10 3:3 3:4 3:15 4:24 4:25 5:24 6:11 6:18 6:18 6:19 6:22 8:4 8:16 11:21 15:2 17:3 17:20 17:24 18:19 19:4 19:18 20:1 20:20 20:20 20:24 21:4 22:12 23:9 23:23 27:19 27:19 28:2 29:5 30:8 30:11 30:13 35:11 37:15 39:2 39:3 40:10 40:19 40:25 42:18 43:6 43:23 44:3 44:9 45:11 50:11 50:12 53:18 55:1 57:14 65:10 66:1 66:8 66:10 66:16 66:19 66:21 67:9 67:11 67:15 67:19 69:1 71:19 72:3 72:18 72:19 72:20 72:21 73:8 77:20 81:1 81:9
Court's [3] 6:8 23:15 28:7
courts [13] 5:19 5:22 6:14 17:22 18:1 18:11 20:17 21:5 23:2 23:10 37:16

37:18 62:25
cover [2] 24:9 32:12
covered [4] 48:13 55:14 23:4 40:5
crack [4] 15:9 21:25 67:1 67:2
CRAIG [3] 2:2 3:11 4:9
create [3] 30:8 39:22 44:7
created [2] 7:9 13:12
creates [1] 63:4
creating [2] 37:17 64:11
creation [1] 64:1
crime [1] 62:13
criminal [5] 9:8 23:18 24:8 25:17 26:11
cripple [2] 10:16 12:24
cumulatively [1] 32:23
curious [1] 47:19
current [2] 47:8 49:5
cut [1] 5:18
CVA [1] 8:16

# D

damages [1] 56:5
date [1] 44:7
day [31] 13:10 34:22 34:24 41:23 43:1 43:4 44:16 44:19 44:24 45:5 46:8 46:24 47:1 47:1 50:12 50:13 50:19 50:22 51:9 51:9 51:13 51:23 55:19 57:19 67:3 67:4 67:25 70:10 71:3 71:24 78:4
days [3] 79:8 80:7 80:7
de [1] 1:21
deadline [1] 79:24
deal [2] 73:10 79:23
dealing [5] 4:13 4:25 14:22 15:18 15:18
deals [1] 38:5
dealt [1] 5:21
dearth [1] 65:13
death [2] 7:6 7:13
deceased [1] 7:5
December [10] 42:3 43:1 44:16 44:18 58:19 59:12 61:4 78:21 78:22 80:1
December 2004 [1] 58:19
December the [1] 42:3
decide [6] 5:2 6:24 17:16 33:13 33:13 36:24
decided [1] 55:25
decision [19] 7:3 7:7 7:23 8:16 13:25 20:12 20:19 20:21 20:23 21:3 33:10 34:21 35:11 35:16 36:17 37:3 37:21 38:22 39:4
decisions [10] 7:21 13:24 17:21 17:23 19:18 19:19 20:22 33:10 37:8 38:25
decisively [1] 20:8
defective [1] 52:8
defendant [39] 1:8 2:2 9:16 9:18 10:1 28:3 35:12 35:17 43:5 44:14 45:2 49:18 50:5 53:13 53:22 54:18 56:24 58:21 59:2 59:11 60:5 60:20 60:23 60:24 60:25 61:6 62:14 62:19 63:18 63:23 63:24 63:25 64:1 67:14 73:22 73:25 74:3 76:7 79:8
defendant's [3] 10:10 59:14 76:10
defendants [35] 3:7 3:11 3:24 4:1 4:9 8:22 27:6 27:22 29:1 29:18 29:20 29:25 31:2 32:14 40:20 41:2 43:2 44:13 44:20 45:15 45:17 46:10 50:5 53:17 55:2 55:3 55:13 65:9 65:14 66:6 67:8 70:13 72:17 77:24 80:6
defense [16] 26:20 29:5 40:21 54:9 54:10 54:15 54:20 54:23 55:24 56:1 56:8 61:7 65:15 76:16 76:18 77:12
defenses [2] 40:25 41:1
defensive [1] 42:1
define [4] 6:11 12:10 30:17 30:18
defining [1] 15:20 29:15
definition [1] 15:25
degree [3] 26:2 59:4 63:2

# D

**deliberately [11]** 60/23 61/1 61/9
25/23 26/23 61/17 62/1 71/4 74/17
78/23
**delineated [1]** 8/14
**demonstrated [1]** 31/15
**denied [1]** 65/15
**deny [5]** 55/19 55/21 55/23 56/22 76/15
**dependent [1]** 31/20
**depends [1]** 63/13
**depositions [1]** 50/24
**described [1]** 9/18
**description [1]** 14/14
**design [17]** 42/17 43/6 44/9 49/22 52/6
66/20 67/16 68/18 68/20 68/25 69/12
69/15 69/16 69/18 70/5 72/3 78/13
**designated [1]** 36/16
**designed [5]** 22/14 24/21 26/6 26/8
51/18
**despite [1]** 34/15
**detail [1]** 31/12
**detention [1]** 23/21
**determination [4]** 7/19 19/7 47/11 53/20
**determine [10]** 6/17 9/10 11/9 12/13
17/2 24/16 39/4 39/9 40/9 40/19
**determined [4]** 7/12 29/11 37/14 68/3
**detriments [1]** 36/22
**develop [2]** 68/3 74/1
**developer [1]** 68/25
**Development [1]** 54/16
**did [38]** 5/18 9/9 24/10 25/5 25/6 29/3
29/8 43/1 45/15 46/6 46/13 47/13 48/22
48/22 49/3 49/4 49/6 49/10 49/11 49/15
49/21 51/12 53/12 52/19 59/17 60/14
60/18 61/2 64/5 64/10 64/21 64/22
66/16 69/4 72/10 77/16 77/18 77/19
**didn't [9]** 15/5 16/13 52/11 53/7 57/21
69/3 70/6 70/7 79/15
**difference [4]** 39/20 51/20 51/21 70/17
**different [23]** 13/8 20/14 26/11 27/21
27/23 37/18 38/1 38/1 39/1 39/22 57/25
59/4 59/8 59/10 63/2 63/3 73/15 75/12
75/14 76/2 76/5 76/19 79/7
**difficulty [1]** 64/17
**dilemma [1]** 72/24
**diligence [3]** 48/21 53/22 53/24
**diligent [10]** 55/6 55/16 56/17 57/15
58/6 58/9 58/11 61/5 61/7 61/9
**diligently [1]** 77/15
**direct [6]** 45/25 50/12 60/3 63/8 63/14
63/25
**directing [1]** 10/16
**directly [5]** 19/20 31/5 31/6 63/13 73/22
**dirty [5]** 10/23 21/16 21/17 21/18 46/2
**disability [2]** 5/13 5/20
**disagree [2]** 34/7 38/8
**discernment [1]** 6/24
**disclose [2]** 45/18 65/5
**disclosed [2]** 52/4 56/19 61/10 77/5
**disclosing [1]** 56/23
**discover [12]** 43/12 44/6 46/18 53/20
53/23 61/25 67/21 68/17 69/4 70/2
72/14 78/12
**discovered [4]** 12/22 51/17 69/12 77/13
**discovered that [1]** 12/22
**discovers [1]** 72/2
**discovery [40]** 41/6 41/7 41/8 42/21
42/21 42/22 43/8 44/7 49/22 50/11
50/14 50/15 50/18 50/23 51/24 52/1
52/3 52/5 52/10 53/5 53/9 54/2 54/21
54/19 56/12 57/1 67/17 67/17 67/21
67/22 69/2 69/19 69/20 71/16 72/4 72/4
72/8 76/3 76/17 79/1
**discovery-type [1]** 79/1

---

**discrimination [1]** 18/20
**discuss [1]** 63/17
**discussed [3]** 39/5 45/1 60/4
**discussing [1]** 31/14
**discussion [4]** 5/25 19/16 33/1 75/6
**Dismiss [16]** 52/25 52/25 53/25 54/6
54/11 54/21 55/9 55/14 55/21 55/25
56/10 56/16 57/22 65/7 65/24 77/7
**dismissal [1]** 41/13
**dismissed [2]** 8/24 36/9
**dispose [2]** 66/4 66/5
**disposes [1]** 19/13
**disputants [3]** 14/7 14/13 33/23
**dispute [13]** 14/4 15/23 15/25 15/25
16/7 19/10 20/9 21/21 33/18 34/1 37/23
53/8 78/2
**disputes [13]** 4/14 6/25 14/6 14/9 18/4
27/21 32/5 33/17 33/20 33/22 38/5 38/5
38/24
**distinction [1]** 12/19
**distinctive [1]** 70/25
**distinguishable [1]** 20/11
**DISTRICT [7]** 1/1 1/1 1/12 22/25 27/19
27/19 29/12
**DIVISION [1]** 1/2
**do [32]** 4/2 10/17 13/5 16/11 16/14
24/25 27/13 32/1 36/7 37/4 39/4 44/1
48/2 48/23 49/1 49/12 51/19 53/11 62/2
68/13 68/15 70/7 71/7 73/18 75/13
79/12 79/15 79/16 79/17 79/24 80/1
80/4
**doctor's [2]** 20/13 20/15
**Doctrine [1]** 45/8
**document [6]** 6/18 15/13 30/7 30/7
51/17
**documents [6]** 28/1 28/17 30/19 31/10
33/4 39/5
**Doe [12]** 42/16 43/19 44/5 45/11 49/22
56/1 56/2 56/3 56/3 66/15 66/21 67/5
**does [21]** 10/14 23/24 26/9 27/25 32/7
32/13 38/22 39/22 41/8 42/21 43/2
43/25 44/7 45/8 53/9 56/4 59/24 61/22
69/1 73/5 75/1
**doesn't [15]** 24/9 25/10 28/8 28/11
39/24 42/25 43/14 51/16 58/16 58/22
70/3 70/4 74/5 77/16 77/18
**doing [4]** 7/16 12/2 48/13 49/19
**don't [32]** 3/24 11/14 12/23 18/6 19/11
21/24 25/11 31/8 31/13 37/7 39/24
40/15 45/25 47/7 47/16 48/7 57/2 58/21
61/10 63/11 67/20 68/8 68/11 68/12
68/20 70/2 72/23 73/9 73/14 75/13 78/8
79/19
**done [6]** 18/11 19/24 29/17 57/20 58/5
58/24
**down [1]** 25/25
**drafting [1]** 8/19
**draftsmen [1]** 8/18
**driving [1]** 24/2
**due [4]** 48/20 53/21 53/21 53/23
**during [5]** 14/17 22/21 52/4 59/1 59/12
**duties [7]** 10/11 12/1 19/16 19/17 29/14
30/19 35/9
**duty [37]** 7/8 7/13 9/10 9/24 10/1 10/5
10/7 10/8 10/8 10/12 10/13 10/13 10/17
12/4 12/13 15/3 20/5 20/15 20/15 24/17
35/17 35/18 35/21 35/22 39/16 39/22
39/23 40/1 40/6 40/10 40/11 43/15
50/22 51/11 57/20 58/14 73/25

---

# E

**each [2]** 32/22 71/18
**earlier [1]** 48/1
**early [5]** 4/25 5/7 5/7 17/24 41/25
**economy [1]** 41/1

---

**effect [2]** 58/16 71/12
**effort [1]** 11/9
**eight [1]** 45/17 46/11
**either [2]** 45/17 46/11
**election [2]** 34/10 34/11
**element [6]** 44/14 50/6 58/15 66/12
67/14 69/20
**elements [24]** 42/22 44/17 49/23 50/10
50/15 51/22 56/5 56/15 57/15 58/18
60/18 61/2 66/17 66/24 67/3 67/18
67/20 67/22 68/1 70/13 72/5 72/11 78/6
78/25
**else [10]** 10/16 16/19 27/6 46/19 61/14
62/20 71/13 72/14 77/9 77/19
**elsewhere [1]** 15/24
**employee [11]** 4/21 7/9 12/21 13/22 19/9
29/21 29/21 33/6 33/7 62/12 64/15
**employee's [1]** 73/16
**employees [7]** 14/5 15/11 15/18 23/4
23/5 33/15 33/21
**employer [13]** 5/13 5/17 34/12 34/21
34/23 44/2 44/6 44/6 62/10 62/15 62/21
64/14 71/6
**employers [1]** 34/15
**employment [15]** 14/7 14/9 14/13 16/5
18/20 33/23 34/6 34/8 34/14 34/17 35/1
35/5 62/23 62/24 63/1
**encouraged [2]** 9/21 63/20
**end [3]** 78/21 79/21 80/1
**ends [1]** 19/16
**enforcement [1]** 31/23
**engage [1]** 37/23
**engaged [1]** 15/9
**engages [1]** 78/23
**engineering [1]** 52/7
**enough [2]** 66/7 80/12
**enter [3]** 17/11 19/8 36/23
**entered [1]** 37/12
**entirely [1]** 60/21
**entitled [1]** 81/4
**Eric [1]** 3/12
**Esquire [5]** 1/14 1/17 1/20 2/2 2/2
**essence [3]** 12/25 17/19 49/17
**essentially [4]** 41/11 60/24 71/5 71/13
**establish [1]** 25/9
**established [1]** 79/20
**et [3]** 1/7 3/4 40/1
**evaluation [1]** 6/9
**even [27]** 8/3 9/22 10/23 17/4 18/10
22/17 24/8 24/10 25/7 28/13 28/16 29/8
30/13 31/8 31/10 31/11 32/12 32/14
36/5 36/6 49/1 49/18 51/14 60/17 61/3
63/20 75/22
**event [3]** 43/1 44/19 50/12
**eventually [1]** 30/6
**ever [3]** 26/21 26/24 55/10
**every [7]** 12/13 13/20 25/23 32/19 33/6
66/5 66/12
**everyone [3]** 12/5 20/15 39/16
**everything [6]** 54/11 55/14 58/22 58/23
71/2 72/14
**evidence [18]** 29/6 29/14 30/16 32/20
51/17 55/8 55/13 56/14 56/16 56/17
57/14 58/8 58/9 58/10 61/11 62/2 65/8
65/13
**exact [3]** 43/9 50/19 72/9
**exactly [2]** 64/24 74/4
**examine [1]** 31/10
**example [2]** 18/9 69/22
**exception [3]** 11/13 54/3 65/3
**exchange [1]** 9/4
**exclusive [2]** 17/15 34/4
**exclusively [2]** 15/22 17/16
**excuse [1]** 18/12
**executed [1]** 42/12

## E

**execution** [1] 46/8
**exercise** [2] 48/20 53/23
**exhaust** [1] 41/11
**exhibit** [1] 13/15
**exist** [10] 28/9 36/25 59/25 60/5 60/5 61/2 61/22 73/1 73/20 77/6
**existed** [7] 6/17 9/11 46/7 49/14 63/6 71/8 76/12
**existence** [13] 7/10 10/5 18/21 55/17 55/19 55/23 56/19 56/22 58/12 59/24 61/10 77/2 77/14
**existing** [1] 11/2
**exists** [2] 35/21 49/12
**expanded** [1] 5/7
**expect** [1] 52/4
**expected** [1] 29/16
**explain** [2] 62/10 74/4
**explanations** [1] 76/4
**explicit** [2] 28/11 28/14
**explicitly** [1] 21/2
**expresses** [1] 15/14
**expressly** [6] 6/15 8/14 10/9 11/3 21/1 38/3
**extent** [1] 10/21
**extreme** [1] 69/22
**extremely** [2] 15/15 34/19
**eye** [1] 31/18

## F

**face** [2] 13/11 66/3
**faced** [1] 75/21
**fact** [41] 9/4 12/23 13/20 19/8 20/24 22/13 22/15 25/5 26/12 26/15 27/5 28/24 29/3 30/8 30/9 32/17 43/9 43/11 43/24 47/14 50/19 52/11 53/8 53/15 53/22 53/24 55/14 55/16 55/18 56/16 57/13 58/9 58/20 61/9 63/5 70/1 72/9 75/1 76/6 78/1 78/3
**facto** [1] 11/17
**facts** [15] 14/8 15/8 42/15 42/25 45/3 49/9 55/4 66/3 70/4 73/9 76/7 76/12 76/13 76/24 77/2
**factually** [1] 66/22
**fail** [1] 27/25
**failed** [2] 27/24 45/18
**failing** [3] 68/21 69/3 70/8
**failure** [7] 20/13 38/14 41/11 52/10 53/20 53/21 70/6
**fair** [2] 16/16 64/23
**fairly** [1] 5/21
**faith** [1] 5/21
**fall** [2] 24/10 25/19
**false** [3] 21/7 23/17 23/18
**fans** [1] 15/4
**far** [6] 30/4 31/19 31/20 41/20 46/1 48/7
**February** [1] 38/18
**federal** [22] 4/11 5/1 5/1 5/2 6/5 6/24 7/1 7/20 8/4 16/17 17/25 18/7 18/15 23/5 23/8 35/15 36/7 36/18 37/9 37/12 37/24 54/9
**fellow** [1] 23/5
**FERGUSON** [10] 2/2 2/3 3/10 40/16 53/8 57/18 65/18 71/2 73/6 75/25
**few** [2] 7/3 18/18
**field** [7] 11/8 12/8 12/14 14/10 14/18 19/21 21/10
**file** [6] 5/18 17/5 27/10 27/15 28/2 66/1
**filed** [6] 5/19 20/3 34/23 52/8 69/13 71/5
**files** [2] 34/10 36/9
**filing** [4] 50/23 52/13 55/4 77/15
**filings** [1] 65/23
**final** [6] 13/25 33/10 33/19 40/12 72/23 77/17

## G

**Gables** [1] 1/22
**game** [24] 9/19 9/22 9/24 10/6 12/22 13/10 14/14 14/17 21/11 22/20 22/21 25/13 25/23 26/3 27/3 39/17 41/24 42/3 42/8 47/24 69/1 69/3 70/11 78/4
**Games** [1] 14/18
**gather** [3] 3/25 41/10 60/13
**gave** [3] 17/1 21/13 69/25
**general** [5] 3/12 39/16 43/8 50/18 72/8
**generalized** [1] 8/17
**geotech** [1] 52/7
**get** [19] 3/16 18/15 18/18 20/21 20/22 31/12 35/23 35/23 40/13 42/5 46/25 51/15 61/12 66/18 70/16 73/7 75/11 79/18 79/21
**gets** [2] 75/15 76/14
**getting** [1] 35/22
**Giant** [1] 23/15
**Giants** [1] 42/2
**give** [4] 22/5 78/18 78/20 79/8
**given** [3] 18/3 45/3 73/6
**gives** [2] 50/1 59/20
**giving** [1] 37/18
**go** [23] 3/23 7/24 10/4 10/16 12/12 12/16 12/24 17/3 17/6 19/10 19/10 25/23 41/9 53/9 58/13 61/3 61/17 70/15 71/21 72/6 73/23 74/4 74/21
**goes** [5] 43/6 57/8 73/9 75/12 77/25
**going** [19] 3/14 3/24 3/25 4/1 4/2 4/3 10/22 19/20 23/1 32/13 36/24 40/18 48/7 49/16 52/17 60/6 75/16 78/17 79/19
**Golf** [1] 8/15
**gone** [1] 71/9
**good** [5] 3/8 5/21 39/3 40/17 41/19
**got** [6] 21/4 21/5 46/20 75/6 76/1 80/9
**gotten** [1] 50/25
**governs** [1] 8/17
**grant** [2] 23/24 65/10
**granted** [2] 8/5 54/6
**granular** [1] 31/12
**gravamen** [13] 22/11 22/12 22/15 24/7 29/19 29/23 32/21 39/21 40/2 55/11 55/18 56/20 73/4
**greater** [1] 32/4
**GREEN** [23] 1/4 3/3 4/16 17/10 20/9 28/2 28/18 38/7 38/9 41/3 41/22 42/7 42/12 42/13 43/12 49/13 55/10 56/18 60/6 63/25 66/25 67/25 70/10
**Green's** [3] 45/20 45/23 71/23
**Greenbelt** [1] 1/7
**grievance** [25] 5/19 8/2 15/14 15/19 15/21 15/21 16/7 17/6 26/24 27/5 27/8 27/11 28/2 28/19 28/23 30/25 31/1 33/2 33/3 34/1 35/25 36/3 38/7 38/18 51/25
**grist** [1] 38/23
**gross** [6] 18/8 18/12 74/2 74/6 74/22 75/7
**Grossman** [1] 1/21
**grounds** [1] 30/2
**grow** [1] 40/7
**growing** [1] 32/5
**guess** [2] 22/1 71/5
**guide** [1] 73/11
**gun** [1] 62/5

## H

**Hackbart** [11] 20/19 20/23 26/2 26/4 26/14 27/18 27/20 28/24 39/1 39/2 39/2 42/8 47/23 59/1 69/3 71/14
**had** [45] 5/9 5/13 6/16 7/5 7/12 7/18 9/23 17/10 18/20 19/5 19/8 23/7 25/8 26/5 28/18 29/8 34/21 38/21 42/9 42/10 42/13 42/13 43/21 43/22 45/6 47/1 47/15 51/11 51/17 51/23 51/24 52/12 53/12 55/25 55/3 57/20 58/23 61/8 61/25 69/8 69/15 70/11 77/5 77/15 78/11
**Halley** [1] 54/16

**find** [2] 13/16 75/13
**finding** [1] 53/11
**finds** [1] 56/14
**fine** [1] 41/14
**fire** [1] 7/4
**first** [14] 3/19 3/20 6/14 13/17 20/19 33/5 41/23 53/7 53/17 68/21 69/15 72/20 76/4 78/10
**fitting** [1] 11/12
**five** [3] 9/4 69/11 78/12
**fix** [1] 69/10
**flag** [4] 15/1 15/4 23/7 31/17
**flags** [1] 31/21
**flaw** [2] 68/24 69/17
**flawed** [1] 6/20
**Floor** [1] 1/18
**Florida** [2] 1/19 1/22
**Flour** [1] 5/4
**flourish** [1] 74/2
**flow** [2] 6/3 35/14
**focus** [1] 6/9
**folded** [1] 64/18
**follow** [3] 36/2 48/25 49/7
**follow-up** [1] 49/7
**Food** [1] 23/15
**football** [52] 1/7 2/2 3/4 3/15 9/24 10/15 12/8 14/10 26/3 28/3 30/18 35/12 35/17 39/17 39/21 43/14 46/1 46/1 46/5 47/4 48/8 48/11 48/23 49/4 49/6 49/9 59/12 59/23 60/3 60/14 60/20 60/25 61/16 62/14 63/9 63/18 63/23 63/24 64/1 64/4 64/21 65/22 70/18 71/20 71/6 72/1 73/23 73/25 74/16 76/7 76/10 78/4
**Forbes** [1] 3/13
**foregoing** [2] 36/25 81/2
**forethought** [2] 59/11 62/18
**forever** [1] 73/11
**form** [2] 57/15 60/19
**formal** [2] 49/2 49/3
**former** [3] 49/23 50/24 50/25
**formulated** [3] 63/14 74/14 74/17
**formulating** [1] 70/22
**formulation** [1] 75/23
**forth** [7] 9/25 15/22 15/24 39/18 45/16 65/21 66/3
**Fortunately** [2] 5/13 71/19
**forward** [2] 3/14 3/14
**found** [5] 7/15 8/24 9/2 21/10 47/3
**four** [9] 10/4 28/19 55/15 66/3 66/7 73/21 73/21 75/13 78/3
**Fourth** [10] 7/21 8/5 8/20 9/1 9/7 11/21 19/18 24/13 35/20 40/22
**framed** [2] 5/25 16/22
**framework** [1] 4/24
**frankly** [3] 22/18 28/8 55/9
**fraud** [4] 55/7 65/5 65/6 65/7
**fraudulent** [12] 45/3 45/8 45/12 46/9 48/20 49/8 53/5 54/3 54/12 56/13 57/1 65/3
**frequently** [2] 4/13 23/2
**front** [1] 80/9
**full** [3] 10/23 44/1 51/24
**fully** [1] 50/13
**fumble** [1] 26/6
**function** [1] 37/17
**fundamental** [2] 22/11 29/19
**further** [8] 32/13 40/14 40/15 41/9 55/5 57/17 74/22 74/23
**fuse** [1] 78/21
**fused** [1] 75/9
**fusses** [1] 74/8

## H

hand [1] 04/5
handcuffed [1] 21/8
handing [3] 34/22 34/23 34/25
hands [1] 70/16
happened [4] 41/23 44/4 50/13 50/19
happens [1] 25/10
happy [2] 57/3 73/17
hard [3] 10/23 25/12 26/3
harkens [1] 58/25
harmful [1] 6/22 43/25 44/1
has [36] 4/25 7/21 11/19 16/22 17/20
18/2 18/13 18/17 18/24 19/24 22/5 32/1
33/19 34/17 36/21 36/21 38/13 39/23
40/10 40/19 43/3 43/16 43/17 43/24
47/3 47/9 48/7 54/18 66/10 67/1 71/19
73/6 76/18 76/22 77/20 79/7
hasn't [1] 14/14
have [124]
haven't [1] 21/12
having [1] 64/17
he [122]
he's [9] 12/22 13/5 46/20 48/14 48/15
48/16 48/17 71/3 71/4
head [1] 19/12
hear [4] 3/15 16/13 52/16 53/8
heard [2] 21/13 33/1
hearing [2] 3/5 19/24
heart [1] 71/10
heavily [3] 31/9 56/2 76/20
held [1] 23/2
help [2] 32/4 51/18
Hendy [1] 20/12
here [29] 4/10 10/13 11/22 12/20 12/25
14/22 16/8 16/9 21/15 22/22 23/4 27/14
29/17 41/8 45/4 45/8 52/15 52/22 52/23
53/25 57/5 66/25 72/6 73/10 73/18 74/9
74/15 76/20 79/23
here's [1] 62/9
him [19] 5/13 13/11 23/7 25/6 25/16
25/25 26/23 28/4 42/5 43/22 45/18
45/21 46/7 47/1 49/10 49/18 50/1 71/6
71/7
himself [4] 46/6 48/19 48/21 49/11
hire [3] 62/5 71/14 73/14
hired [1] 62/5
his [46] 4/19 5/10 5/12 5/16 5/17 7/24
7/24 7/24 10/1 11/10 20/3 24/18 29/14
41/22 42/20 43/1 43/15 43/15 43/21
44/17 44/24 45/5 45/9 45/9 46/17 46/21
46/23 48/21 48/22 49/3 49/25 50/10
50/21 51/6 53/21 53/21 60/14 62/22
63/13 66/12 67/1 67/3 67/25 67/25 71/6
77/15
hit [10] 25/16 26/5 26/7 28/4 60/22 62/2
63/5 63/6 71/17 77/1
hits [6] 25/12 25/12 26/3 26/4 26/4
51/16
hold [1] 62/25
holiday [2] 80/3 80/15
holidays [1] 80/4
home [1] 69/8
Honor [11] 3/8 3/10 4/8 4/9 4/10 22/9
22/10 40/17 52/19 65/19 78/16
HONORABLE [1] 1/11
hope [1] 48/22
how [12] 4/1 25/21 39/4 42/7 54/25
59/24 68/11 69/22 75/13 75/15 76/9
76/10
however [3] 3/22 9/2 56/5
hurt [2] 25/9 25/25
hypothetical [4] 14/12 14/16 15/7 59/1
hypotheticals [1] 22/19

## I

I'd [3] 52/20 79/10
I'll [7] 22/5 24/9 35/10 66/18 78/20 79/8
79/16
I'm [40] 4/3 16/13 19/13 21/22 22/25
25/24 25/25 26/14 27/5 33/14 36/10
36/24 39/25 40/18 47/7 47/17 47/19
53/19 55/2 56/3 56/4 57/2 61/12 61/15
62/23 63/7 63/11 63/17 64/17 67/4
70/16 70/19 71/21 73/17 74/21 75/5
76/19 77/7 78/17 80/9
I've [6] 27/12 27/17 30/2 46/7 64/12
80/9
Idaho [2] 7/12 21/5
idea [1] 48/9
identified [1] 78/2
identify [3] 3/6 43/3 43/4
identity [2] 65/5 67/13
if [75] 3/23 6/11 7/8 7/17 9/10 12/20
12/23 15/21 17/3 17/4 18/23 22/20 23/6
24/8 24/10 24/25 25/2 25/6 25/8 30/13
32/12 34/11 35/17 36/9 36/17 37/22
38/8 38/9 39/21 40/6 40/24 47/18 47/23
47/25 48/7 49/6 49/12 51/14 52/3 52/20
54/14 56/16 57/10 57/10 59/2 59/12
59/13 60/14 61/3 61/25 62/15 62/16
62/16 65/7 65/8 66/4 66/23 71/1 73/14
73/17 73/23 74/10 74/11 75/5 75/6
75/22 76/22 77/5 77/8 77/15 78/22 79/1
79/8 80/6 80/7
ignore [1] 20/24
ignores [1] 20/24
illegal [13] 12/17 12/20 18/9 21/25 22/1
24/1 24/3 24/4 24/22 26/4 47/2 51/16
71/17
immediate [1] 61/13
immediately [6] 42/8 42/8 42/10 42/12
42/13 45/10
impact [1] 43/22
impermissible [3] 9/5 9/6 66/23
implications [1] 39/13
implicit [3] 28/12 28/13 28/15
implicitly [1] 6/17
import [1] 21/9
important [4] 42/1 43/3 50/8 79/22
imposed [3] 42/10 47/9 48/2
imposing [1] 42/11
imprisonment [3] 21/7 23/17 23/19
improperly [1] 5/18
in [307]
inapplicable [1] 31/2
inappropriate [1] 11/1
INC [3] 1/7 2/2 3/4
incident [6] 41/5 41/24 44/21 44/22
44/24 45/6
include [1] 31/21
included [2] 5/14 65/23
including [5] 8/18 19/3 20/24 38/5 56/5
incorporate [1] 32/14
incorporated [2] 31/10 32/15
incorporates [1] 30/21
incorrect [1] 7/15
indeed [2] 7/15 42/2
independent [5] 7/11 7/14 19/2 70/20
79/15
independently [2] 59/25 73/2
indicated [1] 6/12
indication [1] 27/12
indisputable [1] 49/13
indisputably [1] 49/6
individual [7] 7/23 8/22 18/19 18/24
23/21 39/23 47/25
individually [1] 32/22
individuals [1] 17/12

## I

industries [1] 39/9
industry [9] 29/4 29/5 38/24 39/7 39/8
39/9 39/10 39/11 39/11
inextricably [2] 6/9 20/9
information [3] 52/9 52/9 66/7
inhibited [1] 42/2
initial [1] 32/9
injure [21] 10/22 12/18 18/13 21/16
22/14 25/6 25/15 25/16 26/6 26/8 26/16
26/23 28/4 29/24 49/18 51/19 59/11
70/22 71/12 74/17 75/23
injured [19] 5/12 17/4 42/8 46/22 49/17
52/12 59/3 63/15 66/24 67/21 68/9
68/11 68/16 68/19 69/19 71/3 71/4 71/4
78/9
injuring [5] 24/6 24/21 60/6 63/21 74/3
injurious [1] 13/1
injury [48] 5/10 13/12 19/14 42/14 42/20
42/22 43/2 43/4 43/8 43/16 43/17 44/18
45/6 45/9 50/1 50/11 50/12 50/14 50/18
57/19 62/18 63/24 64/20 67/2 67/17
67/22 67/25 67/25 68/17 69/2 69/25
70/11 72/4 72/8 72/11 72/12 72/17
74/25 76/1 77/24 78/1 78/3 78/8 78/8
78/11 78/24 79/4 79/5
inquiry [3] 45/22 49/3 76/23
inside [2] 14/13 25/12
inspect [1] 7/13
inspection [1] 7/16
installation [1] 78/14
instance [3] 22/19 60/5 70/10
instead [1] 51/2
institute [1] 28/16
institution [1] 11/8
institutionalized [1] 63/23
instruction [1] 30/15
instructions [1] 75/12
instrumentality [1] 60/25
insufficient [2] 8/25 9/2
intend [1] 25/5
intended [4] 6/3 25/9 35/14 49/18
intent [4] 25/16 26/16 64/4 74/25
intention [1] 18/13
intentional [32] 19/14 22/3 23/10 24/7
24/22 25/3 25/17 25/24 26/11 28/4 31/4
32/11 45/21 46/2 46/25 59/6 60/8 62/12
62/18 62/25 63/8 64/10 64/16 64/20
70/21 71/17 74/5 74/7 74/23 75/1 75/8
75/23
intentionally [8] 22/14 23/7 25/15 59/24
57/20 59/3 60/6 63/21
interest [1] 40/25
interesting [6] 19/14 56/2 68/14 69/7
79/23 80/11
internal [3] 37/2 37/2 37/4
interpret [4] 9/9 30/24 33/17 38/14
interpretated [1] 30/23
interpretation [8] 8/8 16/2 16/7 24/15
28/21 30/9 31/23 34/2
interpretations [1] 37/18
interpreting [1] 34/18
intertwined [2] 6/10 20/9
interviewed [1] 52/2
interviews [1] 49/5
into [18] 3/16 13/10 17/11 18/10 19/6
19/8 22/20 26/10 31/11 32/13 36/23
37/12 37/23 45/1 49/12 64/18 64/24
75/9
into Count [1] 64/18
intrinsic [2] 21/9 23/22
investigate [9] 43/15 48/25 49/11 50/22
51/12 55/5 57/21 57/21 72/15
investigated [2] 47/3 49/4
investigating [4] 44/12 50/3 67/7 77/23
investigation [16] 44/25 52/2 55/6 55/9

**I**

investigation [12] 55/16 56/19 57/1
58/5 58/6 58/9 58/11 61/6 61/8 61/9
70/1 77/5
investigations [1] 78/7
invidious [1] 73/14
invite [1] 78/19
invocation [1] 53/5
invoke [2] 51/24 56/12
involve [2] 20/14 31/16
involved [11] 5/9 20/12 38/2 43/13
43/14 44/20 44/22 44/23 47/17 48/4
79/1
involves [4] 16/1 34/2 34/6 38/3
involving [4] 4/14 7/4 7/23 69/7
ipso [1] 11/16
irrespective [2] 23/13 24/23
is [341]
isn't [5] 19/19 21/1 21/15 63/8 68/4
issue [32] 3/17 3/20 3/21 4/4 4/5 4/7
4/11 4/13 5/22 5/23 5/25 8/5 8/21 10/20
12/17 12/17 17/17 18/19 19/4 19/14
21/15 21/23 27/8 31/16 33/4 36/24
38/10 75/20 78/22 79/1 79/13 79/22
issues [7] 4/10 18/2 36/13 36/14 40/20
70/18 79/23
it [215]
it exist [1] 59/25
it's [50] 8/17 10/15 11/15 12/23 13/15
15/21 16/19 17/15 18/6 18/9 19/14
20/20 21/19 23/15 27/2 29/23 36/4
39/11 40/3 47/18 50/8 51/6 52/24 52/25
54/20 54/24 56/21 59/6 60/9 62/1 62/4
62/9 62/22 64/6 68/5 69/1 69/6 69/24
70/25 71/14 72/4 72/13 73/11 73/15
74/6 74/13 78/11 79/13 79/20 79/22
its [10] 16/23 30/22 32/1 32/4 43/8
50/18 56/22 66/2 72/8 73/25
itself [7] 32/6 32/13 54/10 63/5 63/8
68/25 76/14
IV [2] 36/15 38/10
IX [1] 15/17

**J**

Jackson [4] 8/21 24/13 24/15 25/19
job [4] 8/23 11/13 21/6 62/2
JR [1] 2/2
JUDGE [18] 1/12 5/24 25/11 26/1 27/4
40/15 52/20 53/16 57/2 57/9 57/10 58/2
58/25 73/17 73/20 74/19 76/4 80/13
judgment [13] 8/4 19/24 52/23 57/5 57/8
57/11 58/1 65/8 65/11 65/24 65/25 77/8
77/9
judicial [1] 41/1
jurisdiction [3] 14/2 33/19 40/19
jurisdictional [1] 3/21
jury [7] 17/1 19/3 19/10 53/9 53/15
53/24 75/12
just [27] 11/18 12/20 13/16 17/14 17/15
18/9 27/2 33/1 33/13 36/2 41/13 45/8
46/2 47/2 47/19 56/7 58/4 62/23 63/4
63/4 65/1 68/12 70/6 75/12 78/10 78/11
79/24
Justice [3] 5/24 7/7 7/15
justification [1] 23/22

**K**

keep [4] 21/12 64/3 76/25 76/25
kept [1] 71/10
key [1] 58/18
Kimel [3] 8/21 9/2 24/17
kind [6] 16/25 26/2 59/5 63/2 78/24
kinds [1] 21/24
knew [26] 42/7 42/8 42/10 42/12 42/13
44/5 44/5 46/7 46/12 46/14 46/22 49/13
50/13 51/9 52/12 55/4 58/17 67/25 68/1
68/3 69/6 69/19 69/20 70/6 70/11 72/23
knife [2] 14/17 22/21
knocked [1] 13/11
know [9] 3/24 12/23 18/6 20/21 21/17
21/21 37/7 39/24 43/1 44/1 45/25 46/19
47/7 47/9 47/21 48/2 48/7 48/7 49/12
49/15 49/21 49/25 50/8 50/9 50/18
53/12 55/15 57/19 58/21 62/3 62/3
66/11 67/20 68/8 68/10 68/11 68/12
68/16 68/19 68/20 69/24 70/6 72/10
76/1 76/1 76/21 77/19 78/8 80/8
knowledge [9] 44/13 44/16 49/23 50/5
50/21 58/17 67/13 76/22 77/1
known [8] 58/15 58/18 60/15 69/25 76/8
76/9 78/1 78/3
knows [6] 42/20 43/16 43/24 50/2 71/3
71/4

**L**

labor [22] 4/12 5/2 5/3 6/2 6/10 7/1
16/16 16/17 17/25 18/15 19/6 23/5 34/9
34/17 34/24 35/3 35/3 35/13 37/12
37/24 38/23 41/18
laid [2] 6/15 14/3
landlord [1] 18/9
landlords [1] 18/10
landscaping [1] 68/23
language [11] 9/19 13/15 13/16 17/15
23/14 24/23 35/6 64/3 64/4 66/15 73/6
last [1] 72/21
late [2] 12/22 47/24
later [14] 7/3 20/21 38/18 43/11 43/12
43/21 44/6 46/15 61/25 68/3 68/24 69/4
69/11 72/2
law [43] 5/2 5/3 5/6 6/5 6/11 7/1 7/8 7/20
7/20 8/2 8/10 9/8 16/12 16/15 16/19
16/20 16/25 17/7 17/25 18/2 18/6 18/7
18/7 23/5 23/18 23/18 23/20 24/1 24/4
24/5 25/17 26/10 26/11 35/15 38/23
39/3 41/20 51/11 53/14 57/12 57/22
59/14 66/9
laws [2] 16/18 37/12
lawsuit [5] 32/2 50/23 51/2 52/8 52/13
lay [1] 65/3
layer [2] 44/23 51/5
leading [1] 60/22
league [11] 13/21 13/24 14/5 14/7 20/6
31/25 33/6 33/9 33/22 33/24 34/1
leak [1] 78/10
leaked [2] 69/9 69/11
leaking [1] 69/16
learn [1] 52/3
learned [1] 68/24
least [5] 13/2 28/10 64/17 73/3 73/11
leave [1] 57/22 61/23
leaving [1] 25/7
legal [10] 6/3 8/10 16/25 17/7 23/21
26/4 35/13 58/20 59/19 59/21
legally [1] 13/23 33/8
lense [1] 42/15
Leon [1] 1/21
let [15] 3/19 7/24 13/9 13/15 16/24 17/8
26/20 36/2 36/11 65/20 70/15 71/22
74/16 78/17 80/8
let's [14] 4/6 14/16 25/4 31/3 31/4 31/7
33/3 46/13 49/20 52/16 62/1 70/5 78/20
79/17
letting [1] 71/7
level [1] 31/12
levels [1] 32/9
liability [20] 6/6 59/21 60/12 61/13
61/13 62/11 62/21 63/12 63/13 63/17
64/7 64/9 64/14 69/23 69/23 70/18
70/19 70/21 73/1 73/16
liable [3] 62/19 63/8 71/7
lies [2] 53/3 54/25
life [1] 43/21
light [4] 59/17 60/18 61/24 79/2
like [13] 11/13 14/24 15/1 21/6 23/3
26/15 39/25 52/20 64/16 71/14 78/10
79/10 79/16
limitation [4] 67/7 68/7 70/2 70/12
limitations [59] 4/4 25/7 40/13 40/18
40/21 41/4 41/12 41/18 41/21 42/19
42/24 43/8 44/12 44/15 44/20 45/13
47/22 50/4 50/7 50/16 50/17 51/12
52/13 52/21 52/24 53/1 54/2 54/4 54/8
54/15 56/25 57/8 57/12 58/10 59/9
59/15 61/23 65/4 65/15 66/5 66/7 66/13
67/15 67/24 67/24 68/5 69/5 69/14 70/3
70/9 72/6 72/7 72/16 76/18 77/11 77/23
77/25 78/4 79/2
limited [2] 36/19 37/11
limits [1] 42/17
Lincoln [1] 1/18
LINDA [4] 1/24 2/10 81/2 81/8
line [1] 75/24
lines [1] 73/12
litigation [2] 25/21 37/1
Little [1] 1/15
local [3] 3/15
locker [2] 7/24 8/9
look [17] 4/22 7/18 9/12 10/6 11/7 11/25
12/7 15/5 16/6 16/6 39/3 40/8 42/15
73/13 78/22 79/6 79/13
looked [2] 8/5 8/20 9/1 9/3 19/4 45/24
79/14
looking [6] 6/21 21/10 21/22 30/7 63/17
70/19
lot [1] 27/1
Lucas [1] 5/4
Lueck [4] 5/8 5/9 21/3 23/24
Lumsden [18] 42/16 43/6 44/9 49/22
50/10 52/6 54/23 54/25 55/1 58/3 66/20
67/16 68/18 68/20 69/18 70/5 72/3
76/20
lung [1] 68/4

**M**

made [26] 5/4 6/1 6/13 8/4 11/9 11/22
12/3 12/14 15/8 17/1 19/1 19/7 26/22
28/10 29/10 37/22 38/6 39/6 42/1 42/9
45/22 47/11 48/25 49/2 49/3 50/9
maintained [1] 63/19
make [14] 7/19 10/4 12/19 17/23 29/1
34/5 34/15 38/21 38/25 51/19 51/21
53/11 57/24 76/16
makes [12] 9/17 11/17 13/5 23/22 24/14
36/17 45/4 58/19 63/2 63/3 69/18 75/25
making [6] 6/14 9/13 17/9 20/25 34/13
51/15
malice [4] 59/11 62/18 74/7 74/24
malicious [2] 26/16 74/6
maliciously [2] 26/6 26/8
maliciousness [3] 74/2 74/23 74/24
man [2] 25/25 43/20
Management [6] 4/12 4/18 16/16 18/15
36/17 41/18
management's [1] 8/13
manner [5] 9/24 10/9 39/17 41/7 64/24
manuals [3] 29/15 30/15 31/22
many [8] 8/18 25/21 34/9 34/15 34/19
36/21 39/8 39/9
March [5] 56/22 60/19 61/2 76/8 76/14
MARSHALL [4] 1/24 2/10 81/2 81/8
MARYLAND [22] 1/1 1/7 1/16 2/4 16/12
16/15 16/18 16/19 16/20 16/23 16/25

**M**

**MARYLAND** [11] 1:7 1:8 9/16 18/1 23/18 23/20 36/18 51/11 53/18 66/14 67/9

**materials** [2] 7/24 29/15

**matter** [22] 3/2 3/4 21/9 23/22 42/25 43/2 43/14 43/25 47/18 51/16 53/14 56/18 57/22 58/22 62/13 66/8 69/1 70/3 70/4 76/6 77/18 81/4

**matters** [1] 52/22

**may** [25] 11/15 14/12 14/12 18/5 29/14 40/25 42/25 43/2 44/20 44/21 44/23 47/22 49/18 58/20 64/18 68/10 69/6 71/8 71/9 71/10 71/17 72/1 72/11 72/18 75/16

**maybe** [11] 36/10 39/24 45/20 57/24 64/8 68/11 71/13 73/2 73/2 74/6 75/21

**MCALLISTER** [3] 1/17 1/18 3/9

**McBride** [2] 53/18 53/19

**McCormick** [2] 7/23 39/4

**me** [21] 3/12 3/19 13/9 13/16 16/24 17/8 25/22 26/20 27/1 36/2 36/11 43/18 48/10 59/1 59/19 64/16 65/20 70/15 74/16 78/17 80/8

**mean** [22] 12/18 12/21 21/13 21/17 25/4 25/10 25/20 25/23 27/1 46/13 46/14 47/18 51/16 53/13 57/2 72/10 74/9 74/15 76/6 79/13 80/3 80/8

**meaning** [1] 6/11

**measurement** [1] 11/16

**mechanism** [2] 38/17 38/17

**meet** [2] 61/11 77/7

**member** [7] 4/17 8/3 14/5 17/10 18/24 29/12 33/21

**mens** [2] 26/16 74/22

**mention** [1] 30/9

**mentioned** [1] 20/12

**Mercy** [2] 69/8 78/10

**mere** [3] 20/5 26/15 29/7

**merely** [2] 25/24 30/16

**merits** [1] 75/6

**MESSITTE** [1] 1/11

**met** [1] 57/15

**method** [1] 15/23

**Miami** [1] 1/19

**MICHAEL** [2] 1/17 1/18

**middle** [1] 22/21

**might** [8] 9/18 33/13 50/20 62/3 69/23 69/23 75/11 77/19

**Mike** [1] 3/9

**MILES** [7] 1/20 3/8 22/8 40/14 52/18 71/11 72/22

**mill** [1] 38/24

**mine** [2] 7/4 7/14

**minor** [1] 7/5

**minute** [2] 36/3 70/15

**misled** [1] 45/18

**mistake** [1] 6/13

**misunderstanding** [3] 22/11 29/19 36/10

**moment** [5] 16/16 25/7 25/20 55/23 66/19

**Monday** [1] 1/8

**month** [1] 79/21

**months** [1] 41/17

**moral** [2] 21/9 23/22

**more** [18] 8/16 8/20 11/20 14/24 14/25 29/17 30/4 31/19 31/20 41/5 46/21 47/2 49/1 53/3 58/5 77/14 79/14 80/8

**morning** [3] 3/8 3/10 40/17

**most** [2] 30/21 62/25

**motion** [27] 1/11 19/24 20/3 52/23 52/24 52/25 53/25 54/6 54/11 54/21 55/9 55/14 55/21 55/25 56/9 56/15 57/4 57/8 57/11 57/22 65/7 65/15 65/23 76/15

**motions** [1] 3/5

**motivation** [2] 25/10 42/14 43/3

**motive** [1] 51/11

**Mr** [11] 4/4 4/8 5/9 9/1 10/18 10/24 11/19 13/4 42/12 52/18 59/25

**Mr.** [42] 4/16 17/10 20/9 22/8 28/2 28/3 28/18 38/7 38/9 39/15 40/1 40/14 40/16 41/22 42/7 42/12 42/13 43/12 43/13 45/20 45/23 46/5 46/13 46/23 47/6 47/14 49/10 49/13 53/8 57/18 65/18 65/21 66/25 67/25 70/10 71/2 71/11 71/23 71/23 72/22 73/6 75/25

**Mr. Ferguson** [7] 40/16 53/8 57/18 65/18 71/2 73/6 75/25

**Mr. Green** [15] 4/16 17/10 20/9 28/2 28/18 38/7 38/9 41/22 42/7 42/13 43/12 49/13 66/25 67/25 70/10

**Mr. Green's** [3] 45/20 45/23 71/23

**Mr. Miles** [4] 22/8 40/14 71/11 72/22

**Mr. Royal** [9] 28/3 39/15 40/1 42/12 46/5 46/23 49/10 65/21 71/23

**Mr. Williams** [4] 43/13 46/13 47/6 47/14

**much** [5] 12/21 27/2 48/21 54/10 80/14

**murdered** [1] 62/3

**must** [15] 6/4 11/24 17/6 18/25 35/7 35/14 45/14 46/10 48/20 50/9 54/1 54/12 66/11 66/17 66/18

**muster** [1] 75/6

**my** [6] 12/16 19/11 28/15 68/15 70/16 72/24

**myself** [1] 79/15

**N**

**namely** [2] 45/2 67/1

**narrow** [2] 11/13 15/16

**National** [6] 19/6 34/8 34/17 34/24 35/3 35/3

**nature** [3] 17/9 30/18 35/21

**Navigation** [1] 8/15

**necessarily** [4] 45/14 68/12 72/23 80/8

**necessary** [5] 24/16 44/14 49/24 50/6 67/14

**need** [15] 3/16 9/9 17/25 18/2 30/23 30/24 57/17 57/25 67/20 67/21 73/5 73/13 75/14 79/6 80/7

**needed** [2] 53/8 58/15

**needs** [2] 3/20 79/20

**negligence** [29] 9/23 18/8 18/12 29/6 29/14 29/20 31/6 60/4 60/7 60/10 60/12 60/20 60/25 62/17 63/8 63/25 64/3 64/7 64/13 65/22 73/22 74/2 74/2 74/11 74/20 74/20 74/22 75/5 75/7

**negligent** [6] 60/13 60/13 60/16 65/23 74/6 74/6

**negligently** [1] 29/13

**negotiated** [1] 4/19

**neither** [1] 28/14

**never** [1] 49/4

**nevertheless** [2] 40/25 45/11

**New** [7] 22/25 29/12 46/14 46/24 47/5 47/6 47/14

**next** [5] 46/24 47/1 51/9 63/22 79/21

**NFL** [37] 4/21 9/25 10/3 10/18 11/2 11/3 12/8 16/3 16/4 16/5 24/20 26/18 27/7 29/10 29/22 30/5 30/7 30/14 30/22 31/8 31/16 32/3 32/6 32/14 38/15 39/18 42/9 47/3 47/9 47/23 48/2 48/23 49/2 49/6 51/5 51/8 51/25

**NFL's** [3] 10/9 13/14 38/16

**nice** [1] 80/15

**no** [57] 1/4 3/16 9/17 11/19 17/17 17/25 24/3 24/25 25/1 25/2 25/6 25/11 27/12 27/20 28/6 28/22 30/24 30/25 31/1 31/1 31/15 32/1 32/4 36/4 36/8 36/11 38/18 77/7 77/8 77/9

**44/4** 45/6 45/16 45/21 45/24 46/5 46/21 47/4 48/8 48/25 51/21 53/4 54/5 55/8 56/1 56/6 57/6 57/16 58/8 58/9 58/10 58/14 59/5 62/20 65/8 68/10 74/16 76/7 77/10 77/12 78/2

**no-suit** [2] 31/15 32/1

**nobody** [4] 46/12 46/14 46/19 79/20

**non** [3] 5/9 5/14 13/6

**non-occupational** [2] 5/9 5/14

**non-violation** [1] 13/6

**None** [1] 76/12

**nor** [4] 55/8 55/14 56/15 77/10

**normal** [4] 20/6 36/5 61/23 65/3

**North** [1] 9/7

**not** [169]

**note** [4] 6/8 6/13 8/13 50/8

**noted** [4] 6/21 9/7 21/20 44/10

**notes** [3] 1/24 2/11 54/18

**nothing** [8] 28/17 29/17 31/22 32/1 46/3 49/1 49/11 63/13 76/9

**notice** [13] 44/10 49/24 56/14 61/5 66/11 66/18 66/18 67/5 72/13 76/13 76/23 77/2 77/21

**noticed** [2] 69/15 69/16

**noting** [1] 8/16

**notwithstanding** [1] 18/21

**November** [1] 1/8

**now** [13] 3/2 3/17 10/20 11/21 21/23 26/13 27/22 38/18 47/3 48/17 57/24 75/9 80/10

**number** [7] 3/3 20/23 23/16 32/9 54/17 55/4 55/6

**numerous** [1] 27/23

**O**

**obligation** [4] 6/17 7/16 21/2 35/24

**obligations** [3] 8/14 12/1 40/4

**obstacle** [1] 73/7

**obviously** [4] 13/2 14/21 74/20 76/21

**occupation** [1] 29/17

**occupational** [2] 5/9 5/14

**occur** [1] 68/17

**occurred** [16] 41/5 42/7 42/13 43/11 43/12 43/16 43/24 45/6 50/21 51/9 65/5 67/2 67/4 71/24 77/1 78/11

**occurring** [1] 56/24

**occurs** [1] 79/4

**off** [2] 5/18 72/13

**official** [1] 1/24 2/10 31/22 81/9

**okay** [4] 47/18 48/18 64/25 67/12

**on** [123]

**on-going** [1] 48/7

**once** [12] 36/8 44/10 49/24 50/2 52/8 57/18 67/4 67/5 72/12 72/13 75/25 77/21

**one** [29] 7/18 8/21 9/16 13/10 14/24 19/5 20/12 22/19 27/7 27/19 28/24 43/24 49/24 52/4 54/17 55/4 61/13 64/9 67/6 70/17 71/10 71/15 71/24 72/21 72/25 75/4 75/9 76/17 77/21

**only** [16] 21/23 25/16 27/4 28/14 30/2 30/3 30/21 32/5 36/4 39/12 43/3 46/22 49/9 49/11 56/21 79/2

**opened** [1] 7/24

**operated** [4] 4/21 76/9 76/10

**operating** [1] 64/15

**opinion** [8] 23/15 23/24 28/25 78/18 78/19 79/18 79/22 80/9

**opinions** [1] 80/9

**opponents** [1] 24/6

**opportunities** [2] 36/19 37/10

**opposed** [2] 10/22 71/16

**opposing** [3] 21/9 25/9 70/22

**options** [1] 36/25

**or** [109]

## O

oral [1] 78:18
order [6] 9/10 45/12 46/9 48/19 66/12 76/18
ordinarily [2] 53/24 61/23
ordinary [7] 30/18 70/1 70/2 74/12 76/23 79/2 79/5
organization [2] 10/15 31/25
Orleans [4] 46/14 47/6 47/6 47/15
other [35] 12/25 14/4 14/5 14/18 14/24 20/12 20/22 22/14 23/9 24/22 25/22 26/13 29/7 29/15 33/21 33/22 34/19 36/13 43/2 44/20 45/1 46/2 53/4 58/18 63/21 64/10 68/18 69/24 71/18 72/11 72/12 78/6 78/6 78/7 80/9
otherwise [2] 32/8 36/25
ought [3] 75/3 75/4 76/22
our [19] 11/2 15/8 18/3 23/11 23/16 26/9 28/7 30/13 37/11 41/3 59/6 65/23 66/2 67/15 67/19 69/6 71/19 73/21 77/19
out [28] 6/15 8/9 10/16 10/23 12/24 14/3 14/17 22/12 22/21 26/7 29/14 32/5 34/22 34/23 34/25 35/18 40/7 42/7 46/25 52/9 52/10 61/17 65/3 66/15 70/25 71/12 73/5 75/17
outside [30] 9/19 9/22 10/6 11/7 11/11 11/11 11/15 12/11 12/12 14/6 14/13 22/16 22/23 23/12 23/13 24/10 24/24 25/13 25/19 26/9 26/16 26/17 33/22 51/3 51/3 51/7 55/15 59/6 63/1 63/20
over [4] 13/11 37/17 51/6 75/17
overall [1] 28/22
overboard [1] 73/9
overly [1] 57/2
owe [1] 12/4
owed [6] 15/3 20/15 20/15 24/17 30/19 40/1
owes [1] 39/15
own [10] 11/10 18/12 20/4 32/1 43/15 45/20 45/23 46/17 60/14 64/10

## P

P-R-O-C-E-E-D-I-N-G-S [1] 3/1
p.m [1] 80/16
PA [4] 1/14 1/18 1/21 2/3
page [9] 53/19 55/2 56/3 67/5 67/16 72/3 73/21 73/23 77/25
pages [1] 20/4
paid [2] 12/18 21/18
paper [1] 51/10
papers [2] 47/7 79/14
paragraph [10] 9/17 9/21 9/23 10/1 39/17 63/17 63/22 73/24 73/24 74/21
paragraphs [3] 42/6 65/2 71/1
parameters [2] 6/1 35/24
pardon [2] 43/18 48/10
parens [1] 23/3
Parkway [1] 1/15
parse [1] 57/17
part [18] 11/4 11/5 11/6 11/10 13/1 17/22 27/2 30/19 32/10 33/15 49/7 51/6 53/21 62/8 76/17 76/19 76/25 77/6
particular [21] 29/13 31/7 32/18 39/10 44/14 49/23 50/5 54/6 54/7 54/15 56/23 56/24 61/10 62/17 67/13 69/21 69/25 74/20 74/25 76/7 79/6
particularly [1] 76/6
parties [20] 4/13 6/2 6/24 7/22 8/12 15/13 18/3 19/21 23/25 33/14 35/13 36/22 37/12 37/20 38/21 43/9 50/20 72/9 72/12 78/19
parts [1] 31/1
party [4] 35/8 62/16 78/23 78/24
passage [1] 67/16

past [4] 21/8 71/18 73/7 75/6
Patuxent [1] 1/15
pause [2] 30/6 77/24
pay [2] 10/21 22/14
payed [1] 24/5
paying [2] 21/15 49/15
payment [1] 39/22
peers [1] 21/8
penalized [1] 22/2
penalty [4] 15/10 31/17 31/21 42/11
pending [1] 3/2
people [4] 21/16 27/1 37/22 68/3
per [1] 35/15
perhaps [7] 37/6 39/23 43/13 43/13 46/2 62/10 73/4
period [21] 34/11 34/12 44/12 44/25 46/18 46/20 50/4 50/17 61/23 62/4 67/7 67/24 67/24 68/4 68/7 71/9 72/8 72/16 77/23 79/3 79/5
periodically [1] 5/17
permissible [1] 19/22 19/22
permit [2] 27/7 28/2
perpetrator [1] 69/24
person [5] 18/4 55/5 61/18 65/6 76/23
personal [1] 7/25
pertaining [1] 16/5
PETER [1] 1/11
petition [2] 34/10 34/23
physical [5] 12/9 12/9 12/10 23/21 78/24
pig [3] 5/11 5/12 5/12
PJM [2] 1/5 3/3
place [1] 47/15
plaintiff [58] 1/5 1/14 3/7 9/13 9/15 9/17 10/2 10/2 10/24 11/10 11/14 12/19 16/22 19/23 20/2 22/5 25/5 29/12 32/19 33/16 41/3 41/6 42/20 44/5 44/11 44/17 45/2 45/12 45/16 46/11 48/1 48/20 50/2 50/9 52/17 53/23 55/10 56/14 56/18 58/6 59/3 59/12 60/6 61/4 66/6 66/11 66/18 66/23 67/6 71/3 72/15 73/25 74/3 76/12 77/1 77/13 77/22 78/20
plaintiff's [7] 13/3 30/14 30/24 31/5 45/4 53/20 66/4
plaintiffs [7] 3/9 15/16 30/19 34/5 52/11 55/4 55/7
PLAXEN [3] 1/14 1/14 3/9
play [9] 9/24 12/8 14/18 21/14 21/16 21/17 21/18 26/7 31/25 39/17 42/9 46/2 49/12 76/3
played [2] 41/24 42/1
player [30] 10/21 10/21 10/22 12/4 13/10 13/11 14/19 16/3 22/19 22/20 22/20 25/6 25/9 25/14 25/16 26/7 26/22 26/23 27/7 27/8 27/10 27/11 28/16 28/22 28/23 29/24 31/18 32/6 38/15 39/24
player's [3] 11/4 20/13 36/16
players [33] 4/18 9/21 11/6 12/8 12/24 12/25 14/4 15/4 15/9 16/5 21/9 21/17 22/14 22/15 24/5 24/22 25/22 25/22 27/2 27/21 32/8 33/20 38/3 38/5 38/8 48/3 49/6 50/24 50/24 51/19 63/19 63/21 70/23
players' [1] 4/16
playing [9] 9/22 10/23 10/23 12/24 14/10 63/20
plays [1] 42/1
plea [1] 77/12
pleading [3] 20/10 37/24 39/13
pleadings [3] 28/8 55/19 66/1
pled [3] 27/12 63/11 75/1
point [8] 12/23 41/14 57/22 68/15 70/17 75/22 76/16 78/19
pointed [1] 22/12
points [1] 45/1

policy [12] 9/6 19/1 21/11 23/20 51/15 52/4 61/16 63/5 63/14 64/2 74/14 74/17
political [1] 31/1
Ponce [1] 1/21
poor [3] 69/15 78/13 78/13
pose [2] 26/20 78/17
position [4] 32/4 41/3 59/6 66/2
positively [1] 53/16
possibilities [1] 75/14
possibly [1] 9/8
Post [1] 46/24
posture [1] 54/5
potential [16] 12/14 44/11 44/13 44/13 50/4 50/5 67/6 67/8 67/8 69/23 72/16 72/16 76/1 77/22 77/23 77/24
potentially [1] 70/18
Potomac [1] 40/21
power [1] 51/24
practice [5] 17/5 29/16 34/22 34/25 56/24
pre [4] 39/2 63/6 74/24 74/25
pre-existed [1] 63/6
pre-suppose [2] 74/24 74/25
pre-Supreme [1] 39/2
preceded [1] 20/20
predicated [3] 5/5 5/13 13/6
preempted [10] 4/23 5/23 6/12 7/8 9/3 15/3 23/5 24/11 29/9 35/19
preemption [26] 3/20 4/4 4/7 4/11 5/1 8/4 8/6 11/24 22/10 22/23 23/9 24/24 25/18 30/10 31/8 31/13 32/16 32/23 40/24 41/10 52/22 57/6 59/1 59/4 59/5 75/7
premise [1] 12/11
prescribe [1] 23/18
prescribed [1] 26/12
present [8] 10/15 38/12 51/22 56/5 66/17 66/24 67/4 68/1
press [1] 43/12
presumably [1] 15/8
presumed [1] 54/22
pretty [1] 27/2
prevail [1] 57/23
previous [1] 41/24
priest [3] 44/2 44/5 44/5
principles [2] 19/5 37/24
prior [5] 5/25 17/21 77/14
priority [1] 80/10
PRO [3] 1/7 2/2 3/4
Pro-Football [1] 3/4
probability [1] 77/5
probably [2] 12/21 63/10
problem [2] 69/13 80/5
problems [1] 68/4
procedural [1] 54/5
procedurally [3] 52/21 53/2 56/8
procedure [13] 15/15 28/1 28/16 30/25 33/2 33/3 34/1 34/4 48/6 51/25 52/22 54/9 63/5
procedures [1] 15/22
proceeding [1] 17/6
proceedings [2] 1/11 81/3
process [8] 35/25 36/3 37/13 38/8 38/24 51/3 52/1 52/5
product [2] 7/16 20/16
products [1] 68/22
profession [1] 29/13
professional [2] 29/16 30/16
program [40] 22/13 22/14 23/11 24/5 24/21 25/1 25/6 25/14 29/23 32/11 47/4 49/19 49/21 51/6 51/18 55/11 55/17 55/20 55/23 56/19 58/12 59/16 59/17 59/20 59/24 60/4 60/22 61/24 62/20 63/4 63/19 64/11 64/20 70/22 71/25 73/2 73/4 74/1 76/9 77/14

## P

prohibit [1] 33/13
promulgating [1] 60/22
properly [3] 20/13 20/16 38/14
protecting [2] 6/25 17/20
prove [2] 56/9 61/7
provide [3] 11/16 29/6 32/15
provided [1] 28/1
provides [1] 32/4
proving [3] 54/19 55/3 65/14
provision [11] 15/20 16/3 16/4 17/3 27/6 27/9 27/20 28/6 28/15 31/21 32/1
provisions [4] 36/11 36/13 38/15 66/1
prudence [1] 76/23
public [5] 9/6 19/1 21/10 23/20 47/18
published [1] 76/14
pulls [1] 14/17
punched [2] 13/11 22/20
purport [1] 32/7
purported [1] 38/13
purports [1] 6/11
purpose [3] 24/6 24/21 29/24
purposes [9] 8/6 10/15 28/3 49/20 50/16 59/5 59/8 71/22 72/6
pursuant [2] 49/19 62/5
pursue [3] 18/20 38/10 38/10
pursued [3] 38/19 77/6 77/15
put [15] 7/25 12/11 16/24 17/2 21/24 25/24 41/13 58/23 62/2 64/8 68/22 71/12 75/14 76/3 76/23

## Q

question [26] 4/11 4/22 5/1 8/7 12/16 13/9 14/8 14/23 16/24 24/3 28/12 33/13 35/11 35/20 35/22 38/12 40/23 44/4 53/4 53/7 53/14 53/24 54/14 57/13 71/20 74/9
questions [3] 6/2 6/5 57/3
quite [6] 22/18 28/8 55/9 56/2 67/19 69/18
quote [3] 23/1 72/20 76/20
quoted [2] 67/16 77/20
quoting [4] 24/14 53/19 54/18 67/4

## R

races [1] 72/14
raised [5] 40/20 40/25 41/1 45/2 45/12
ran [3] 76/10 76/11 76/11
rather [4] 14/24 58/5 60/7 73/10
ratifying [1] 64/2
Rawson [5] 7/3 20/22 21/5 35/16 39/4
rea [2] 26/16 74/22
reached [2] 15/2 20/18
reaching [1] 9/3
read [4] 13/3 17/15 23/1 47/7
reading [5] 28/16 36/7 56/4 74/21 76/19
reads [1] 73/24
real [2] 52/2 52/9
reality [1] 36/22
realize [1] 68/5
realized [1] 39/13
really [20] 11/1 19/16 21/22 22/10 25/9 42/17 44/7 46/18 47/16 49/11 53/7 57/25 58/16 58/22 62/23 64/8 71/10 71/15 75/3 79/13
realm [3] 26/17 26/18 70/1
reason [6] 22/23 22/24 23/14 28/8 58/21 59/9
reasonable [2] 29/15 55/5
reasonably [3] 53/12 76/21 77/6
reasons [2] 20/24 32/22
recall [5] 37/4 43/20 45/22
recalling [1] 47/7
received [1] 5/16

recently [1] 8/20
Recess [1] 80/16
recital [1] 20/6
recognize [6] 11/19 17/22 17/25 19/2 19/19 72/10
recognized [5] 17/24 19/4 37/16 40/10 66/22
recognizes [4] 34/18 38/3 38/4 38/25
recognizing [1] 17/20
record [4] 55/8 58/8 58/11 81/3
recourse [1] 17/17
recovery [1] 28/4
Red [1] 74/15
Redskins [4] 3/13 41/25 42/4 49/15
Redskins' [1] 42/2
refer [3] 35/10 38/23 76/17
referee [5] 15/1 15/3 31/17 38/2 42/11
referees [1] 30/15
reference [6] 4/11/18 11/20 13/20 30/21 41/24 71/1
referenced [1] 11/3
references [3] 10/5 30/13 35/9
referred [2] 8/15 54/23
reflect [1] 10/10
reflects [1] 23/20
refrain [1] 9/10 10/8 24/17
regard [7] 16/11 16/14 41/10 47/5 72/17 74/12 77/24
Regardless [1] 69/22
regulations [3] 13/24 27/23 29/2 29/4 29/15 33/9
rejoin [1] 31/24
relate [1] 31/24
relates [1] 31/24
relating [2] 6/2 31/21
relation [1] 44/2
Relations [10] 4/12 16/17 18/15 19/6 34/9 34/17 34/24 35/3 35/3 41/18
relationship [5] 6/12 11/8 17/9 19/21 36/23
relevant [2] 50/24 50/24
reliance [2] 30/12 65/6
relies [1] 56/1
rely [1] 76/20
relying [1] 31/9
remedies [2] 7/19 41/12
remember [1] 77/11
remembered [1] 43/21
removed [2] 7/24 8/3
repeatedly [4] 30/3 35/9 37/16 54/23
reply [2] 32/25 80/7
report [2] 43/12 52/7
REPORTER [4] 1/24 2/10 81/1 81/9
representatives [1] 4/19
require [2] 21/23 32/7
required [4] 19/9 43/7 50/17 72/7
requires [2] 8/7 17/12
research [1] 79/15
resolution [2] 8/7 15/24
resolve [1] 36/14
resolved [3] 6/4 15/22 35/15
resolving [1] 38/24
respect [4] 57/13 60/2 62/17 76/6
respond [2] 79/8 80/6
response [1] 20/2
responsibility [6] 44/11 50/3 62/11 67/7 72/15 77/22
responsible [5] 43/10 50/20 62/15 72/9 77/19
restated [1] 7/8
result [5] 35/2 41/13 42/14 43/5 63/14
resulted [2] 38/18 74/3
resulting [1] 23/7
retirement [1] 69/8
return [1] 8/23

revealed [5] 55/6 55/17 55/18 58/6 58/11
reverse [1] 50/1 80/5
reviewed [2] 5/24 7/7
reviewing [1] 4/24
right [36] 3/6 3/14 3/19 4/6 6/16 6/24 12/21 16/19 17/1 17/5 18/3 18/8 18/15 18/20 19/2 19/8 22/4 22/6 32/25 40/12 40/16 41/16 41/19 51/23 51/24 52/14 52/16 59/20 60/15 65/18 70/15 73/19 75/20 77/17 78/15 80/14
Rightness [1] 8/9
rights [2] 8/13 9/6
rise [1] 69/25
risk [2] 26/15 30/18
Road [1] 1/18
roast [2] 5/11 5/12
ROBERT [3] 2/2 3/10 3/13
rogue [2] 60/6 62/19
role [7] 5/1 5/2 7/1 17/21 17/23 38/25 42/1
roof [3] 69/9 69/11 69/16
Roth [1] 1/21
rough [2] 13/1 21/14
Royal [34] 9/16 9/18 9/23 10/1 25/5 28/3 35/12 35/17 39/15 39/20 40/1 42/12 43/5 46/5 46/23 49/10 49/18 59/2 59/11 59/25 60/5 60/23 60/24 62/19 63/12 64/10 64/21 65/21 70/21 71/2 71/5 71/23 72/25 74/3
Royal's [1] 70/17
RPR [1] 81/8
rule [25] 3/15 16/6 16/8 29/22 37/13 37/21 39/18 41/7 41/8 42/21 44/7 47/23 53/5 53/9 54/2 54/8 54/12 54/19 56/12 57/1 66/8 66/10 71/16 76/3 76/17
rules [72] 9/19 9/22 9/25 10/3 10/6 10/6 10/9 10/11 10/14 10/17 10/19 11/2 11/3 11/11 11/15 11/15 11/18 12/2 12/9 12/10 12/11 12/11 12/20 13/7 13/7 13/23 15/10 15/11 16/9 19/20 19/25 20/4 20/8 21/11 21/23 25/13 27/7 27/23 29/2 29/3 30/5 30/9 30/10 30/12 30/14 31/9 31/16 31/19 31/25 32/14 32/17 33/2 33/9 33/15 33/17 33/25 34/1 34/15 35/9 35/19 35/23 35/23 35/24 38/3 39/11 40/5 42/9 51/5 51/8 54/9 63/20
run [7] 11/10 39/14 44/24 52/13 56/25 69/15 78/1
running [17] 20/3 42/23 43/7 44/15 44/19 45/13 50/6 50/16 50/17 67/14 67/23 69/5 70/9 70/12 72/5 72/7 72/13

## S

said [20] 6/20 8/6 17/18 18/23 19/15 34/25 36/4 39/16 43/23 44/4 45/17 45/24 46/6 46/7 50/11 51/15 51/18 62/23 68/12 80/11
Saints [2] 46/14 48/14
salt [1] 68/22
same [9] 10/4 15/3 15/7 29/10 30/7 40/5 46/19 52/15 57/24
sanction [1] 42/10
sanctions [2] 47/10 48/3
saw [1] 26/2
say [31] 10/14 12/4 13/5 17/4 18/6 18/11 22/5 22/17 27/10 35/11 35/16 36/12 36/14 36/24 40/1 43/6 45/7 47/23 49/16 49/20 49/23 62/1 66/16 70/3 75/4 75/5 75/11 75/13 77/25 78/22 80/12
saying [19] 11/2 11/14 11/16 11/22 12/22 18/5 21/14 23/9 29/20 31/3 33/12 33/14 46/17 63/12 67/19 74/10 74/15 74/18 76/25

**S**

says [34] 1/10 15/11 22/16 23/5 23/17
23/16 23/17 23/23 24/15 27/20 28/18
30/6 30/11 30/13 34/1 35/7 36/8 37/13
40/22 46/24 51/10 53/19 54/25 55/2
56/2 57/15 57/18 57/21 58/2 63/13 67/2
69/1 71/2 77/4
schedules [1] 34/19
Schetelich [1] 2/3
scope [12] 14/6 14/9 14/13 24/10 33/23
35/21 40/11 44/1 62/22 62/24 63/1
64/15
season [1] 41/25
second [5] 35/10 42/3 76/16 76/19 77/6
Section [20] 4/12 5/1 6/1 7/2 13/17
13/20 14/2 14/3 15/17 19/7 23/24 29/22
29/22 33/5 33/18 33/25 35/15 37/12
37/25 38/3
see [12] 10/7 16/7 22/4 49/6 63/11 63/12
72/24 73/15 78/20 79/6 79/16 79/17
seeing [1] 37/4
seek [2] 28/4 36/19
seemed [1] 46/19
seems [3] 25/23 27/1 64/19
seen [3] 27/12 27/17 30/15
sense [3] 11/15 36/5 74/13
separate [21] 12/3 12/14 13/7 31/11
38/9 54/3 62/7 62/9 62/19 64/13 64/24
65/12 71/11 71/14 72/1 73/5 73/13 75/4
75/19 75/22 78/23
separately [1] 79/7
separates [1] 26/1
September [1] 59/15
series [1] 4/10
set [10] 9/25 15/22 15/24 26/7 39/11
39/18 42/17 45/16 66/3 70/25
SETH [2] 1/20 3/8
sets [2] 42/7 65/21
setting [1] 16/16 25/14
seven [1] 65/2
several [1] 7/21
sex [4] 8/23 9/4 11/13 21/6
sexual [1] 44/3
sexually [1] 43/20
Shaffer [1] 3/12
shall [7] 11/21 13/25 33/7 33/10 61/14
61/16 80/11
shaming [1] 21/7
shape [3] 57/15 59/18 60/19
short [1] 78/21
should [25] 19/23 19/25 29/21 36/9
37/21 38/17 39/3 40/24 40/24 42/18
48/1 51/7 53/15 53/16 55/1 57/23 58/17
58/23 60/15 61/4 61/5 61/17 65/15
76/21 79/12
show [3] 45/14 45/14 76/18
showed [1] 34/23
showing [1] 58/4
sic [1] 30/23
side [1] 53/14
signed [1] 4/16
significant [2] 31/19 56/11
simple [4] 22/23 23/14 51/6 51/8
simply [13] 10/22 11/23 23/12 32/13
32/23 51/4 55/24 59/2 60/6 61/2 71/16
73/15 77/7
since [4] 4/25 17/19 19/24 37/15
single [4] 25/14 28/1 28/21 75/13
Sisters [2] 69/8 78/10
situation [15] 11/7 14/21 20/2 35/10
37/17 38/2 38/20 39/6 39/15 40/7 44/7
47/6 47/19 68/19 71/2
situations [1] 20/14
six [3] 10/4 41/17 65/1

Smith [4] 23/15 23/16 23/16 25/18
so [51] 3/22 3/23 11/22 14/8 16/6 17/11
20/1 21/24 25/23 26/2 27/13 28/17 31/1
31/9 31/11 31/18 32/9 32/12 32/22 35/6
37/10 40/6 41/13 42/5 43/11 44/6 46/17
49/8 52/15 53/2 53/14 53/22 53/25 54/9
54/20 55/21 56/7 57/2 60/24 62/18 65/7
65/12 67/19 68/12 69/2 69/11 70/1
72/10 74/25 75/7 78/18
so-to-speak [1] 42/5
social [1] 11/9
society [1] 39/16
solely [1] 17/16
some [28] 17/2 17/15 17/22 21/17 23/10
33/3 42/1 42/4 42/25 43/11 43/11 43/21
45/19 45/22 46/10 47/11 51/10 62/25
64/17 68/3 68/5 68/16 69/4 69/6 71/25
77/15 79/22 80/9
somebody [9] 10/16 10/16 12/18 14/17
61/25 62/2 69/25 71/13 75/24
somehow [1] 10/25 11/11 47/25
someone [10] 17/1 17/5 18/13 20/16
21/7 22/22 61/13 61/14 61/17 71/12
something [25] 3/19 6/15 9/5 11/20 13/6
15/11 19/25 20/5 20/25 34/6 34/16
37/22 38/19 39/25 45/15 45/17 45/18
48/23 62/2 64/13 75/16 76/2 76/5 79/14
80/12
sometime [1] 72/2
sometimes [1] 73/8
somewhat [1] 22/22
soon [1] 80/12
sorry [1] 16/13
sort [8] 28/4 47/11 62/13 68/3 68/5
73/13 75/17 79/20
sought [2] 26/23 70/22
Sounds [1] 64/16
source [2] 12/1 20/5
sources [1] 30/17
SOUTHERN [3] 1/2 22/25 29/11
speak [3] 15/10 39/10 42/5
speaking [1] 67/10
speaks [6] 14/12 16/9 16/10 27/18 27/19
33/25
speared [1] 25/22
special [5] 44/3 46/20 67/11 72/19 72/21
specific [13] 13/15 28/19 29/3 30/4 30/5
30/14 31/22 43/9 45/14 50/20 60/3 65/2
72/9
specifically [5] 7/1 15/14 31/15 56/3
66/20
specifics [1] 45/16
spectrum [3] 74/21 74/22 74/24
split [1] 4/1
stabbed [1] 22/21
stabs [1] 14/17
stadium [3] 13/10 14/14 15/4
staff [1] 63/19
stage [1] 61/11
stand [1] 73/5
standard [13] 11/16 21/8 29/16 32/19
39/11 57/25 59/19 66/13 74/9 74/12
74/13 75/8 75/8
standards [12] 7/6 7/22 12/7 12/12
21/10 29/4 29/5 30/16 31/7 39/7 39/8
39/10
starring [1] 42/1
start [7] 3/21 4/6 43/15 52/21 53/2 71/1
74/11
started [2] 14/15 67/24
starts [4] 42/3 50/15 67/23 72/5
state [25] 3/22 4/23 5/6 5/19 6/11 6/22
7/8 7/12 7/20 8/1 8/1 9/8 16/11 16/14
16/18 16/20 16/23 17/13 18/1 24/1 24/4
24/5 37/16 37/18 41/20

stated [2] 25/8 79/7
statement [1] 72/24
statements [1] 63/15
STATES [3] 1/1 1/12 6/20
status [3] 47/5 47/8 47/19
Statute [40] 4/3 4/0 18 4/0 20 41/4 41/17
41/21 42/1 42/18 42/23 43/7 44/15 44/19
45/13 50/6 51/12 52/12 52/22 52/24
52/25 54/2 54/4 54/8 54/15 56/25 57/12
58/10 59/9 59/14 65/4 65/14 66/4 66/6
66/12 67/15 69/5 69/13 70/9 70/12
76/18 77/11 78/4
stemming [1] 60/4
STENOTYPE [2] 1/24 2/11
step [2] 18/12 56/7
still [13] 31/8 31/12 31/13 48/8 48/11
48/14 56/21 56/22 61/6 74/5 75/21
75/25 77/7
stop [2] 55/20 69/4
stopped [1] 34/23
straight [3] 52/24 74/20 75/5
Street [1] 2/4
strict [1] 64/14
struck [1] 31/18
Sub [3] 29/22 29/22 29/22
Sub-Section [2] 29/22 29/22
subject [5] 33/3 34/4 34/7 37/9 68/6
submit [7] 12/5 13/4 14/25 19/15 19/25
20/23 41/7
submitted [4] 55/13 57/14 65/9 65/13
substantive [3] 40/20 40/24 41/1
subsumed [1] 75/24
success [1] 42/2
successful [1] 34/12
such [12] 6/5 14/7 27/4 28/6 33/16
33/23 55/13 55/16 61/20 76/13 77/4
78/8
suddenly [3] 20/4 20/5 47/23
sue [2] 18/8 59/20
sufficient [2] 55/5 76/15
suggest [1] 12/13
suggested [1] 66/10
suggestion [3] 19/23 38/6 45/20
suing [2] 25/22 59/23
suit [12] 5/19 6/6 6/6 31/1 31/15 31/23
32/1 32/20 55/4 56/22 69/13 71/5
Suite [1] 1/15 1/22 2/4
summary [13] 8/4 19/24 52/23 57/5 57/7
57/11 58/1 65/8 65/10 65/24 65/25 77/8
77/9
supervision [5] 60/13 60/13 60/16 60/21
65/23
supervisory [1] 63/18
supplement [1] 79/17
supplemental [2] 79/10 79/12
support [1] 23/23
suppose [5] 13/9 51/16 53/8 74/24
74/25
Supreme [20] 4/24 4/25 5/24 6/18 6/19
6/22 8/16 11/21 17/20 17/24 18/18 19/4
19/18 20/20 20/24 24/23 35/11 37/15
39/2 40/10
sure [8] 19/13 21/14 21/23 26/14 62/23
75/5 75/18 80/2
surely [1] 23/8
survived [1] 23/8
survives [1] 75/7
survivors [1] 7/5
suspected [2] 51/10 57/20
suspicions [1] 47/1
sustained [4] 42/14 43/1 43/4 70/11
symptoms [1] 68/16
system [10] 10/25 26/10 26/25 40/3 40/4
46/13 47/15 58/16 58/18 79/16

**T**

table [1] 12/21 17/17 18/8 28/17 30/12 36/8 38/6 39/19 41/17 44/4 46/4 58/9 63/16 66/7 69/7 77/25 79/23 79/4 79/22 80/3
take [12] 12/8 19/6 19/17 19/18 37/10 37/17 37/22 51/2 51/7 70/5 79/18 80/10
taken [7] 7/21 54/1 54/13 56/10 65/7 66/4 66/15
takes [4] 26/9 26/16 26/17 45/1
taking [5] 56/7
talk [6] 12/21 46/13 64/5 74/5 74/7 78/6
talking [14] 3/21 16/20 21/12 36/15 53/2 58/1 59/3 64/3 64/4 66/22 68/19 71/15 71/17 74/7
tangential [1] 11/20
tangentially [1] 19/19
team [26] 3/15 10/21 12/4 12/24 14/18 21/15 27/16 28/3 28/24 35/12 35/17 39/21 46/1 48/5 48/6 60/21 62/14 63/18 63/23 63/24 64/1 64/4 73/23 73/25 76/7 76/10
team's [1] 60/25
teams [1] 27/21
Tech [13] 42/17 43/6 44/9 49/23 52/6 66/20 67/16 68/18 68/20 68/25 69/18 70/5 72/3
Telephone [1] 40/22
tell [1] 3/16
tenant [1] 18/9
Tennessee [2] 48/15 48/17
Tenth [1] 26/5
term [8] 34/6 34/7 34/8 34/16 34/18 34/25 35/4 39/8
terms [15] 3/23 4/20 5/15 6/10 6/23 11/8 15/5 16/5 30/22 32/1 34/13 71/18 78/25 79/9 79/24
test [2] 77/2 77/6
than [17] 8/16 11/20 14/5 14/24 31/20 33/22 38/18 41/5 46/2 46/21 47/2 55/3 59/10 60/8 71/18 73/10 77/14
Thank [8] 4/8 22/7 22/9 65/17 65/19 78/16 80/13 80/14
Thanksgiving [2] 34/22 34/24
that [600]
that's [51] 3/17 3/21 3/23 9/19 12/19 12/25 13/1 13/2 13/2 14/21 14/23 14/25 17/17 20/17 21/11 21/14 21/22 21/25 23/3 24/2 25/24 28/6 29/22 36/8 37/6 37/11 39/11 39/19 46/4 46/16 50/16 53/14 56/24 58/19 60/11 62/23 63/7 63/25 64/17 64/23 70/8 70/19 70/24 70/24 71/13 71/14 72/18 73/10 74/15 74/17 76/25
that's a [1] 3/21
the citation [1] 31/18
the club [1] 39/23
the Red [1] 74/15
the three [1] 68/6
their [25] 5/23 6/25 15/11 15/12 17/1 17/12 22/18 29/21 39/12 39/13 40/3 40/20 49/7 52/13 54/24 55/19 60/21 63/18 64/1 64/10 68/22 69/3 69/9 69/10 77/3
them [8] 3/14 3/18 29/8 29/8 62/16 62/16 75/9 78/12
themselves [1] 32/17
then [26] 3/7 22/6 22/8 31/7 31/8 35/7 36/17 36/24 38/12 40/8 42/20 51/9 58/23 59/4 59/13 60/12 64/20 67/15 68/17 71/6 71/24 74/3 75/14 79/7 80/6 80/7
theoretical [1] 73/3
theories [2] 4/23 44/21
theory [9] 46/9 48/19 49/8 59/21 61/1 61/13 62/7 62/8 62/9
there [138]

there's [21] 12/21 17/17 18/8 28/17 30/12 36/8 38/6 39/19 41/17 44/4 46/4 58/9 63/16 66/7 69/7 77/25 79/23 79/4 79/22 80/3
therefore [13] 6/16 7/17 11/24 15/4 21/1 23/24 24/23 25/18 30/25 31/14 34/7 35/19 57/21
therein [1] 13/21 33/7
these [33] 7/22 10/9 17/23 18/1 18/3 20/4 20/7 20/10 24/9 28/17 30/9 30/9 30/12 30/19 32/14 35/7 37/20 38/25 39/5 39/5 39/6 42/15 44/3 44/4 51/15 54/6 55/25 66/6 68/2 70/18 73/10 76/1 78/6
they [113]
they're [10] 11/1 11/1 14/10 14/14 19/21 31/11 31/12 58/14 68/8 68/19
they've [4] 28/1 28/21 68/9 68/10
thing [1] 61/20
things [6] 26/15 27/19 31/7 34/20 64/21 65/20
think [28] 3/19 3/22 11/14 12/19 21/22 22/12 25/11 25/21 26/1 29/5 34/16 52/21 62/24 64/11 64/23 64/23 73/13 75/9 75/15 75/21 76/5 76/15 79/5 79/12 79/13 79/19 79/20 79/22
this [180]
those [29] 5/18 8/18 9/12 11/3 12/11 13/7 17/13 17/21 19/17 19/25 20/14 20/17 22/23 31/6 31/7 31/8 32/22 33/17 34/15 34/25 35/24 42/17 61/1 62/15 65/5 65/9 70/13 76/12 76/13
though [7] 8/3 18/10 36/2 41/10 45/20 47/7 57/17
thought [4] 45/19 46/25 68/21 79/14
threats [1] 21/7
three [15] 9/23 41/5 44/12 44/24 46/18 46/20 50/4 55/3 62/4 68/6 71/9 75/9 75/14 77/14 79/5
three-year [8] 44/12 44/24 46/18 46/20 50/4 62/4 71/9 79/5
threw [2] 15/1 31/17
through [1] 5/7 15/11 17/6 18/25 33/3 35/24 36/3 42/6 42/15 50/22 63/18
throughout [1] 54/24
throwing [1] 15/3
thrown [1] 23/7
thus [3] 23/6 30/18 31/25
tied [2] 10/9 19/19
time [18] 8/19 12/13 22/1 25/5 25/10 25/22 28/18 34/11 34/12 43/21 46/19 53/12 61/3 68/4 69/4 75/17 76/13 80/8
times [1] 34/15
Titans [2] 48/15 48/17
Title [3] 9/5 19/1 19/5
titled [1] 63/16
to invoke [1] 56/12
today [1] 72/24
told [1] 45/21
toll [1] 45/13
tolls [2] 54/2 54/3
too [2] 73/14 78/11
took [3] 6/22 22/21 78/12
top [1] 19/11
tort [37] 4/22 5/25 6/7 6/9 7/9 8/10 12/12 16/23 23/11 23/18 24/7 24/23 25/3 25/17 25/24 26/10 32/8 32/11 32/19 37/23 55/7 58/7 58/18 59/25 60/8 61/10 61/15 61/16 62/17 70/2 76/8 76/13 64/16 70/21 73/16 74/23 75/1 75/8
torts [4] 23/3 26/11 31/4 59/6
total [1] 30/10
totality [1] 31/10
touching [1] 66/23
towards [1] 74/23

trade [1] 29/13
traditional [1] 62/20
tragic [1] 16/9
transcript [2] 1/11 81/3
TRANSCRIPTION [2] 1/24 2/11
trash [1] 7/25
treat [2] 20/13 20/16
trial [2] 17/2 20/20
tried [5] 18/10 24/9 25/15 75/11 75/15
tries [1] 10/24
trigger [3] 44/14 50/6 67/14
triggered [7] 44/19 50/22 51/13 66/13 70/11 72/13 78/5
triggers [3] 69/2 69/19 70/9
Triplett [2] 23/6
trivial [1] 56/6
true [13] 10/15 12/23 18/5 18/7 51/14 54/1 54/13 54/22 56/11 62/23 65/8 66/4 71/2
try [8] 10/16 12/18 12/24 15/16 30/8 34/5 69/10 74/10
trying [9] 12/19 13/5 25/24 25/25 37/17 51/2 61/12 61/15 70/16
turkeys [3] 34/22 34/24 34/25
turn [2] 9/12 37/23
turns [1] 31/23
two [17] 9/21 15/8 26/7 38/3 42/17 55/6 60/12 63/16 64/7 64/8 64/18 64/23 64/24 65/12 76/4 78/20 80/4
type [6] 15/10 18/24 19/10 24/11 42/11 79/1
typical [1] 26/10
typically [2] 62/12 64/14

**U**

ulterior [2] 51/10 58/21
ultimately [1] 8/24
unable [1] 53/23
unappealable [2] 14/1 33/11
unaware [2] 27/4 27/5
unclear [1] 77/8
uncovered [1] 55/11
under [58] 4/12 4/21 4/23 5/6 5/15 6/17 6/23 7/1 7/2 7/20 7/20 8/1 8/2 9/5 9/6 12/1 12/20 16/25 17/7 17/13 17/13 17/14 17/25 18/6 18/7 18/7 18/14 18/19 21/7 24/1 24/4 24/4 25/18 25/18 27/7 27/8 27/13 33/17 34/8 35/15 35/20 36/7 36/18 37/9 37/11 38/7 38/10 38/20 40/8 41/18 51/5 51/11 54/8 56/25 57/12 59/14 60/19 73/21
undergone [1] 61/5
underlying [2] 6/21 8/24
undermining [1] 37/24
understand [3] 16/22 61/15 72/25
understanding [2] 64/18 68/15
undertaken [4] 52/3 55/10 61/8 61/9
uniform [1] 6/5
unilaterally [1] 35/2
union [11] 4/17 7/5 8/3 17/10 17/10 17/11 18/24 19/8 34/10 34/22 35/6
union's [1] 7/16
unique [4] 15/18 15/18 76/2 76/5
UNITED [3] 1/1 1/12 6/19
unless [2] 39/10 62/22
unlike [2] 43/18 43/18
unrelated [2] 14/6 33/22
until [12] 46/14 55/18 56/5 60/19 61/2 68/4 68/16 69/4 69/11 70/2 76/8 76/13
up [12] 4/13 26/5 34/23 42/3 48/25 49/7 62/2 65/20 68/14 72/23 75/22 79/9
upon [11] 5/5 5/17 30/12 31/6 31/9 31/20 56/2 59/16 60/21 65/6 76/21
us [7] 3/16 22/24 26/9 26/10 45/1 73/11 79/25

**U**

use [4] 2/14 31/1 63/21 50/2
used [4] 3/16 39/8 54/24 68/25
utilized [1] 55/1

**V**

varies [2] 74/11 74/12
various [3] 30/15 31/22 71/1
verbatim [2] 29/8 56/4
versus [23] 3/3 8/15 8/21 16/18 17/13 40/21 42/16 43/6 43/19 44/9 49/22 49/22 52/6 66/15 66/20 66/21 67/5 67/16 68/18 68/20 69/18 70/5 72/3
very [26] 13/15 22/23 23/14 24/14 26/10 29/10 31/22 32/9 35/4 36/19 37/11 38/1 41/19 41/23 43/4 45/5 47/1 51/13 51/23 54/25 55/19 55/22 67/3 70/10 71/20 80/14
vicarious [11] 60/11 62/11 62/21 63/12 63/16 64/7 64/9 66/4 70/11 73/1 73/16
vicariously [2] 64/22 71/7
victim [1] 58/7
victims [1] 55/7
VII [3] 9/5 19/2 19/5
violated [2] 7/6 30/5
violation [14] 7/9 7/18 7/20 9/8 10/2 10/18 11/2 13/6 13/6 15/10 16/6 25/17 35/2 51/5
violations [3] 10/5 10/10 10/11
violent [3] 12/9 12/10 21/11
Virginia [1] 8/1
visiting [1] 5/11
void [1] 19/1

**W**

wages [1] 34/19
Wait [1] 45/19
waive [2] 17/1 18/7
waiving [2] 17/5 17/15
walk [1] 33/3
walked [1] 13/10
walking [1] 21/7
want [13] 3/23 22/4 32/25 40/12 47/16 51/19 53/2 72/22 73/14 78/19 78/22 79/8 79/24
wanted [1] 38/10
Warriors [1] 8/15
was [176]
Washington [22] 3/12 3/15 35/12 35/16 42/16 43/14 43/23 46/1 46/5 47/4 48/23 49/4 49/5 49/9 49/22 59/23 60/2 65/22 66/16 66/21 72/1 77/21
wasn't [4] 25/4 45/21 45/22 69/11
way [19] 3/16 9/18 13/3 13/10 16/24 22/20 28/19 31/24 54/5 57/14 59/18 60/18 61/15 62/10 64/5 63/11 74/13 77/15 79/17
we [90]
we'll [1] 3/18
we're [20] 3/14 4/10 11/22 14/22 16/15 16/20 21/22 27/24 30/3 38/18 52/23 53/3 53/25 65/7 65/8 71/15 75/16 77/8 78/20 79/19
we've [4] 21/20 23/4 63/16 64/6
weeks [1] 78/20
well [45] 10/13 10/14 10/20 12/16 13/1 13/24 14/16 14/23 21/21 22/4 24/2 25/4 25/20 26/1 26/21 27/15 28/10 33/9 39/19 40/1 46/12 47/11 48/2 48/5 52/7 53/7 54/3 54/17 57/5 57/12 58/13 59/2 59/19 65/16 68/10 68/14 71/21 72/18 72/22 75/3 76/4 78/20 80/1
went [6] 5/23 6/8 6/13 8/13 26/5 62/12
were [37] 4/19 5/14 6/3 7/4 7/24 7/25

8/19 8/24 9/21 12/20 21/17 24/25 25/2 25/6 26/13 30/3 30/4 31/19 35/14 46/25 49/15 61/22 62/5 64/5 69/18 69/22 73/13 59/13 59/9 61/3 63/19 63/24 66/24 67/4 67/21 68/1 68/22 76/8
what [99]
what's [2] 14/18 74/9
whatever [5] 25/15 61/24 62/2 62/5 71/13
when [47] 4/13 4/22 5/23 8/5 9/12 10/6 10/24 11/25 12/8 12/10 13/4 16/6 18/8 19/17 19/18 19/21 20/3 31/9 31/12 34/10 34/21 35/4 35/23 36/15 36/22 39/12 42/23 42/7 42/15 43/1 43/16 43/24 44/4 56/23 56/24 57/25 64/5 67/24 69/15 69/16 73/9 74/6 75/6 77/1 78/1 78/1 78/10
where [34] 3/23 11/7 15/1 15/23 19/17 20/14 21/3 21/4 21/22 26/11 26/21 31/17 37/21 39/6 40/7 42/20 44/7 45/12 53/3 53/3 53/25 54/11 54/20 54/21 54/25 55/22 56/8 56/10 68/2 71/16 71/18 78/7 79/1 79/17
Whereas [1] 52/22
wherein [2] 13/22 33/7
whether [25] 4/23 6/5 6/9 6/17 8/7 18/6 18/13 18/19 22/19 24/17 26/21 38/13 39/19 40/23 53/9 53/12 53/15 53/20 58/17 70/17 70/19 73/6 76/9 78/25 79/6
which [64] 4/15 5/5 7/9 8/22 9/18 11/6 13/25 15/2 17/12 19/9 20/19 21/19 22/13 22/22 22/24 23/11 24/7 24/13 28/15 29/3 29/8 30/12 30/16 31/20 31/24 32/22 34/12 35/8 36/3 37/18 39/15 41/7 41/12 41/25 53/18 54/1 54/16 54/9 56/19 56/19 57/19 58/3 58/3 59/1 60/17 63/4 63/14 63/16 63/19 64/12 65/2 66/3 67/2 71/12 73/8 73/21 74/25 76/20 76/22 77/4 77/7 78/23
while [3] 4/21 31/15 79/18
White [1] 7/7 7/15
who [24] 3/24 5/13 6/24 7/23 17/16 24/24 35/8 38/21 43/20 43/20 44/2 44/5 44/5 44/6 45/21 52/16 54/14 62/12 65/14 69/15 76/10 77/19 77/19 77/19
why [16] 17/19 21/11 32/4 39/12 39/19 59/9 60/7 63/7 63/8 68/20 69/4 70/7 70/19 73/10 74/4 79/7
will [16] 4/4 4/11 15/21 18/3 33/16 34/15 36/13 36/14 37/13 37/13 37/21 47/25 79/2 79/18 79/21 80/10
Williams [7] 43/13 46/13 47/6 47/14 48/8 48/11 60/14
wind [1] 75/22
Wisconsin [5] 5/19 5/22 6/14 6/19 21/4
within [35] 4/21 6/1 11/12 12/10 14/7 14/19 15/8 20/6 26/22 26/24 26/24 28/6 28/17 28/19 29/16 30/2 33/23 44/12 46/18 46/19 50/3 60/18 61/23 62/24 63/23 64/15 66/7 67/7 71/8 72/15 75/2 75/14 77/23 78/2 80/6
without [5] 7/10 17/3 23/21 35/22 52/13
withstand [1] 20/7
won [1] 42/2
won't [1] 78/18
wonder [2] 27/1 39/19
word [2] 40/12 77/17
words [2] 3/16 69/24
worked [1] 5/12
working [2] 68/5 80/9
world [1] 12/5
would [56] 5/6 6/24 7/20 10/18 12/5 12/13 13/4 13/12 14/19 14/25 16/25 17/4 17/6 18/6 19/15 19/25 20/22 22/23

23/8 24/4 24/10 25/7 25/19 27/7 28/2 28/16 29/9 32/8 32/17 33/12 35/11 35/15 35/20 37/9 37/10 38/8 38/10 38/12 38/20 38/21 41/7 41/11 41/13 48/23 51/14 51/19 52/4 55/6 55/10 55/16 55/17 56/19 58/6 58/11 59/4 59/8 59/14 60/4 60/5 61/9 61/22 62/10 62/11 62/25 63/1 64/14 65/10 73/14 74/23 74/24 74/25 75/6 76/3 76/16 77/5 78/22 79/5 79/10
wouldn't [2] 25/21 51/21
wounded [1] 62/4
write [4] 18/10 78/18 79/9 79/21
write-up [1] 79/9
written [4] 51/15 52/4 62/1 79/18
wrong [6] 20/23 21/4 21/5 53/22 57/7 76/21
wrongdoers [1] 78/2
wrongful [11] 7/6 7/13 43/5 43/16 44/18 45/7 46/23 50/1 50/13 66/25 68/1
wrongness [1] 8/9

**Y**

yard [1] 42/11
yeah [2] 22/8 58/13
year [9] 44/12 44/24 46/18 46/20 50/4 62/4 68/6 71/9 79/5
years [12] 7/3 18/18 20/21 34/18 41/5 46/14 55/3 61/25 68/3 69/11 77/14 78/12
yes [9] 21/23 22/3 33/17 37/8 47/13 42/18 57/9 61/21 64/13
yet [1] 43/3
York [3] 22/25 29/12 46/24
you [142]
you'd [1] 25/1
you'll [2] 43/19 51/15
you're [16] 3/25 12/21 17/5 18/5 33/12 46/17 57/25 61/15 64/4 68/19 72/12 72/13 74/7 74/15 74/18 75/20
you've [7] 3/22 17/17 35/1 35/1 62/3 62/4 64/8
young [1] 43/20
your [34] 3/8 3/10 4/8 4/9 4/10 13/12 14/8 14/12 14/14 14/23 15/7 17/5 18/8 18/12 18/12 22/9 22/10 34/25 36/7 40/17 44/10 49/12 52/19 55/7 57/19 58/16 58/25 65/19 73/12 74/17 75/24 76/1 78/16 79/14
Your Honor [9] 3/8 3/10 4/9 22/9 22/10 40/17 52/19 65/19 78/16
yourselves [1] 3/6